BRYAN SCHRODER
United States Attorney

FRANK V. RUSSO
WILLIAM A. TAYLOR
KAREN VANDERGAW
Assistant U.S. Attorneys

Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: frank.russo@usdoj.gov
Email: william.taylor@usdoj.gov
Email: karen.vandergaw@usodj.gov

JAMES B. NELSON
Trial Attorney, Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
Email: james.nelson@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:16-cr-00086-SLG-DMS |
| Plaintiff, | ) | |
| | ) | RESPONSE IN OPPOSITON TO |
| vs. | ) | DEFENDANT'S MOTION TO |
| | ) | DECLARE THE FEDERAL DEATH |
| JOHN PEARL SMITH, II, | ) | PENALTY ACT |
| Defendant. | ) | UNCONSTITUTIONAL UNDER THE |
| | ) | TENTH AMENDMENT |

COMES NOW the United States of America, by and through United States Attorney Bryan Schroder and undersigned counsel, and hereby files its Opposition to Defendant's Motion to Declare the FDPA Unconstitutional under the Tenth Amendment. (Docket 361) (hereinafter "<u>Def. Motion</u>").  The bases for the Government's opposition follow.

## BACKGROUND

On June 5, 2016, Ben Gross and Crystal Denardi were shot to death near Wasilla during an apparent robbery.  Defendant was quickly identified as the prime suspect, and was placed under surveillance by Alaska State Troopers and federal agents.  On June 22, 2016, Defendant, a convicted felon, was observed shooting firearms.  Defendant was charged by complaint with being a felon in possession of firearms, and was subsequently arrested and arraigned on that complaint. (Docket 1, 4, 7).

On July 20, 2016, a federal Grand Jury sitting in Anchorage returned an indictment charging Defendant with being a felon in possession of firearms.  (Docket 23).  Defendant was arraigned on the indictment on July 27, 2016. (Docket 30).  On March 21, 2017, a federal Grand Jury sitting in Anchorage returned the First Superseding Indictment, which included six capital offenses related to the murders of Ben Gross and Crystal Denardi. (Docket 102).  On June 19, 2018, at the direction of the Attorney General, the United States filed its Notice of Intent to Seek a Sentence of Death (hereinafter "NOI"). (Docket 168).

On March 1, 2019, Defendant filed the instant motion seeking to have this Court to declare that the FDPA is unconstitutional, in violation of the 10th Amendment.  <u>Def.

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS  Page 2 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 2 of 16

Motion, at 1. Relying on *pro forma* legal arguments,[1] Defendant asks this Court to do something no other Court has ever done – declare that the United States cannot enforce federal law in jurisdictions where state law differs. To do so, this Court would have to ignore both the Supremacy Clause and Supreme Court precedent. As such, Defendant's motion should be denied without a hearing.

## RESPONSE

Defendant concedes, as he must, that the FDPA is constitutional on its face and that the Tenth Amendment does not "categorically" prohibit Congress from applying the FDPA in a state that does not currently provide for a death penalty. Def. Motion, at 3. Nonetheless, he argues that the FDPA "as applied in this case" violates the Tenth Amendment because (1) the Alaska State Troopers assisted in the investigation and state resources, such as voter lists, may be incidentally used in prosecuting the defendant; and (2) the interest of the State of Alaska in "protecting" John Pearl Smith, II, an Alaska resident, from a sentence of death outweighs the interest of the United States in seeking justice for Ben Gross and Crystal Denardi, also Alaska residents. Defendant's arguments are unripe and, in any event, wholly meritless.

---

[1] A substantively identical motion was recently filed in *United States v. Christensen*, Case No. 17-cr-20037-JES-JEH, (Docket 117) (C.D. Ill. Aug. 24, 2018) (Attachment One). That motion was denied based on the arguments repeated in this opposition. *Id.* (Docket 207). Similar motions are raised, and rejected, any time the United States pursues the death penalty in a District that lies within a State that does not have the death penalty. *See*, *e.g.*, *United States v. Gabrion*, 719 F.3d 511 (6th Cir. 2013) (Michigan); *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009) (North Dakota); *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008) (Vermont); *United States v. Johnson*, 495 F.3d 951 (8th Cir. 2007) (Iowa); *United States v. Tsarnaev*, 157 F. Supp. 3d 57 (D. Mass. 2016); *United States v. Wilson*, 967 F. Supp. 2d 673 (E.D.N.Y. 2013). Defendant's arguments are no more persuasive now than they have been in any other case in which they were raised.

