# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOHN PEARL SMITH, II,

    Defendant.

Case No. 3:16-cr-00086-SLG-1

## ORDER RE: MOTION TO DECLARE THE FDPA UNCONSTITUTIONAL UNDER THE TENTH AMENDMENT

Before the Court at Docket 361 is Defendant John Pearl Smith, II's "Motion to Declare the FDPA Unconstitutional under the 10th Amendment as Applied to The Facts of This Case and Because The People of The State of Alaska Have Never Approved of Capital Punishment."[1] The Government filed an opposition.[2] Mr. Smith did not file a reply.

Mr. Smith is charged in federal court for the District of Alaska with seventeen counts, six of which carry a potential death sentence if he is convicted. The State of Alaska, however, does not have the death penalty.[3] Mr. Smith asserts that the federal government seeking the death penalty for an Alaska resident in a federal court located in

---

[1] The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

[2] Docket 377, supplemented at Docket 381.

[3] The death penalty was abolished by the Alaska Territorial Legislature in 1957, prior to Alaska gaining statehood.

Alaska violates the Tenth Amendment in two ways. First, he maintains that "the national government is commandeering state resources to enforce a federal regulatory scheme that directly conflicts with the laws of Alaska."[4] He asserts that the Government is commandeering the resources of Alaska as well as other states. Second, he asserts that there are no overriding concerns of the federal government that justify "usurping the judgement of the citizens of the State on a matter of intense public interest . . . ."[5]

The Government responds that Mr. Smith's arguments are not ripe for review because he has not yet been sentenced to death. On the merits, the Government asserts that Mr. Smith's argument fails because Congress has the authority to set the punishment for the crimes charged and the FDPA does not violate the anti-commandeering principle of the Tenth Amendment.[6]

### I. Commandeering other states' resources: Implementation and use provisions of the FDPA

"[C]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the government of the States."[7] This limitation is known as the anti-commandeering principle.[8] In support of his argument that the federal government is commandeering states' resources, Mr. Smith points to sections of the FDPA that set out the protocol should a jury impose the death sentence in a federal court sitting in a state that does not have capital punishment. In these situations, the implementation provision

---

[4] Docket 361 at 2.

[5] Docket 361 at 2.

[6] Docket 377 at 5–9, 13–16.

[7] *Murphy v. Nat'l Collegiate Athletic Ass'n.*, 138 S.Ct. 1461, 1476 (2018).

[8] *Id.*

Case No. 2016-cr-00086-SLG, *United States v. Smith*
Order Re: Motion to Declare the FDPA Unconstitutional under the Tenth Amendment
Page 2 of 7

of the FDPA directs that "the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law."[9] The use provision of the FDPA provides that the U.S. Marshal tasked with supervising the sentence "may use appropriate State or local facilities for the purpose" of carrying out the sentence.[10] Mr. Smith maintains that these provisions of the FDPA "would requisition state resources to implement the sentences of death imposed pursuant to the FDPA" in violation of the Tenth Amendment's anticommandeering principle.[11]

This aspect of Mr. Smith's implementation- and use-provision commandeering argument is not yet ripe.[12] Since this case is still in a pretrial posture, questions about effecting capital punishment rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all."[13] Should Mr. Smith be convicted of at least one capital count and should the jury decide to impose the death penalty, he may renew this portion of the motion at that time.[14]

---

[9] 18 U.S.C. § 3596(a).

[10] 18 U.S.C. § 3597(a). As a historical matter, the three federal executions since the implementation of the FDPA have all occurred at the federal United States Penitentiary in Terre Haute, Indiana. These occurred in 2001 and 2003. Fed. Bureau of Prisons, "Historical Information: Capital Punishment" (www.bop.gov/about/history/federal_executions.jsp) (last visited Mar. 15, 2019); *United States v. Sampson*, 2017 WL 3495703 at *32 n. 44 (Crim. Action No. 01-10384-LTS) (D. Mass. Aug. 15, 2017) (noting Supreme Court's upholding of Indiana's use of lethal injection).

[11] Docket 361 at 11.

