BRYAN SCHRODER
United States Attorney
FRANK V. RUSSO
WILLIAM A. TAYLOR
KAREN VANDERGAW
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: frank.russo@usdoj.gov
Email: william.taylor@usdoj.gov
Email: karen.vandergaw@usodj.gov

JAMES B. NELSON
Trial Attorney, Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
Email: james.nelson@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>JOHN PEARL SMITH, II,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:16-cr-00086-SLG-DMS |

**MOTION TO PRECLUDE DEFENDANT FROM RAISING A MENTAL HEALTH DEFENSE OR PRESENTING EVIDENCE RELATED TO HIS MENTAL HEALTH DURING THE GUILT PHASE OF TRIAL**

COMES NOW the United States of America, by and through United States Attorney Bryan Schroder and undersigned counsel, and hereby files this motion to preclude the defendant from raising mental health defenses, or presenting any evidence related to his mental health, during the guilt phase of trial. The bases for the United States' motion follow.

## PROCEDURAL HISTORY

On June 5, 2016, Ben Gross and Crystal Denardi were shot to death near Wasilla during an apparent robbery. Defendant was quickly identified as the prime suspect, and was placed under surveillance by Alaska State Troopers and federal agents. On June 22, 2016, Defendant, a convicted felon, was observed shooting firearms. Defendant was charged by complaint with being a felon in possession of firearms, and was subsequently arrested and arraigned on that complaint. (Docket 1, 4, 7).

A federal Grand Jury sitting in Anchorage returned an indictment charging Defendant with being a felon in possession of firearms on July 20, 2016. (Docket 23). Defendant was arraigned on the indictment on July 27, 2016. (Docket 30). On March 21, 2017, a federal Grand Jury sitting in Anchorage returned the First Superseding Indictment, which included six capital offenses related to the murders of Ben Gross and Crystal Denardi. (Docket 102).

In accordance with Department of Justice ("DOJ") protocol, the defense team was afforded an opportunity to present its mitigation evidence to the U.S. Attorney, which they did on November 13, 2017. The U.S. Attorney included defense counsel's position in his

report and recommendation to the Attorney General's Capital Case Review Committee. On February 23, 2018, the Court granted defendant's motion for a protective order restricting the United States' access to his jail visitor logs. (Docket 161). The motion included a single rationale: to permit mental health experts to examine Defendant without giving the United States advance notice of a mental health defense. (Docket 153, at 2).

On April 2, 2018, defense counsel presented mitigation evidence – including information about Defendant's "social history" to the Attorney General's Review Committee on Capital Cases. On June 19, 2018, at the direction of the Attorney General, the United States filed its Notice of Intent to Seek a Sentence of Death (hereinafter "NOI"). (Docket 168). On July 5, 2018, in response to Defendant's *ex parte* motion, the Court appointed a second learned counsel to assist Ms. Elliott. (Docket 170).

On July 18, 2018, sixteen months after Defendant was indicted on capital charges, the Court held a status conference to discuss its scheduling order. (Docket 183). The Court issued its scheduling order on July 30, 2018. (Docket 192). The scheduling order required Defendant, by January 14, 2019, to give notice of his intent to either assert an *Atkins* defense, or introduce mental health evidence pursuant to Federal Rule of Criminal Procedure 12.2 during the guilt- or penalty-phase. *Id*.

On January 24, 2019, pursuant to Defendant's motion, this Court extended the defendant's deadline for giving notice of either an *Atkins* or Rule 12.2 defense during the guilt phase of trial to June 1, 2019. Docket 268, 309. No such notice was filed.

The Court subsequently entered an Amended Scheduling Order that continued the defendant's deadline to file a notice of either an *Atkins* or Rule 12.2 defense during the

guilt phase of trial to August 1, 2019. (Docket 420). The defendant did not file a notice of Rule 12.2 or *Atkins* claim.

## ARGUMENT

### A. Defendant Must Be Barred from Raising an *Atkins* Defense During the Guilt Phase

A person who qualifies as being "intellectually disabled" cannot constitutionally be put to death. *Atkins v. Virginia*, 536 U.S. 304, 321 (2002). Courts agree that defendants bear the burden of proving intellectual disability by a preponderance of the evidence. *United States v. Candelario-Santana*, 916 F. Supp. 2d 191, 193 (D.P.R. 2013); *United States v. Hardy*, 644 F. Supp. 2d 749, 750 (E.D. La. 2008); *United States v. Davis*, 611 F. Supp. 2d 472, 474 (D. Md. 2009); *United States v. Nelson*, 419 F. Supp. 2d. 891, 894 (E.D. La. 2006); *United States v. Sablan*, 461 F. Supp. 2d at 1242-43 (D. Colo. 2006).

