IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN PEARL SMITH, II,<br><br>    Defendant. | Case No. 3:16-cr-00086-SLG-1 |

**SEALED ORDER REGARDING MOTION TO SUPPRESS (BRIAN LONG)**

Before the Court at Docket 297-1 is defendant John Pearl Smith, II's sealed Motion to Suppress All Statements and Evidence Obtained by Brian Long in Violation of Smith's Sixth Amendment Right to Counsel. The government filed an opposition.[1] The parties submitted additional briefing in their notices of issues prior to an evidentiary hearing.[2] The Court held an open evidentiary hearing on June 10, 2019.[3] The parties filed their written closing arguments on July 12, 2019.[4] The government filed its written rebuttal argument on July 19, 2019.[5]

---

[1] Docket 324.

[2] Docket 441 (government notice of issues); Docket 442 (defense notice of issues).

[3] Docket 447 (minute entry). The parties agreed to having an open hearing despite earlier filings under seal. Docket 458 at 12 (transcript of hearing).

[4] Docket 464 (government's closing argument); Docket 465 (defense closing argument) (under seal).

[5] Docket 470.

## I. Relevant testimony

Mr. Smith was jailed beginning June 28, 2016, on an indictment charging him with being a felon in possession of firearms on June 22, 2016.[6] The First Superseding Indictment—which added homicide, robbery, drug, and firearms charges dating from September 2015, May 11, 2016, and June 5, 2016—was issued by the Grand Jury on March 21, 2017.[7] At all relevant times, Mr. Smith was housed at the Anchorage Correctional Complex (ACC).

While at the ACC, Mr. Smith met Brian Long, who was in custody at the ACC on child pornography charges beginning in the summer of 2016.[8] Mr. Long told Mr. Smith that he was in custody for bringing marijuana onto a military base.[9] Mr. Smith, who was generally cautious about speaking to other inmates at the ACC, seemingly bonded with Mr. Long over Mr. Long's military service and their shared interests in firearms and outdoorsmanship.[10]

During the course of their ostensible friendship, Mr. Smith purportedly made inculpatory statements about the homicides, about firearms that he had hidden, about plans to frame a third party for the homicides, about plans to tamper with or harm witnesses, about plans to escape from the ACC, and about some "bond" procedure that Mr. Smith believed was a legal procedure that could get his case dismissed.

---

[6] Docket 23 (Indictment).

[7] Docket 102 (First Superseding Indictment).

[8] Docket 458 at 19, 25.

[9] Docket 458 at 30.

[10] Government exhibit 15 at 1; Docket 458 at 44, 46, 48–49, 70, 89.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 2 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 2 of 20

Unbeknownst to Mr. Smith, Mr. Long was working with the FBI and acting as a confidential informant. Mr. Long first began providing information to the FBI during the FBI's investigation into drugs being introduced into the ACC and possible corruption at the ACC.[11] After meeting with Mr. Long in December of 2016, FBI Agent Richard Fuller "opened" Mr. Long as a confidential source on January 9, 2017.[12] Agent Fuller acted as Mr. Long's handler.[13] Agent Fuller testified that the first time Mr. Long mentioned Mr. Smith to him was during a meeting on January 18, 2017, when Mr. Long disclosed that Mr. Smith was devising a plan to escape from the ACC.[14] Agent Fuller had no prior knowledge of Mr. Smith and was not interested in him because he did not appear to be involved with bringing drugs into the ACC.[15] At the January 18, 2017 meeting, Agent Fuller did not advise Mr. Long not to talk to Mr. Smith any longer.[16]

On February 1, 2017, Mr. Long again met with Agent Fuller. Mr. Long disclosed that Mr. Smith and another inmate had discussed how to get drugs into the ACC, that Mr. Smith was planning to escape from the ACC, and that Mr. Smith was "associated with a

---

[11] Docket 458 at 35, 40–41, 100, 104, 124–25.

[12] Docket 458 at 100–102; Government exhibit 13. Mr. Long could not remember when he first started meeting with Agent Fuller, but remembered that it was when "it was cold outside" and that it was between six months and a year after Mr. Long had been appointed a lawyer. Docket 458 at 33–34, 39. Mr. Long also testified that his defense attorney was present at his meetings with Agent Fuller, although Agent Fuller's reports do not document this. Docket 458 at 42, 53, 105.