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS            Page 3 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 3 of 16

The United States Constitution, including its Commerce and Supremacy Clauses, allows Congress to prohibit kidnapping resulting in death in the several states and to choose the appropriate punishment for such an offense. If the defendant's argument were accepted, it (1) would prevent states from assisting in federal law enforcement, including prohibiting Alaska State Troopers from assisting the ATF in its investigations, at the risk of forfeiting federal jurisdiction; and (2) would allow states to prohibit the federal government from choosing the appropriate punishment for violations of federal criminal law committed by U.S. citizens, as long as the state claimed a superior "interest" in doing so.

## I.    Defendant's Motion Relies on Antiquated Analysis from Overruled Caselaw

The entirety of Defendant's motion rests on the alleged "requirement" that this Court balance the interests of the State of Alaska and the United States in ruling on his Tenth Amendment challenge. Def. Motion, at 2-20. As argued more fully below, the defendant's challenge is both meritless and not yet ripe for review. More importantly, however, the Supreme Court condemned the use of this balancing test during the first Reagan Administration. *See Christensen*, (Attachment One), at 3-4. As Chief Judge Shadid correctly noted:

> The interest-balancing argument asks this Court to weigh the interests of the State of Illinois against the interests of the Federal Government. Courts reviewing Tenth Amendment challenges no longer utilize the sort of balancing test Defendant seeks to apply. Defendant bases his argument on a quotation from *New York v. United States* in which the Supreme Court recognized that it had, in the past, performed such a test. 505 U.S. 144, 177 (1992). The Supreme Court cited *National League of Cities v. Usery*, 426 U.S. 833 (1976) and two cases following it, *EEOC v. Wyoming*, 460 U.S. 226 (1983) and *United Transportation Union v. Long*

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS         Page 4 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 4 of 16

> *Island Railroad Co.*, 455 U.S. 678 (1982), as examples where it engaged in interest balancing. <u>But *National League of Cities* was overruled by *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 556–57 (1985). With it went that mode of interpretation of the Tenth Amendment. New York, 505 U.S. at 178 ("The Court has more recently departed from this approach.").</u>

*Id.* (emphasis added). Obviously, this Court is bound to follow the Supreme Court's analysis when considering a challenge to the Tenth Amendment and, as such, it need go no further to deny Defendant's motion.

## II.     The Defendant's "As Applied" Tenth Amendment Challenge is Not Ripe

The defendant stresses that the FDPA is only unconstitutional under the Tenth Amendment "*as applied here.*" <u>Def. Motion</u>, at 3 (emphasis added). At the core of his argument is his questionable claim that the State of Alaska has a strong interest in ensuring he does not receive the death penalty under these circumstances. The circumstances of this case, however, have not yet been developed at trial, nor has the defendant received a sentence of death. Therefore, his claim is not ripe.

A court should not address arguments that are grounded on contingent future events that may not occur as anticipated, or indeed may not occur at all. *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010) (dismissing appeal as unripe) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). Thus, any ruling by this Court on the constitutionality of the FDPA under the Tenth Amendment as applied in this case would be an advisory opinion. *See Dorado v. Kerr*, 454 F.2d 892, 895 (9th Cir. 1972) (noting that "[i]t is an established principle of federal adjudication that a constitutional question is

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS              Page 5 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 5 of 16

not to be decided in advance of the necessity for its decision.") (citing *Thorpe v. Housing Authority of City of Durham,* 393 U.S. 268, 284 (1969)).