[12] *See United States v. Christensen*, 2019 WL 191001 at *1 (slip copy) (Case No. 17-cr-20037-JES-JEH, C.D. Ill. Jan. 14, 2019) (noting defense concession that argument was premature); *United States v. Madison*, 337 F. Supp. 3d 1186, 1197–98 (M.D. Fl. 2018) (rejecting on ripeness grounds defendant's pretrial commandeering argument).

[13] *Texas v. United States*, 523 U.S. 296, 300 (1998).

[14] *But see Sampson*, 2017 WL 3495703 at *32 n. 45 (finding motion still was not ripe after jury

Case No. 2016-cr-00086-SLG, *United States v. Smith*
Order Re: Motion to Declare the FDPA Unconstitutional under the Tenth Amendment
Page 3 of 7

**II.     Commandeering Alaska state resources: Use of Alaska personnel**

Mr. Smith also points to the federal government's use of Alaska's "citizens as jurors, its law enforcement officers as investigators and possible witnesses, and its state agencies all commandeered to assist in this prosecution."[15] The Government responds that this topic is also not ripe.[16] "[R]ipeness is peculiarly a question of timing that requires a court to look at the facts as they exist today in evaluating whether the controversy ... is sufficiently concrete to warrant [judicial] intervention."[17] On this topic, because these alleged harms have already occurred (investigation by state officers), are occurring presently (use of state officers or agencies in preparation for trial), or will occur as soon as the jury pool is summoned (residents as jurors), this portion of the commandeering argument is ripe for review.

On the merits, however, Mr. Smith's asserted bases of commandeering are not persuasive. Alaska's residents are also United States citizens and may be called upon to sit as federal jurors and decide federal issues.[18] Requiring the performance of this civic duty does not violate the Tenth Amendment.

---

returned death sentence because it was still unknown whether this alleged commandeering would take place).

[15] Docket 361 at 8.

[16] Docket 377 at 5–6, 13.

[17] *Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, 1062 (9th Cir. 1987) (internal quotations omitted, brackets and ellipses in original).

[18] *See* 18 U.S.C. § 3321 (empaneling grand jury); 18 U.S.C. § 3331 (empaneling special grand jury); Fed. R. Crim. P. 24 (empaneling trial jury); 18 U.S.C. § 1863(b)(3) (jury pool "procedure shall be designed to ensure the random selection of a fair cross section of the persons residing in the community in the district or division wherein the court convenes.").

Case No. 2016-cr-00086-SLG, *United States v. Smith*
Order Re: Motion to Declare the FDPA Unconstitutional under the Tenth Amendment
Page 4 of 7

Alaska's law enforcement officers and agencies may choose to cooperate with the federal government to investigate crime without violating the Tenth Amendment: "The touchstone of a Tenth Amendment 'commandeering' violation is not that federal action regulates individual behavior, but that it directly compels a state to take a specific action."[19] Here, the FPDA does not "direct [Alaska] to perform certain functions, command state officers to administer federal regulatory programs, or [compel Alaska] to adopt specific legislation."[20] Without some element of mandatory performance by Alaska state personnel or agencies, the FDPA does not violate the anti-commandeering principle as applied here.

### III. Congress has the authority to determine the potential punishment for federal crimes.

Mr. Smith asserts that the interests of the State of Alaska and the interests of the federal government in pursuing the death penalty are "lopsided" where the alleged crime has no unique federal characteristics and instead is a "local crime"[21] The Government argues that this portion of the motion is also unripe.[22] However, as stated by a district court cited by the Government with nearly identical briefing as this case, "[t]he Court finds Defendant has made a compelling argument why the claim that State interests outweigh

---

[19] *Mickelsen Farms, LLC v. Animal & Plant Health Inspection Servs.*, No. 115CV00143EJLCWD, 2018 WL 1413183, at *13 (D. Idaho Mar. 20, 2018), *on reconsideration sub nom. Mickelsen Farms, LLC v. Animal & Plant Health Inspection Serv.*, No. 1:15-CV-00143-EJL, 2018 WL 4259225 (D. Idaho Sept. 6, 2018).

[20] *Raich v. Gonzales*, 500 F.3d 850, 867 n. 17 (9th Cir. 2007).