Defendant's intellectual functioning has already been addressed in the Alaska court system. In May 2000, at age 13 years, Defendant was examined by a licensed clinical neuropsychologist in connection with his juvenile arrests. This examination included a long-form IQ test, as well as a clinical evaluation. Defendant's full-scale IQ was determined to be 96 – in the low average range, but more than one standard deviation above the intellectual disability threshold.

In addition, Defendant's examiner noted that "measures of cognitive and intellectual abilities indicate that [Defendant] is functioning well within the average range," and that his "learning abilities and memory functioning are well within the average range." Defendant's examiner noted that, although he demonstrated some signs of a

learning disability, "[h]is ability to generate abstract concepts, apply these concepts, and use feedback to enhance his performance was above average, suggesting that he is capable of learning from feedback. . . ." Finally, Defendant's examiner noted that he "enjoys engaging in risk-taking behaviors," which, the examiner opined, "is going to result in inappropriate extreme behaviors."

Defendant had ample time to investigate and give notice of an *Atkins* defense. He chose not to. Defendant must be barred from raising an *Atkins* defense, or presenting any evidence suggestive of intellectual disability, during the guilt phase of trial.

### B. Defendant Must Be Barred from Raising an Insanity Defense Pursuant to Rule 12.2(a) During the Guilt Phase

The insanity defense places the burden on Defendant to prove that he suffered from a severe mental disease or defect at the time of the offense, and that the disease or defect rendered him unable to appreciate the nature and quality or the wrongfulness of his acts. *United States v. Knott*, 894 F.2d 1119, 1121 (9th Cir. 1990)

Rule 12.2(a) requires that a defendant give advance notice of his intent to raise a defense of not guilty by reason of insanity at trial, and that "[a] defendant who fails to do so cannot rely on an insanity defense." *Id.* If Defendant gives notice of his intent to raise an insanity defense, the court must allow the United States' expert witnesses to examine the defendant. Rule 12.2(c)(1)(B).

Defendant had ample time to investigate and give notice of an insanity defense. He chose not to. Defendant must be barred from raising an insanity defense, or presenting any evidence suggestive of insanity, during the guilt phase of trial. FED. R. CRIM. P. 12.2(d).

### C. Defendant Must Be Barred From Raising a Mental Capacity Defense Pursuant to Rule 12.2(b)(1) During the Guilt Phase

Rule 12.2(b)(1) requires timely notice if a defendant "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt." Though not limited to purely mental disorders, such evidence *is* limited to conditions that interfere with criminal liability. *United States v. Rahm*, 993 F.2d 1405, 1410-12 (9th Cir. 1993).

A defendant may not satisfy Rule 12(b)(1) by giving notice that he "intend[s] to explore the possibility of a psychiatric examination" and then waiting until the eve of trial to give notice of his intended witnesses. *See*, *e.g.*, *United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir. 1986). Defendant had ample time to investigate and give notice of a mental capacity defense. He chose not to. Defendant must be barred from raising a mental capacity defense, or presenting any evidence suggestive of limited mental capacity, during the guilt phase of trial. FED R. CRIM. P. 12.2(d).

Respectfully Submitted,

BRYAN SCHRODER
UNITED STATES ATTORNEY

*/s/ James B. Nelson*
JAMES B. NELSON
Trial Attorney
United States Department of Justice

*/s/ Frank V. Russo*
FRANK V. RUSSO
Assistant United States Attorney

                      */s/ William A. Taylor*
                      WILLIAM A. TAYLOR
                      Assistant United States Attorney

                      */s/ Karen E. Vandergaw*
                      KAREN E. VANDERGAW
                      Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ James B. Nelson*
JAMES B. NELSON
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Tel: (202) 598-2872
james.nelson@usdoj.gov

UNITED STATES v. SMITH
CASE NO. 3:16-CR-00086-SLG      7
Case 3:16-cr-00086-SLG   Document 497   Filed 08/08/19   Page 7 of 7