[13] Docket 458 at 116, 168.

[14] Government exhibit 1 at 2; Docket 458 at 105–06, 141. Mr. Long was unclear as to when he first mentioned Mr. Smith to Agent Fuller. Docket 458 at 40, 41.

[15] Docket 458 at 106, 142–43.

[16] Docket 458 at 141–42.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 3 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 3 of 20

group who hunt down drug dealers and kill them."[17] Agent Fuller testified that at this meeting he did not "direct Mr. Long to go get any additional information about John Smith[.]"[18]

On February 15, 2017, Mr. Long again met with Agent Fuller. Mr. Long disclosed that Mr. Smith told him that the ATF agents who had searched Mr. Smith's residence had failed to identify a working gun (believing it to be a fake gun) and had missed finding money and drugs located in a hidden compartment in the residence.[19]

On March 22, 2017—the day after the Grand Jury issued the First Superseding Indictment and the day that Mr. Smith was arraigned on the First Superseding Indictment—Mr. Long met with Agent Fuller, DEA Agent Michael Burke, government attorneys, and Mr. Long's defense counsel.[20] Unlike the prior meetings between Mr. Long and Agent Fuller, this meeting was specifically arranged so that Mr. Long could give the government information about Mr. Smith.[21] At the meeting, Mr. Long disclosed a number of inculpatory statements purportedly made by Mr. Smith regarding the homicides and firearms that ATF agents had missed while searching Mr. Smith's residence.[22] Agent

---

[17] Government exhibit 2; Docket 458 at 107. On June 7, 2019, while reviewing reports in preparation for the evidentiary hearing, Mr. Long amended the portion of Agent Fuller's report concerning Mr. Long disclosing that Mr. Smith was a part of any plan to bring drugs into the ACC— Mr. Long did "not recall Smith being a part of this." Government exhibit 16. Mr. Long also amended the portion of Agent Fuller's report concerning Mr. Long disclosing that Mr. Smith was associated with a group that hunts down and kills drug dealers. Government exhibit 17. Mr. Long also adjusted the number of shots involved in the homicides. Docket 458 at 64.

[18] Docket 458 at 108.

[19] Government exhibit 3.

[20] Government exhibit 5; Docket 458 at 111, 174.

[21] Docket 458 at 111.

[22] Government exhibit 5.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 4 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 4 of 20

Fuller testified that he believed that Mr. Smith had conveyed this information to Mr. Long at "some point in the past."[23]

On April 14, 2017, Mr. Long again met with FBI Agent Fuller, DEA Agent Burke, government attorneys, and Mr. Long's defense counsel.[24] During this meeting, Mr. Long disclosed additional inculpatory statements purportedly made by Mr. Smith regarding the homicides and the guns that Mr. Smith had received from his co-defendant.[25] Agent Fuller's notes from this meeting reflect that the attorneys from the U.S. Attorney's Office admonished Mr. Long that he was not to ask Mr. Smith questions about his pending case.[26]

On May 18, 2017, Mr. Long met with FBI Agent Jesse Hogan, DEA Agent Burke, government attorneys, and Mr. Long's defense counsel.[27] Agent Burke's notes from this meeting reflect that Mr. Long was told not to ask Mr. Smith questions but to listen for what information Mr. Smith would volunteer.[28] The notes also reflect that Mr. Long was "admonished to only listen."[29]

---

[23] Docket 458 at 112.

[24] Government exhibits 6, 19; Docket 458 at 112–13, 178.

[25] Government exhibits 6, 15, 19.

[26] Government exhibit 19 ("D/N ask questions about charged case. May ask about plan to assist in murder of witness(es) . . . . Do not ask, listen."); Docket 458 at 113.

[27] Government exhibits 7, 15, 18; Docket 458 at 115–16, 178.

[28] Government exhibit 18 ("D/N ask. JPS volunteers").