In fact, district courts around the country faced with pretrial "as-applied" Tenth Amendment challenges have found that those challenges were not ripe. *See, e.g., United States v. Madison*, 2018 WL 4907698, at *6 (M.D. Fla. Oct. 10, 2018) (finding that the defendant's Tenth Amendment "argument is not ripe, rooted in speculation, as the Court is still in the pre-trial posture and no death sentence has been imposed. As such, the Court can neither address nor strike down these FDPA provisions as unconstitutional."); *United States v. Sampson*, 2017 WL 3495703, at *32 n.45 (D. Mass. Aug. 15, 2017) (rejecting on ripeness grounds the defendant's Tenth Amendment challenge to the FDPA based on the theory that it commandeers state officials and state facilities).

## III. The Federal Death Penalty Act Does Not Violate the Tenth Amendment.

### A. The Tenth Amendment does not apply here because the power to enact the FDPA was delegated to the United States by the Constitution.

The defendant argues that the federal interest in this case "pales" compared to the interest of the State of Alaska. Def. Motion, at 12-20. The defendant's Tenth Amendment argument relies entirely on his arguments (set forth more fully in his other filings) that the FDPA, as applied to the federal crimes charged in this case, violates the Eighth Amendment as "cruel and unusual punishment" (Docket 365) and exceeds Congress's power under the Commerce Clause. (Docket 288). However, it is well-settled that the FDPA does not violate the Eighth Amendment and that the crimes of interference with commerce by robbery and use of a firearm during a drug trafficking offense are a valid

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS        Page 6 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 6 of 16

exercise of congressional power under the Commerce Clause. *See, e.g., Taylor v. United States*, 136 S.Ct. 2074, 2081 (2016); *Stirone v. United States*, 361 U.S. 212, 215 (1960); *United States v. Lynch*, 437 F.3d 902, 908 (9th Cir. 2006) (en banc); *see also United States v. Tisor*, 96 F.3d 370, 375 (9th Cir. 1996) (explaining that intrastate drug activities are tied to interstate commerce, as "Congress expressly found that intrastate drug trafficking had a 'substantial effect' on interstate commerce"). Once this faulty support for the defendant's Tenth Amendment claim is removed, his argument collapses under its own weight.

The defendant's argument is premised upon the Tenth Amendment, which provides that all "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, and to the people." U.S. CONST. amend. X. The defendant's Tenth Amendment argument fails *ab initio*, however, because the power that the United States is exercising in its prosecution of John Pearl Smith, II, is expressly delegated to the United States by Article I.

Pursuant to the Commerce Clause, Congress can regulate the instrumentalities of interstate commerce and the crime of interference with commerce by robbery falls under this reach of the Commerce Clause. *Taylor v. United States*, 136 S. Ct. at 2077-81 (2016); *United States v. Lopez*, 514 U.S, 549, 558 (1995); *United States v. Chambers*, 681 F. App'x 72, 80-81 (2d Cir. 2017), *cert. granted, judgment vacated on other grounds*, 138 S. Ct. 2705 (2018), *reaffirmed* 2018 WL 4523607, at *4 (2d Cir. Sept. 21, 2018); *United States v. Morgan*, 748 F.3d 1024, 1031 (10th Cir. 2014).

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS         Page 7 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 7 of 16

Since Congress may criminalize the acts of interfering with commerce by robbery and use of a firearm during a drug trafficking offense, it follows that Congress may fix the punishment for those offenses. *See Mistretta v. United States*, 488 U.S. 361, 364 (1989) (recognizing that Congress "of course" has the power to fix the punishment for a federal crime); see also U.S. CONST. art. I, § 8 ("The Congress shall have Power . . . To make all Laws which shall be necessary and proper for carrying into Execution the foregoing powers."). The power to regulate the use of instrumentalities of interstate commerce to prevent their use to commit crimes would be meaningless if Congress could not also impose a punishment for committing the proscribed act. One of the punishments that Congress is permitted to impose under the Constitution is a sentence of death. *Gregg v. Georgia*, 428 U.S. 153, 187 (1976); *see also Glossip v. Gross*, 135 S. Ct. 2726, 2732–33 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 47 (2008) ("We begin with the principle, settled by *Gregg*, that capital punishment is constitutional.")).