[21] Docket 361 at 12, 16–17. Mr. Smith expressly does not argue that the federal government can *never* seek the death penalty in a state without capital punishment, only that it requires a case where the federal government has "paramount interests assigned to and enforceable by the national government . . . ." Docket 361 at 3.

[22] Docket 377 at 5–6.

Case No. 2016-cr-00086-SLG, *United States v. Smith*
Order Re: Motion to Declare the FDPA Unconstitutional under the Tenth Amendment
Page 5 of 7

those of the Federal Government should be considered now. Many of the relevant harms will occur not at sentencing but rather upon empaneling the jury."[23] The Court finds this issue is presently ripe for review.

Mr. Smith points to many examples of how he believes Alaska's interests outweigh those of the federal government.[24] However, the proper inquiry does not involve a balancing test but instead asks whether Congress has authority to criminalize the relevant behavior and the authority to determine the potential punishment.[25] As relevant here, Mr. Smith is charged with six death-penalty eligible counts.[26] These counts are premised on two different theories: Use of a firearm to commit murder in relation to a crime of violence—a Hobbs Act robbery—and use of a firearm to commit murder in relation to a drug-trafficking crime—possession with intent to distribute.[27]

"The power to define federal crimes and set punishments rests solely with Congress."[28] Congress acted within the authority of the Commerce Clause when it

---

[23] *United States v. Christensen*, 2019 WL 191001 at *2 (slip copy) (Case No. 17-cr-20037-JES-JEH, C.D. Ill. Jan. 14, 2019). *See also* Docket 361 at 3.

[24] *E.g.*, that Alaska has an interest in protecting the lives of its citizens, in protecting confidence in and respect for the judicial system, in protecting vulnerable groups, in not having its state resources used to effect a penalty the state has not adopted, and in having its sovereignty respected by the federal government. Docket 361 at 12–16.

[25] *See New York v. United States*, 505 U.S. 144, 178 (1992) (Supreme Court has "departed from this [interest-balancing] approach").

[26] Docket 102, Counts 3–8 (First Superseding Indictment).

[27] Docket 102 (First Superseding Indictment).

[28] *United States v. Harding*, 971 F.2d 410, 412 (9th Cir. 1992) (citing *United States v. Evans*, 333 U.S. 483, 486 (1948); *United States v. Smith*, 686 F.2d 234, 239 (5th Cir.1982)); *see also United States v. Mujahid*, 799 F.3d 1228, 1233 (9th Cir. 2015) (citing *United States v. Comstock*, 560 U.S. 126, 135–36 (2010) ("[I]t is well established that Congress may create federal crimes under the Necessary and Proper Clause . . . .").

Case No. 2016-cr-00086-SLG, *United States v. Smith*
Order Re: Motion to Declare the FDPA Unconstitutional under the Tenth Amendment
Page 6 of 7

criminalized Hobbs Act robberies and drug-trafficking crimes.[29]  Because Congress has the authority to set the range of potential sentences for federal crimes,[30] it acted within its power to set capital punishment as a possible sentence for Counts 3 though 8 of the First Superseding Indictment.

In light of the foregoing, IT IS ORDERED that the motion at Docket 361 is DENIED.

DATED this 1st day of April, 2019, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[29] *Gonzales v. Raich*, 545 U.S. 1 (2005); *Taylor v. United States*, 136 S. Ct. 2074 (2016); Docket 351 (order denying Motion to Dismiss Counts 1, 9, 13 Because the Robberies Did Not Affect Interstate Commerce).

[30] *Mistretta v. United States*, 488 U.S. 361, 364 (1989); *see also United States v. Tuck Chong*, 123 F. Supp. 2d 563, 567 (D. Haw. 1999) (in capital prosecution under 18 U.S.C. § 924(j), "Congress determined that a sentence of death is available for a § 924(j) violation.  According to the doctrine of duel sovereignty, the federal government has the power to provide for such a sentence, despite that the charged offense took place in a state that does not provide for a similar sentence.").

Case No. 2016-cr-00086-SLG, *United States v. Smith*
Order Re: Motion to Declare the FDPA Unconstitutional under the Tenth Amendment
Page 7 of 7