[29] Government exhibit 18. The Court has conducted an *in camera* review of the unredacted reports and notes associated with Mr. Long's meetings with government agents. *See* Docket 443 (sealed Order Regarding Motion to Compel Unredacted Copies of All Records Regarding Cooperator Brian Long); Docket 507 (*ex parte* notice of documents provided for *in camera* review). The Court found nothing in the unredacted reports and notes that would lead to a different ruling regarding this motion.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 5 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 5 of 20

Between July 6 and July 12, 2017, after Mr. Long was released from custody, he received phone calls from Mr. Smith.[30] Because Mr. Smith was still in custody at the ACC, these calls were recorded on the ACC's phone system.[31] On July 12, 2017, Mr. Smith called Mr. Long and "wanted him to get some documents and possibly assist him with his current legal issues."[32] That same day, Mr. Long called Agent Fuller to discuss Mr. Smith.[33] Agent Fuller then instructed Mr. Long to no longer answer any calls from Mr. Smith.[34]

Mr. Smith now moves to have his statements to Mr. Long suppressed as having been gathered in violation of his Sixth Amendment right to counsel.

## II. Legal standards

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[35] This right to the assistance of counsel exists not only at trial, but during pretrial phases "when consultation, thorough-going investigation and preparation are vitally important . . . ."[36] Thus, "[o]nce a defendant's Sixth Amendment right to counsel has attached, the government is forbidden from 'deliberately eliciting' incriminating statements from the

---

[30] Government exhibits 8, 9, 10, 11.

[31] Government exhibit 12 (disk).

[32] Government exhibit 11; Docket 458 at 122.

[33] Government exhibit 11.

[34] Government exhibit 14; Docket 458 at 123, 171–72.

[35] U.S. Const. amend VI.

[36] *Massiah v. United States*, 377 U.S. 201, 205 (1964).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 6 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 6 of 20

defendant. This prohibition has been extended to the use of jailhouse informants who relay incriminating statements from a prisoner to the government."[37]

One way the government deliberately elicits information from a defendant is when its jailhouse informant asks questions or stimulates conversation about the charged crimes.[38] The government can also deliberately elicit information "if it intentionally creates a situation likely to induce an indicted defendant to make incriminating statements without counsel's assistance."[39] However, if the defendant makes "unsolicited" and "spontaneous" statements about a charged crime, there is no Sixth Amendment violation, because "the primary concern of the *Massiah* line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation."[40]

To support a finding of a Sixth Amendment violation in cases such as the one here, a defendant must show (1) that at the time of his statements about alleged crimes his right to counsel had attached as to the crimes actually charged; (2) a jailhouse informant was acting as an agent of the government when the informant obtained the statements from the defendant; and (3) that the informant "made some effort 'to stimulate conversations about the crime charged'" or that the government otherwise intentionally created a situation likely to induce the defendant to make incriminating statements.[41]

---

[37] *Randolph v. California*, 380 F.3d 1133, 1143 (9th Cir. 2004) (citing *Massiah*, 377 U.S. at 206 and *United States v. Henry*, 447 U.S. 264 (1980)).

[38] *Massiah*, 377 U.S. at 206 (1964); *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986).

[39] *United States v. Kimball*, 884 F.2d 1274, 1278 (9th Cir. 1989).

[40] *Kuhlmann*, 477 U.S. at 440, 459 (1986); *Henry*, 447 U.S. at 271 n. 9.

[41] *Randolph*, 380 F.3d at 1143–44.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 7 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 7 of 20

### III. Application to Mr. Smith's case

#### A. Mr. Smith's right to counsel for the added charges attached on March 21, 2017.

Mr. Smith was indicted on murder, robbery, drug, and firearms charges (the "added charges") on March 21, 2017.[42] The Sixth Amendment right to counsel is offense specific; it "attaches only to charged offenses."[43] Thus, a defendant has "a right to counsel only on the offenses for which he ha[s] been indicted . . . ."[44] The right "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."[45] Because an indictment initiates adversarial judicial proceedings,[46] Mr. Smith's right to counsel for the added charges attached on March 21, 2017, when the Grand Jury returned the First Superseding Indictment. Any communications between Mr. Smith and Mr. Long prior to that date, regardless of how they were initiated, do not violate Mr. Smith's Sixth Amendment right to counsel as to the added charges in the First Superseding Indictment.