Because the power to proscribe and impose a sentence of death for this offense has been delegated to the United States by the Constitution, by its own terms, there is no Tenth Amendment violation:

> While McCluskey's argument is both fascinating and creative, ultimately it is unpersuasive. To the extent that McCluskey argues that Congress' "federalization" of the offense of kidnaping violates the Tenth Amendment, that argument fails. Under the Tenth Amendment, "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. . . . Here, because the federal government is acting within its constitutionally delegated power under the Commerce Clause, there is no violation of the Tenth Amendment.

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS  Page 8 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 8 of 16

*United States v. McCluskey*, 2012 WL 13076173, at *10 (D.N.M. Sept. 24, 2012). Thus, Defendant's lengthy discussion of his perception of Alaska's interest in prosecuting him for murdering Ben Gross and Crystal Denardi (Def. Motion, at 11-16) is an exercise in futility.[2] The Tenth Amendment does not apply here because the FDPA is a valid exercise of congressional power, and the defendant's argument to the contrary is frivolous.

### B. The defendant's Tenth Amendment argument is contrary to the Supremacy Clause and the dual sovereignty doctrine.

The United States Constitution recognizes that the United States and the several states are dual and separate sovereigns. *Alden v. Maine*, 527 U.S. 706, 714–15 (1999); *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). The dual sovereignty doctrine has been "a fixture of constitutional law for decades." *United States v. Robinson*, 42 F.3d 433, 434 (7th Cir. 1994) (quoting *United States v. Bafia*, 949 F.2d 1465, 1478 (7th Cir. 1991)). The principle of dual and separate sovereignty, however, permits the United States to simultaneously define and enforce their own criminal law, consistent with their own interests and independent constitutional constraints. *See Heath v. Alabama*, 474 U.S. 82, 88 (1985) (recognizing that when a defendant commits a criminal act that is proscribed by two sovereigns, he has committed two distinct offenses and may be criminally liable to each sovereign); *Alden*, 527 U.S. at 713 (recognizing that the United States has broad,

---

[2] Most of the defendant's argument against capital punishment is legally irrelevant to a Tenth Amendment analysis in this case and should be addressed to Congress, not this Court. *See McCleskey v. Kemp*, 481 U.S. 279, 319 (1987) ("*McCleskey*'s arguments are best presented to the legislative bodies. It is not the responsibility—or indeed even the right—of this Court to determine the appropriate punishment for particular crimes. It is the legislatures, the elected representatives of the people, that are 'constituted to respond to the will and consequently the moral values of the people.'").

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS       Page 9 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 9 of 16

"often plenary authority over matters within its recognized competence," but that States retain their own sovereignty); *see also United States v. Traylor*, 978 F.2d 1131, 1132 (9th Cir. 1992).

Given the existence of dual sovereignty, it necessarily follows that laws can be in conflict or at cross-purposes. *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012). The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. Art. VI, cl. 2. Thus, it is beyond dispute that, under ordinary conflict pre-emption principles, a "state law [that] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" is void. *See Williamson v. Mazda Motor of Am,, Inc.*, 562 U.S. 323, 330 (2011); *Edgar v. Mite Corp.*, 457 U.S. 624 (1982). Simply put, neither this nor any other Court may give effect to a state law that conflicts with a federal law. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015).

Therefore, not only does the Tenth Amendment not apply here, but the Supremacy Clause precludes Defendant's entire theory. Allowing a state's abolition of the death penalty to preclude enforcement of the FDPA would create a direct obstacle to Congress' objectives, and would frustrate "accomplishment and execution of the full purposes and objectives of Congress." *Armstrong,* 135 S. Ct. at 1383; *Williamson,* 562 U.S. at 330. Ironically, then, it is Defendant's argument – not the fact that he is facing the death penalty – that is contrary to the Constitution.