---

[42] The parties refer to Mr. Smith as having been indicted on March 22, 2017, but the Grand Jury returned the First Superseding Indictment on March 21, 2017. Docket 102 (First Superseding Indictment).

[43] *Texas v. Cobb*, 532 U.S. 162, 172–73 (2001).

[44] *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003).

[45] *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (citing *United States v. Gouveia*, 467 U.S. 180, 188 (1984)) (internal quotations omitted); *see also Kirby v. Illinois*, 406 U.S. 682, 689–70 (1972) (Sixth Amendment right to counsel attaches when the government initiates adversarial proceedings); *Maine v. Moulton*, 474 U.S. 159, 170 (1985) (same).

[46] *Moore v. Eyman*, 464 F.2d 559, 559–60 (9th Cir. 1972) (citing *Kirby*, 406 U.S. 682).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 8 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 8 of 20

### B. Mr. Smith's right to counsel on the felon in possession charge attached prior to his entry into the ACC.

Mr. Smith's right to counsel on the felon in possession charge had already attached by the time he was booked into the ACC because he had already been indicted on that charge. Mr. Smith asserts that "statements obtained by the Government in violation of the defendant's Sixth Amendment right to counsel may not be used against him at sentencing on the charge upon which the right to counsel had attached" and thus "every statement Long reported to the Government was obtained in violation of Smith's right to counsel under the Sixth Amendment."[47] Mr. Smith also maintains that if he is convicted for the felon in possession charge, his purported statements to Mr. Long could constitute obstruction of justice, they could be used as evidence at the sentencing on that charge, they could increase his sentencing range, or they could be used to reject mitigating factors.[48] According to Mr. Smith, because his statements to Mr. Long could be used against him at sentencing for the felon in possession charge, and because his right to counsel on that charge had attached by the time he made the statements, the Supreme Court's holding in *Estelle v. Smith* requires that all of the statements be suppressed as having been obtained in violation of Mr. Smith's Sixth Amendment right to counsel.[49]

However, having one's right to counsel attach and having one's Sixth Amendment rights violated are not necessarily coinciding events. Only statements obtained from a government agent who made some effort "to stimulate conversations about the crime

---

[47] Docket 465 at 10–11, 12 (under seal) (citing *Estelle v. Smith*, 451 U.S. 454 (1981)).

[48] Docket 465 at 11–12 (under seal).

[49] Docket 465 at 12 (under seal) (citing *Estelle*, 451 U.S. 454 (1981)).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 9 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 9 of 20

charged"[50] or obtained after the government otherwise "intentionally create[s] a situation likely to induce the defendant to make incriminating statements without counsel's assistance"[51] are violative of the Sixth Amendment. *Estelle* involved a capital defendant whose right to counsel had attached, but his defense counsel were not notified prior to a doctor performing a psychiatric examination at the court's direction.[52] The doctor later testified as a government witness during the penalty phase of trial.[53] The Supreme Court held that the defendant "was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's finding could be employed."[54] Thus, *Estelle*'s prohibition on the use of defendant's statements at sentencing is contingent on a finding of a Sixth Amendment violation. *Estelle* is not controlling here because, as discussed *infra*, there is no evidence that the government or its agent Mr. Long stimulated conversations about any pending charges—including the felon in possession charge—or created a situation likely to induce Mr. Smith to make incriminating statements. Without either of these actions, there is no Sixth Amendment violation if Mr. Smith's purported statements are introduced at the trial on the felon in possession charge or, in the event of a guilty verdict on that charge, if they are used against him at sentencing.

---

[50] *Kuhlmann*, 477 U.S. at 456 (quoting *Henry*, 447 U.S. at 271 n. 9); *Randolph*, 380 F.3d at 1144.

[51] *Kimball*, 884 F.2d at 1278.

[52] 451 U.S. 454 at 458 (1981).

[53] *Id.* at 458–59.