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS    Page 10 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 10 of 16

Applying the Supremacy Clause, federal courts have unanimously rejected capital defense counsel's customary argument that the FDPA violates the Tenth Amendment whenever a capital case is brought in a federal District of a state that does not currently have the death penalty. For example, even though the Puerto Rican Constitution expressly prohibits the death penalty, the First Circuit, noting that "Congress maintains similar powers over Puerto Rico as it possesses over the federal states," held that the federal death penalty applied to federal crimes committed in Puerto Rico because the federal interest in punishing violations of federal law is manifest. *United States v. Acosta-Martinez*, 252 F.3d 13, 18-20 (1st Cir. 2001) ("The [federal] death penalty is intended to apply to Puerto Rico federal criminal defendants just as it applies to such defendants in the various states.").

As noted above, a substantively identical argument was recently rejected in *Christensen*. Case No: 17-cr-20037 (Docket 207). A district court in Vermont rejected the argument that the "federalization" of kidnapping violated state sovereignty and the Tenth Amendment because Vermont did not have the death penalty. *Jacques,* 2011 WL 3881033, at *2-3 (holding that doctrine of dual sovereignty allowed United States to determine appropriate punishment for federal crime independent of Vermont). District courts similarly rejected almost identical Tenth Amendment arguments by capital defendants in Iowa, *United States v. Johnson*, 900 F. Supp. 2d 949, 961–63 (N.D. Iowa 2012) (rejecting argument that federalization of state-law offenses when Iowa did not allow for capital punishment violated Tenth Amendment), Hawaii, *United States v. Tuck Chong*, 123 F. Supp. 2d 563 (D. Haw. 1999) (finding that sentencing a defendant

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS        Page 11 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 11 of 16

according to federal law for a federal crime does not violate Hawaii's sovereignty nor the Tenth Amendment), and Michigan. *United States v. O'Reilly*, 2007 WL 2421378, at *3-4 (E.D. Mich. Aug. 23, 2007) (rejecting argument that FDPA violated Michigan sovereignty where crime was not "uniquely" federal).

Defendant attempts to distinguish these cases by suggesting that, unlike those states, Alaska comparatively has greater distain for the death penalty. He further argues that, unlike the crimes at issue in the cases cited above, Congress did not actually intend for Hobbs Act robbery to apply here, even if its application is otherwise supported by law. The defendant cites no authority for the proposition that the subjective "strength" of a state's purported opposition to the death penalty might be legally sufficient to render the FDPA unconstitutional under the Tenth Amendment. In fact, there is no reliable standard by which a court could gauge varying levels of state opposition or the jurisdictional "strength" of a case. The defendant's suggestion that this case is distinguishable from all the other capital cases rejecting a Tenth Amendment argument is without merit.

Moreover, it is worth noting that the United States has sought and obtained the death penalty in a number of federal jurisdictions within States that do not enforce capital punishment as a matter of state law. *See e.g.*, *United States v. Gabrion*, 719 F.3d 511 (6th Cir. 2013) (Michigan); *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009) (North Dakota); *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008) (Vermont); *United States v. Johnson*, 495 F.3d 951 (8th Cir. 2007) (Iowa); *United States v. Tsarnaev*, 157 F. Supp. 3d 57 (D. Mass. 2016); *United States v. Wilson*, 967 F. Supp. 2d 673 (E.D.N.Y. 2013). No

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS        Page 12 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 12 of 16

court has determined that those prosecutions were unconstitutional because they were brought in a federal jurisdiction within a state that did not employ the death penalty.

> **C. The Tenth Amendment "anti-commandeering" principle does not apply here because the FDPA does not require states or state officials to comply with its requirements or assign them enforcement of the FDPA.**

In addition to these arguments, the defendant also raises what he refers to as an "anti-commandeering" argument regarding the use of state resources during the federal investigation and prosecution of this case as violating principles of federalism and the Tenth Amendment. Def. Motion, at 7-11. As noted above, this argument is not ripe for review. It also must fail on the merits. The Supremacy Clause precludes any effort by states to divorce themselves from the application of federal law when they choose to act, and the Tenth Amendment's anti-commandeering principle only prevents Congress from assigning the enforcement duty to state or local officials, rather than federal officials. *See Travis v. Reno*, 163 F.3d 1000, 1003 (7th Cir. 1998).