[54] *Id.* at 471.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 10 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 10 of 20

### C. Mr. Long was acting as an agent of the government.

When Mr. Long was "opened" as a confidential source, Agent Fuller provided Mr. Long with a set of standard FBI admonishments for confidential sources.[55] These admonishments made clear that the FBI could not promise leniency in any prosecution against Mr. Long.[56] Mr. Long was also not promised any financial benefit. However, "it is the relationship between the informant and the [government], not the compensation the informant receives, that is the central and determinative issue."[57] Thus, a confidential informant can be a government agent even without an express agreement that the informant will be compensated for his services if there is "sufficient undisputed evidence to show that the [government] made a conscious decision to obtain [the informant's] cooperation and that [the informant] consciously decided to provide that cooperation."[58]

The Court finds that the government consciously decided to obtain Mr. Long's cooperation, as demonstrated by Agent Fuller opening Mr. Long as a confidential informant, reviewing the standard admonishments with him, meeting with him repeatedly, and having Mr. Long meet with government agents and government attorneys specifically about Mr. Smith. The Court finds that Agent Fuller and the U.S. Attorney's Office knew that Mr. Long hoped to receive leniency if he provided useful information.[59] The Court also finds that Mr. Long cooperated with the government, both in the investigation of drugs

---

[55] Government exhibit 13; Docket 458 at 101–104.

[56] Government exhibit 13.

[57] *Randolph*, 380 F.3d at 1144.

[58] *Id.*

[59] Agent Fuller testified that Mr. Long's defense attorney told him that Mr. Long's motivation was to get consideration in his own case. Docket 458 at 133.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 11 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 11 of 20

in the ACC and in the investigation of Mr. Smith, with the hope of receiving leniency.[60] Accordingly, the Court finds that Mr. Long was acting as an agent of government beginning no later than January 9, 2017.

### D. Mr. Long did not deliberately elicit statements from Mr. Smith.

When Agent Fuller gave Mr. Long the standard set of confidential source admonishments, he did not include the optional admonishment to not solicit from inmates with pending criminal charges information regarding those charges, nor did he advise Mr. Long not to interfere with attorney-client relationships.[61] The Court notes that Mr. Long and Agent Fuller's testimony on this point is in conflict: Mr. Long testified that during their first meeting Agent Fuller told him "not to go in there and ask anybody anything."[62] Agent Fuller testified that he did not give Mr. Long this admonishment.[63] In resolving this conflict, the Court finds Agent Fuller credible. The Court finds that Agent Fuller did not personally admonish Mr. Long not to ask Mr. Smith questions about crimes for which he had already been charged.[64]

---

[60] Mr. Long testified that his defense attorney brought up the idea of him becoming a confidential source and arranged for him to meet Agent Fuller. He also testified that the reason he met with Agent Fuller was because drug smuggling into the ACC "was some pertinent information that needed to be known." Docket 458 at 36, 39. Although Mr. Long testified that becoming a confidential source was not "a goal," he also testified that he "was concentrating on, you know, trying to get out." Docket 458 at 25, 32, 33, 39. On cross-examination by the government, he agreed that he was hoping to receive a lesser sentence by becoming a confidential source. Docket 458 at 68.

[61] Government exhibit 13; Docket 458 at 101–04, 137.

[62] Docket 458 at 36. Agent Fuller testified that Mr. Long "should just be what we call a listening post and not ask any additional questions," although he did not elaborate on who instructed Mr. Long of this. Docket 458 at 118.

[63] Docket 458 at 104.

[64] Docket 458 at 140, 148, 149.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 12 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 12 of 20

However, Mr. Long testified that government lawyers attending meetings with him tried "to make sure that whatever information I was getting I was not asking for" and that he heard that "over and over again."[65] Mr. Long testified that "everybody always made sure to tell me not to ask anything."[66] Agent Fuller testified that other people in meetings with Mr. Long told him not to ask Mr. Smith about the pending homicide charges.[67] Agent Burke testified that at the March 22, 2017 meeting, an AUSA "admonished Mr. Long to be a listener, not to actively question him" and that the admonishments "were fairly expansive. It was very direct by [the AUSA] to Mr. Long that it is very important that he be a listener, not to solicit any information . . . ."[68] Agent Burke also testified that Mr. Long was given similar admonishments at the April and May 2017 meetings.[69] Most importantly, Mr. Long testified that asking questions about what other inmates are charged with is disfavored because "if somebody is asking you questions a lot, then you're afraid they're probably against you and trying to get information on you" and that he "didn't ask any questions about anything" to Mr. Smith.[70]

"[A] defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and

---

[65] Docket 458 at 43.