The FDPA neither compels states or state officials to comply with its requirements, nor assigns to them the enforcement of the FDPA. The FDPA does not assign or require states or state officials to provide voter rolls to federal authorities to determine potential federal jurors. A federal court's mere use of data from state voter rolls does not implicate the anti-commandeering rule.[3] *Id.* at 1004–05 (holding that "anti-commandeering rule comes into play only when the federal government calls on the states to use their

---

[3] Notably, if the defendant's argument were accepted on this point, the absurd result would be that **all** federal criminal trials would be in violation of the Tenth Amendment's anti-commandeering principle.

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS     Page 13 of 16

sovereign powers as regulators of their citizens" and rejecting Tenth Amendment challenge to Driver's Privacy Protection Act because it only "affects states as owners of data"). Thus, a Tenth Amendment anti-commandeering argument is not viable here. *Id.*; *compare United States v. Richardson*, 754 F.3d 1143, 1146 (9th Cir. 2014) (holding SORNA does not violate the Tenth Amendment's anti-commandeering principle because it does not compel states or state officials to comply with its requirements); *United States v. White,* 782 F.3d 1118, 1128 (10th Cir. 2015) (same); *United States v. Felts*, 674 F.3d 599, 606–08 (6th Cir. 2012) (same); *United States v. Johnson*, 632 F.3d 912, 920 (5th Cir. 2011) (same); *Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010) (same).

This Court's acceptance of Defendant's anti-commandeering argument would be tantamount to declaring that voluntary cooperation between state and federal law enforcement officers, as well as federal courts' use of data from state voter rolls during the jury selection process, would be constitutional in states without a death penalty and unconstitutional in states with a death penalty. The argument that the Constitution should apply differently in different states is untenable.  The Second Circuit held, in considering a similar argument involving Vermont's abolition of the death penalty, "[p]lainly, the Constitution must apply equally throughout the states." *United States v. Fell*, 571 F.3d 264, 271 (2d Cir. 2009).

The *Fell* Court stated very clearly that:

The selection of a federal jury to hear a case arising under federal law involved the exercise of exclusive federal power. It does not intrude on any state *function*; much less does it trench on the exercise of any state *power*. It poses no interference with legitimate state *activities*.

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS          Page 14 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 14 of 16

*Id.* at 269 (original emphasis). The Court noted it was "hard pressed to know how we might explain to a capital defendant in Texas that he is entitled to any less rigorous *voir dire* of a potential juror who expresses opposition to the death penalty (because Texas law authorizes capital punishment) than we would insist on for a capital defendant in Vermont (because Vermont law proscribes capital punishment)." *Id.* at 271; *see also McCluskey*, 2012 WL 13076173, at *11 ("Indeed, McCluskey points to no case in which a federal court has applied a state-by-state analysis to [a constitutional determination in a capital case]. Such a conclusion would lead to disparate application of federal law depending on the state in which the law was violated.").

## CONCLUSION

For the above-mentioned reasons, the United States respectfully requests that the Court deny the defendant's motion.

RESPECTFULLY SUBMITTED this 14th day of March 2019, in Anchorage, AK.

BRYAN SCHRODER
UNITED STATES ATTORNEY

*/s/ James B. Nelson*_____
JAMES B. NELSON
Assistant United States Attorney

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS          Page 15 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 15 of 16

CERTIFICATE OF SERVICE
I hereby certify that on March 14th, 2019,
A copy of the foregoing was served via email on:

Mark Larranaga
Steven M. Wells
Suzanne Lee Elliott

*/s/ James B. Nelson*
JAMES B. NELSON
Assistant United States Attorney

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG-DMS            Page 16 of 16
Case 3:16-cr-00086-SLG   Document 377   Filed 03/14/19   Page 16 of 16