[66] Docket 458 at 53.

[67] Docket 458 at 152.

[68] Docket 458 at 175.

[69] Docket 458 at 179, 189.

[70] Docket 458 at 69–70, 73–74, 78.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 13 of 20

their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks."[71] There is no evidence that Mr. Long initiated conversations with Mr. Smith about the charged crimes or asked Mr. Smith about the charged crimes. The Court notes that Mr. Smith purportedly made incriminating statements to another jailhouse informant, G.C.[72] Mr. Smith's inclination to discuss the crimes with G.C. makes it more likely that he also volunteered information about the crimes to Mr. Long. There is no evidence in the record to support a finding that Mr. Long deliberately elicited statements from Mr. Smith about the charged crimes.

### E. Neither the government nor its agent Mr. Long deliberately created a situation likely to induce Mr. Smith into making incriminating statements about the charged crimes.

In *United States v. Henry*, the Supreme Court held that a Sixth Amendment violation occurs when the government "intentionally create[s] a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel . . . ."[73] Although an informant's actions—deliberately eliciting statements about the charged crimes—can create a Sixth Amendment violation, when this does not occur "the determinative issue is not the informant's subjective intentions, but rather whether the federal law enforcement officials created a situation which would likely cause the defendant to make incriminating statements."[74] Mr. Smith thus correctly asserts that "[t]he issue is whether the Government, working through Long, intentionally created a situation

---

[71] *Kuhlmann*, 477 U.S. at 459.

[72] *See* Docket 298-1 (motion to suppress Mr. Smith's statements to G.C.) (under seal).

[73] 447 U.S. 264, 274 (1980).

[74] *United States v. Harris*, 738 F.2d 1068, 1071 (9th Cir. 1984) (citing *Henry*, 447 U.S. 264).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 14 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 14 of 20

likely to induce a defendant into making incriminating statements—not whether the informant was a 'passive listener.'"[75]

Mr. Smith maintains that "Long, facing imprisonment more than 10 years, was induced to gather information in the ACC West with the expectation that he would reduce his sentence."[76] As discussed *supra*, no government agent or government attorney instructed Mr. Long to elicit statements from Mr. Smith.[77] Mr. Long was not promised any plea deals, financial rewards, or other consideration for information he could provide about Mr. Smith.[78] Although Mr. Long desired and reasonably expected to gain some benefit for working as an informant, this does not equate to an informant who is paid "on a contingent-fee basis . . . to be paid only if he produced useful information" and is "paid for furnishing the information."[79]

Mr. Smith also asserts that "[b]y allowing Long to remain on the same living unit as Smith . . . the Government fostered a situation likely to induce Smith to make incriminating statements in violation of his Sixth Amendment right to counsel."[80] The Court is unable to determine precisely when Mr. Long and Mr. Smith became cellmates, except that they

---

[75] Docket 465 at 9 (under seal).

[76] Docket 465 at 9 (under seal).

[77] *See Brooks v. Kincheloe*, 848 F.2d 940, 945 (9th Cir. 1988) (distinguishing case from *Henry* in part because "[i]n this case, the state courts have determined that [the informant] was not instructed to ask Brooks any questions . . . .").

[78] Agent Fuller provided Mr. Long with lunch after one of the meetings. Docket 458 at 155. There is no indication that this *de minimus* payout to Mr. Long was contingent on the substance of the information Mr. Long provided about Mr. Smith.

[79] *Henry*, 447 U.S. at 266, 270; *see also Brooks*, 848 F.2d at 945 ("In this case, the state courts have determined that [the informant] . . . was not promised any 'deals' or rewards for any information he might provide.").

[80] Docket 465 at 10 (under seal).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 15 of 20
Case 3:16-cr-00086-SLG Document 509 Filed 08/22/19 Page 15 of 20

were not cellmates in January of 2017 but they were cellmates by the time of the April 14, 2017 meeting.[81] Mr. Long had not asked to be housed in the same ACC mod as Mr. Smith nor asked to be his cellmate.[82] Although Mr. Long was never moved out of the ACC mod where he was housed along with Mr. Smith, Agent Fuller had not asked to have Mr. Smith celled with Mr. Long.[83] Mr. Long testified that Mr. Smith had asked to move into his cell, purportedly because Mr. Long's cell had a window through which Mr. Smith believed he could escape.[84] There is no evidence that a government agent or government attorney involved in the investigation or prosecution of Mr. Smith's case or involved in Mr. Long's role as an informant requested to have Mr. Smith and Mr. Long housed together in the same ACC unit or in the same cell.[85]

Mr. Smith also contends that Mr. Long "used their shared interest in weapons and camping to establish the relationship . . . joined Smith in the exercise yard[, a]nd, in order to keep the relationship in place after his release, Long agreed to assist Smith on his quest to acquire copies of 'bonds' that Smith thought would secure his release."[86] Agent Fuller testified that he does not tell informants not to befriend other inmates, or not to talk

---

[81] Docket 458 at 40, 179, 192.

[82] Docket 458 at 28, 29, 86.

[83] Docket 458 at 54, 123–24.

[84] Docket 458 at 86–87.

[85] *Cf. Randolph*, 380 F.3d at 1146 (citing *Kimball*, 884 F.2d at 1278) ("If, in fact, the State placed [the informant] in a cell with Randolph after he indicated his willingness to cooperate with the prosecution, the State 'intentionally create[d] a situation likely to induce [Randolph] to make incriminating statements without counsel's assistance.") (first bracket added; remaining brackets in *Randolph*).

[86] Docket 465 at 9 (under seal).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 16 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 16 of 20

about common interests, or to not be nice to them, or to not share their commissary with them, or not to cell with them.[87] Agent Fuller and Agent Burke testified that here, they did not tell Mr. Long not to befriend Mr. Smith.[88] Mr. Long did not discourage Mr. Smith from discussing the military, hobbies, or "bonds" with him.[89] Mr. Long testified that he "didn't try to do anything to overcome" any reluctance that Mr. Smith may have had about speaking with him, but that he never actively discouraged Mr. Smith's friendship and never took any steps to stop their friendship from developing.[90] However, these actions—in the absence of any additional government or informant effort—did not exploit any friendship between Mr. Smith and Mr. Long and do not equate to deliberately creating a situation likely to induce Mr. Smith into making incriminating statements.[91]

Mr. Long testified that before he was released from the ACC, he told Mr. Smith to stay in touch with him so that Mr. Long could help Mr. Smith with his "bonds."[92] Agent Fuller testified that he did help facilitate conversation between Mr. Smith and Mr. Long by getting Mr. Long's cell phone number registered in the ACC's phone system to receive outgoing calls from inmates and by facilitating having Mr. Long mail Mr. Smith a letter

---

[87] Docket 458 at 151.

[88] Docket 458 at 151, 192.

[89] Docket 458 at 44–46, 48, 90.

[90] Docket 458 at 49, 89–92.

[91] *See United States v. Jacques*, 684 F.3d 324, 331 (2d Cir. 2012) ("[I]t is not enough to show a foreseeability that Jacques's friendship with Garcia would lead Jacques to say things he would not say to someone identified as a law enforcement agent. To prove a violation of the Sixth Amendment, Jacques must also show that Garcia took actions amounting to an 'indirect and surreptitious [interrogation]' of Jacques with regard to the kidnapping/rape/murder offenses.") (second brackets in original).

[92] Docket 458 at 55.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 17 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 17 of 20

containing his cell phone number.[93] Agent Fuller testified that at that point, the interest was about Mr. Smith "trying to either escape or tamper with witnesses. We were trying to gather additional information concerning that."[94] Although these acts assisted in continuing the line of communication between Mr. Smith and Mr. Long, they are not "the equivalent of direct police interrogation."[95]

### F. There is insufficient evidence to determine when Mr. Smith made the statements to Mr. Long.

As noted by defense counsel in her opening statement at the evidentiary hearing, Agent Fuller "has filed reports, but they don't contain any dates on which Mr. Long states he got the information [from Mr. Smith]."[96] Agent Fuller testified that he did not know when Mr. Long obtained details about the homicides from Mr. Smith, but that at least as of March 22, 2017, his understanding was that the conversations between Mr. Long and Mr. Smith had occurred at "some point in the past."[97] Mr. Long also testified that he did

---

[93] Docket 458 at 117–18. Mr. Long testified that he voluntarily gave Mr. Smith his cell phone number once he was released from the ACC so that Mr. Smith could continue to contact him. Docket 458 at 91.

[94] Docket 458 at 118. The government may use jailhouse informants to obtain from a defendant "statements regarding separate offenses for which [the defendant] had not been indicted." *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003). Any purported statements made by Mr. Smith relating to uncharged crimes, *e.g.* escape or witness tampering, are not protected by the Sixth Amendment regardless of how they were elicited.

[95] *Kuhlmann*, 477 U.S. at 459; *see also Jacques*, 684 F.3d at 332 (FBI "actively" assisting informant to make calls on the attorney phone line and to visit the defendant in prison did not rise to the level of "direct police interrogation" because the informant did not actively elicit incriminating statements about the charged crimes).

[96] Docket 458 at 14.

[97] Docket 458 at 112, 147, 166, 167.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 18 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 18 of 20

not "have precise dates for anything" and thus did not know what dates Mr. Smith purportedly made statements to him regarding the homicides.[98]

Mr. Long testified that he did not bring up Mr. Smith's name to Agent Fuller until after Mr. Smith made statements about the homicides to him, meaning that at least some of Mr. Smith's purported statements about the homicides were made prior to January 18, 2017.[99] Mr. Long also testified that when Mr. Smith initially began talking with him about the homicides, Mr. Smith had not yet been indicted for the homicides and was only charged with being a felon in possession, meaning that at least some of the purported statements were made prior to March 21, 2017.[100] Mr. Long did recall that the conversations with Mr. Smith where Mr. Smith hinted that Mr. Long should kill a government witness and Mr. Smith discussed hiding items in moss beds occurred after Mr. Smith was indicted for the homicides, meaning that they were made after March 21, 2017.[101]

That multiple government agents and government attorneys did not clarify from Mr. Long *when* Mr. Smith made the purported statements is curious, particularly in light of the government attorneys' focus on ensuring that Mr. Long was complying with caselaw mandates. Because Mr. Long's reports of Mr. Smith's purported statements changed over time, the Court assumes that some of Mr. Smith's inculpatory statements were made after his right to counsel on the added charges attached on March 21, 2017. However,

---

[98] Docket 458 at 52.

[99] Docket 458 at 49–50.

[100] Docket 458 at 75.

[101] Docket 458 at 77–80.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 19 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 19 of 20

because the Court has found that Mr. Long neither "deliberately elicited" statements from Mr. Smith regarding the charged crimes nor "stimulated conversations about the crime[s] charged" and that the government did not deliberately create a situation likely to induce Mr. Smith to make incriminating statements about the charged crimes, the precise timing of Mr. Smith's purported statements does not alter the conclusion that there has been no Sixth Amendment violation.

Mr. Smith has not established that, after his right to counsel attached on the felon in possession charge or the charges added in the First Superseding Indictment, the government deliberately or intentionally created a situation which would likely cause him to make an incriminating statement. He has also not established that Mr. Long (or the government) took any action to deliberately elicit incriminating statements about the charged crimes, including the felon in possession charge. Thus, Mr. Smith has not established a Sixth Amendment violation.

In light of the foregoing, IT IS ORDERED that the motion at Docket 297-1 is denied. This order shall remain sealed for seven days before being made public.[102] If either party seeks to have this order redacted or to have it remain sealed for longer than seven days, it shall file a notice **within five days of the date of this order.**

DATED this 22nd day of August, 2019, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[102] *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents. This right is justified by the interest of citizens in keep[ing] a watchful eye on the workings of public agencies.") (internal quotations and citations omitted, brackets in original).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Sealed Order Re: Motion to Suppress All Statements and Evidence Obtained by Brian Long
Page 20 of 20
Case 3:16-cr-00086-SLG   Document 509   Filed 08/22/19   Page 20 of 20