Law Office of Suzanne Lee Elliott
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
Phone (206) 623-0291
Fax (206) 623-2186
Email: suzanne-elliott@msn.com

THE HONORABLE SHARON GLEASON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:16-cr-0086-SLG-DMS |
| Plaintiff, | |
| vs. | SMITH'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT BECAUSE THE GRAND JURY DID NOT REPRESENT A FAIR CROSS SECTION OF THE COMMUNITY |
| JOHN PEARL SMITH, II, | |
| Defendant. | |
| | EVIDENTIARY HEARING REQUESTED |

## I. MOTION

Comes now John Pearl Smith, II, by and through his counsel, Suzanne Lee Elliott, Mark Larrañaga and Steve Wells, and hereby asks this Court to set an evidentiary for the Government to demonstrate a governmental interest sufficient for this Court to disregard this Court's systemic and substantial deviation from its 2015 Jury Plan [2015 Plan], and to excuse the disproportionate exclusion of two distinct groups in the Grand Jury selection process. This motion is based upon the Sixth and Eighth Amendments to the United States Constitution and the Jury Selection and Service Act of 1968, 28 U.S.C. §1861 et. seq.[JSSA]; and the following exhibits: Exhibit 1 - Declaration of Jeffrey Martin; Exhibit 2 - 2015 Jury Plan; Exhibit 3 – AO-12 for 2015; Exhibit 4 - Proration Formula.

Smith notes there have been at least three prior jury composition challenges in the District of Alaska. Smith's challenge differs substantially from the previous challenges and is made under different Circuit authority. In *United States v. Pleier*, 849 F. Supp. 1321 (D. Alaska, 1994), the defendant challenged the composition of both the grand and petit

MOTION TO DISMISS THE INDICTMENT –
GRAND JURY - 1

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

U.S. v. SMITH, 3:16-cr-00086-SLG-DMS
Case 3:16-cr-00086-SLG Document 525   Filed 10/05/19   Page 1 of 13

juries. In that case, the defendant challenged this Court's use of "districts," and argued that petit juries in Anchorage underrepresented Native Alaskans. This Court found that the absolute and comparative disparities were "insubstantial" on petit juries; that Pleier failed to demonstrate the exclusions were due to systemic issues; and rejected Pleier's arguments that jurors should be draw from registered voter lists rather than actual voter lists, the list should be supplemented from other sources such as the Alaska Permanent Fund list and other suggestions to widen the universe of potential jurors.

In *United States v. Seugasala*, No. 3:13-cr-00092, this Court found that the defendant failed to demonstrate that the underrepresentation of a distinct group in the Grand Jury selection procedures – Pacific Islanders – was due to a systemic exclusion.

In *United States v. Sabil Mujahid*, 3:09-cr-00034, the defendant belatedly challenged the composition of the petit jury empaneled to hear his case. This Court was constrained by Ninth Circuit case law – since abandoned - that required the use of the "absolute disparity" test as the measure of underrepresentation. Under that test, it found no prima facie evidence of a Sixth Amendment violation.

Because these earlier cases do not address the issues raised by Smith, they have limited application to this challenge.

**II. FACTS AND ARGUMENT**

Adherence to the constitutional and statutory requirements for a fair cross section of the community and provision for opportunity for all qualified citizens to serve on a jury is of paramount importance in a capital case. In capital cases, the jury will not simply render a factual judgment—guilt or innocence—but at sentencing will issue "an ethical judgment expressing the conscience of the community." Jeffrey Abramson, *Death–Is– Different: Jurisprudence and the Role of the Capital Jury*, 2 Ohio St. J.Crim. L. 117, 119

MOTION TO DISMISS THE INDICTMENT –
GRAND JURY - 2

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

U.S. v. SMITH, 3:16-cr-00086-SLG

Case 3:16-cr-00086-SLG Document 525   Filed 10/05/19   Page 2 of 13

(2004) (citing *Spaziano v. Florida*, 468 U.S. 447, 469 (1984) (Stevens, J., concurring in part and dissenting in part)). And, as Justice Marshall eloquently noted, "[w]hen any large and identifiable segment of the community is excluded ... the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable." *Peters v. Kiff*, 407 U.S. 493, 503 (1972) (Marshall, J.). The result is not merely the appearance of bias; it may well be its reality. *See id.* at 503-04 (where there is an "appearance of bias," prejudice is automatically assumed because the exclusion of a segment of the community can deprive the jury of "a perspective on human events that may have unsuspected importance in any case that may be presented").

A criminal defendant has a constitutional right stemming from the Sixth Amendment to a fair and impartial jury pool composed of a cross-section of the community. *See Holland v. Illinois*, 493 U.S. 474, 480 (1990); *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). Federal jury selection is governed by the Jury Selection and Service Act of 1968, Pub. L. No. 90-274, 82 Stat. 54 (codified at 28 U.S.C. § 1861 et seq.), which requires that each district court establish a jury selection plan to include "persons residing in each of the counties, parishes, or similar political subdivisions within the judicial district or division . . . " and to "ensure that each county, parish, or similar political subdivision within the district or division is substantially proportionally represented in the master jury wheel." 28 U.S.C. § 1863(b)(3).

While many federal judicial districts are divided into divisions by statute, *see*, *e.g.*, 28 U.S.C. § 81 (dividing Alabama's districts into divisions), Alaska contains no statutorily created divisions. 28 U.S.C. § 81A. For districts such as Alaska, which lack statutory divisions, "division" as used in the Act means "such counties, parishes, or similar political subdivisions surrounding the places where court is held as the district court plan shall

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 3

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

Case 3:16-cr-00086-SLG Document 525 Filed 10/05/19 Page 3 of 13

determine: Provided, That each county, parish, or similar political subdivision shall be included in some such division." 28 U.S.C.§ 1869(e).

Under the Jury Selection Act and the Sixth Amendment, litigants in federal courts who are entitled to trial by jury have the right to "juries selected at random from a fair cross section of the community." 28 U.S.C. § 1861. Jurors must be selected from either "voter registration lists or the lists of actual voters of the political subdivisions within the district or division." *Id*. § 1863(b)(2). However, a district's jury selection plan must "prescribe some other source or sources of names in addition to voter lists where necessary to" meet the fair cross- section requirement, guarantee that all citizens have the opportunity to be considered for jury service, and ensure no citizen is excluded from jury service due to race, color, religion, sex, national origin, or economic status. *Id*. §§ 1861, 1862, 1863(b)(2); *see also Federal Jury Selection Act: Report from the Comm. On the Judiciary*, 90th Cong. 4-5 (1968) ("The bill specifies that voter lists be used as the basic source of juror names [but the] bill requires that the voter lists be supplemented by other sources whenever they do not adequately reflect a cross section of the community….The voting list requirement, together with the provision for supplementation, is therefore the primary technique for implementing the cross sectional goal of this legislation.")

The Supreme Court in *Duren v. Missouri*, 439 U.S. 357 (1979) established a three-part test for determining whether a jury selection process passes constitutional muster under the constitutional fair cross-section requirement:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 4

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

U.S. v. SMITH, No. CR-00085-RSL
Case 3:16-cr-00086-SLG Document 525 Filed 10/05/19 Page 4 of 13

*Id.* at 364.

Most jury composition challenges fail on the third prong of the *Duren* analysis. Since Smith has identified systemic issues, he will address that problem first because it explains why two distinctive groups, African Americans and, in particular, Native Americans /Alaska Natives, were not fairly represented in the Grand Jury venire.

A. SYSTEMIC PROBLEMS VIOLATED SMITH'S RIGHT TO A GRAND JURY DRAWN FROM A FAIR CROSS-SECTION OF THE COMMUNITY.

The methods used by the Clerk do not comply with the JSSA and the Court's published Plan.

1. Violation Of The Jury Selection And Service Act

Under the 2015 Grand Jury Plan there is no way to ascertain whether the Grand Jury members reflect a fair cross section of the persons residing in the five Alaska divisions. The JSSA requires that any plan adopted by the District Court include procedures that shall be designed to ensure the random selection of a fair cross section of the persons residing in the community in the district or division wherein the court convenes. These procedures

> shall ensure that names of persons residing in each of the counties, parishes, or similar political subdivisions within the judicial district or division are placed in a master jury wheel; and shall ensure that each county, parish, or similar political subdivision within the district or division is substantially proportionally represented in the master jury wheel for that judicial district, division, or combination of divisions. For the purposes of determining proportional representation in the master jury wheel, either the number of actual voters at the last general election in each county, parish, or similar political subdivision, or the number of registered voters if registration of voters is uniformly required throughout the district or division, may be used.

28 U.S.C. § 1863(b)(3). In order to monitor the jury selection procedures under the JSSA and each district's plan, "each district court shall submit a report on the jury selection process within its jurisdiction to the Administrative Office of the United States Courts in

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 5

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

*U.S.* Case 3:16-cr-00086-SLG Document 525 Filed 10/05/19 Page 5 of 13

such form and at such times as the Judicial Conference of the United States may specify. 28 U.S.C. § 1863(a).

Based upon an examination of the data provided by the Clerk, there is no reliable information to determine the demographics of each of the five divisions. *See* Exhibit 1, Report of Martin at page 3. Thus, the AO-12 forms supplied by the Clerk for the selection of Smith's Grand Jury do not describe the current demographic information for each of the five divisions. Exhibit 3, AO-12 for 2015. And the census numbers on the form reflect the 2010 decennial census data and for all persons – including non-citizens. Thus, Mr. Martin concludes:

> Because the representativeness of Grand Juries in Alaska depend on the representativeness of the divisional Qualified Jury Wheels and an accurate proration method that reflects the population differences between the divisions, it would be very difficult to monitor the representativeness of Grand Juries under the Jury Plan.

Exhibit 1, Report of Martin at 6.

This lack of essential information violates the JSSA and frustrates its goals because there is no way for Smith to enforce his Sixth Amendment right to a fair and impartial Grand Jury pool composed of a cross-section of the community.

2. Violation Of The 2015 Plan

The 2015 Plan provides that Grand Juries be selected from each of five divisions within the federal judicial district, rather than from the entire judicial district, *i.e.*, the entire state. 2015 Plan, Exhibit 2, Section 2.4 at page 3. The plan notes that "Alaska is not divided into Counties, Parishes, or similar political subdivisions; therefore, State election districts must be used." Exhibit 2, 2015 Plan at § 1.2(b) n.1 (2015). Accordingly, the plan provides that each of the five divisions correspond to a subset of the state's election districts, and that "the required proportions of names from each election district [be] maintained." *Id*. § 2.3(a). The plan further provides that the grand jury will be drawn from

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 6

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

U.S. v. SMITH, No. 3:16-cr-00086-SLG
Case 3:16-cr-00086-SLG Document 525 Filed 10/05/19 Page 6 of 13

each division on "a pro rata basis according to the number of voters in each division and [will] constitute[] the grand jury for the entire district." *Id*. § 5.1(b).

The 2015 plan calls for five master wheels, one from each of the "divisions" set by this Court. The divisions are Anchorage, Fairbanks, Juneau, Ketchikan and Nome.[1] The Grand Jury venire is supposed to be drawn district-wide from each of the five district wheels "on a pro rata basis according to the number of voters in each division." Exhibit 1, Report of Martin at 5.1(b) at page 6. Based upon the available data for 2015, the proration data should have been as follows: There were 513,289 registered voters on the list used to create the Master Jury Wheel. Of those voters, 352,582 were in the Anchorage division, 86,267 were in the Fairbanks division, 40,750 were in the Juneau division, 16,086 were in the Ketchikan division, and 17,064 were in the Nome division. The calculated proration described by the 2015 Plan should have been **68.69%** for the Anchorage division, **16.81%** for the Fairbanks division, **7.94%** for the Juneau division, **3.13%** for the Ketchikan division, and **3.43%** for the Nome division. See Exhibit 1, Declaration of Martin and Exhibit 3, Data of Registered Voters.

Here, however, the Clerk was instructed to use a different proration calculation. *See* Exhibit 4.[2] The Grand Jury venire was summoned as follows: **50%** from Anchorage, **45%** from Fairbanks, **2%** from Juneau, **2%** from Ketchikan and **1%** from Nome. It is unclear where this Proration Formula came from and why it differs from that called for the 2015 Plan. And even then the Clerk used a third formula not set out anywhere: The proration that was actually used for the 125 persons summoned to create the Grand Jury that indicted John Pearl Smith II was prorated with **52.80%** from the Anchorage division,

---

[1] Petit juries are drawn from the wheel for the division in which the trial will take place. Smith's petit jury will be drawn from the Anchorage division.

[2] The defense does not know how this proration formula was calculated or who promulgated it.

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 7

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

U.S. v. SMITH, No. 3:16-cr-00086-SLG-DMS
Case 3:16-cr-00086-SLG Document 525 Filed 10/05/18 Page 7 of 13

**41.60%** from the Fairbanks division, **3.20%** from the Juneau division, **1.60%** from the Ketchikan division, and **0.80%** from the Nome division.

Because of the difference between the proration described in the plan and the actual proration used, of the 125 persons summoned for Smith's Grand Jury there should have been 20 more persons from the Anchorage Division, 31 fewer persons from the Fairbanks Division, 6 more persons from the Juneau Division, 3 more from the Ketchikan Division and 2 more from the Nome Division.

B. THESE SYSTEMIC PROBLEMS RESULTED IN A GRAND JURY THAT DID NOT REPRESENT A CROSS-SECTION OF THE COMMUNITY, DID NOT ALLOCATE JURY DUTY FAIRLY AMONG THE CITIZENRY, AND FAILED TO PROVIDE FOR DISQUALIFICATIONS, EXCUSES, EXEMPTIONS AND EXCLUSIONS ON THE BASIS OF OBJECTIVE CRITERIA ONLY.

The systemic issues in Smith's case are a result of a substantial deviations from the JSSA and the 2015 Plan. The Act provides that "[i]f the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate." 28 U.S.C. § 1867(d).

"Technical violations are insubstantial where they do not frustrate the Act's goals of obtaining jury lists that are a cross-section of the community, allocating jury duty fairly among the citizenry, and determining disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only." *United States v. Erickson*, 75 F.3d 470, 477 (9th Cir. 1996) (citing *United States v. Nelson*, 718 F.2d 315, 318 (9th Cir. 1983)). In *Erickson*, the violation at issue was a failure of the district court, facing a shortage of venirepersons, to draw additional venirepersons from the entire district, and instead limiting the pull to a 25-mile radius. This excluded four Indian reservation lands. The Circuit Court reasoned that, because the appellants "failed to make out a prima facie case

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 8

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

U.S. v. SMITH, No. 3:16-cr-00086-SLG Case 3:16-cr-00086-SLG Document 525 Filed 10/05/19 Page 8 of 13

of discrimination," there was no substantial violation. *Id.* Thus, the substantial failure requirement seems to get collapsed into the merits of the fair cross-section requirement.

Smith can show that the violations of the JSSA and the substantial violation of the 2015 Plan resulted in fair cross-section violation, subject to the test from *Duren*. Smith can also show that substantial noncompliance frustrated another of the JSSA's goals, as enumerated by the *Erickson* court – namely, fair allocation of jury duty among the citizenry.

Based upon the available data, these violations, in particular the incorrect proration, excluded distinctive groups from the Grand Jury venire and substantially reduced their chances of serving on a Grand Jury. The improperly overrepresented Fairbanks division is comprised of 1.5% African Americans, but the underrepresented Anchorage division is comprised of 1.97% African Americans. Even more striking is the effect on the potential Native Alaskan/Native American voters. The overrepresented Fairbanks division is comprised of 10.14% Native Alaskan/Native Americans, but the underrepresented Juneau division has 11.33% Native Alaskan/Native Americans, the underrepresented Ketchikan division has 10.85% Native Alaskan/Native Americans and the underrepresented Nome division is comprised of **72.08%** Native Alaskan/Native Americans. By failing to summon 11 additional persons from those divisions in favor of the Fairbanks division, the Grand Jury failed to represent a fair cross section of the community even under the limited demographic information provided.

C. DISTINCTIVE GROUPS WERE EXCLUDED FROM THE GRAND JURY SELECTION PROCESS

Alaska Natives constitute a distinctive group. *United States v. Pleier*, 849 F. Supp. 1321, 1324 (D. Alaska 1994) citing *United States v. Atlantic Richfield Co.*, 435 F.Supp. 1009 (D. Alaska 1977), aff'd, 612 F.2d 1132 (9th Cir.), *cert. denied*, 449 U.S. 888, 101

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 9

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

U.S. v. SMITH No. CR16-086-RSL-DOMS    Case 3:16-cr-00086-SLG Document 525   Filed 10/05/19   Page 9 of 13

S.Ct. 243, 66 L.Ed.2d 113 (1980); *Alaska Natives And The Land, prepared by Federal Field Committee for Development Planning in Alaska* (U.S.G.P.O.1968) at pp. 3–11. *See also United States v. Brady*, 579 F.2d 1121, 1131 (9th Cir.1978), *cert. denied*, 439 U.S. 1074 (1979) (American Natives are a distinctive group). Similarly, African Americans are a distinctive group. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986)(" Exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure."); *see also United States v. Cannady*, 54 F.3d 544, 547 (9th Cir. 1995) (Noting that both the Court of Appeals and the Supreme Court have repeatedly recognized African-Americans to be a distinctive group in the community.)

D. THE REPRESENTATION OF THESE GROUPS IN VENIRES FROM WHICH JURIES ARE SELECTED IS NOT FAIR AND REASONABLE IN RELATION TO THE NUMBER OF SUCH PERSONS IN THE COMMUNITY

Courts have employed a number of analytical methods when faced with jury panel fair cross-section cases, including the absolute disparity test, the absolute impact test, the comparative disparity test, and standard deviation analysis. *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1160 (9th Cir. 2014). Historically, the Ninth Circuit relied exclusively on the absolute disparity test. But in *Hernandez-Estrada*, the Court concluded it is appropriate to abandon the absolute disparity approach. *Id*. at 1164.

> However, we do not prescribe an alternative exclusive analysis to be applied in every case. The Supreme Court has declined to specify "the method or test courts must use to measure the representation of distinctive groups in jury pools." *Berghuis,* 559 U.S. at 329, 130 S.Ct. 1382. We follow its lead and also decline to confine district courts to a particular analytical method. As our discussion has illustrated, the appropriate test or tests to employ will largely depend on the particular circumstances of each case. Instead, we hold that courts may use one or more of a variety of statistical methods to respond to the evidence presented. Allowing courts and defendants to use a more robust set of analytical tools will ensure more accurate, and narrowly tailored, responses to individual Duren challenges, which we can then assess on a fully developed record specific to the circumstances presented.

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 10

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

Case 3:16-cr-00086-SLG Document 525 Filed 10/05/19 Page 10 of 13

*Id.* at 1164–65.[3]

Under any test, the Grand Jury selection process in this case caused underrepresentation of African Americans and Native Americans/Alaska Natives. Using absolute disparity, African Americans were underrepresented by 1.7% and Native Americans/Alaska Natives by 3.85%.

But as the declaration of Professor Jeffrey Martin points out, the threshold for absolute disparity is 10%. If this Court used only that measure, it could consistently find that African Americans are never underrepresented because they make up less than 10% of Alaska's population. See Exhibit 1, Declaration of Martin at 4.

Thus, it is more appropriate to use Comparative Disparity. Under that calculation, African Americans are 50.39% underrepresented. In real life terms, this means that more than half of the African Americans expected to be included in the Grand Jury pool were not included.

And the comparative disparity for Native American/Alaska Native is 29.14%. In real life terms, this means that more than 25% of the Native population expected to be included in the Grand Jury pool were excluded. *See* Exhibit 1, Declaration of Martin.

Moreover, these disparities are not due to random factors. The percent of African Americans' in the prorated divisions differs from the African Americans in the population by 13 standard deviations. The percent of African Americans and Native Americans in the prorated divisions differs from the population by 16 standard deviations. In each case the deviations are statistically significant. See Exhibit 1, Declaration of Martin at 3. And, the

---

[3] In *Berghuis v. Smith*, 559 U.S. 314, 329–30 (2010), the Court stated that it had "no cause to take sides today on the method or methods by which underrepresentation is appropriately measured."

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 11

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

proration formula favored persons in the Ketchikan Division over persons in the Nome Division – which has the highest number of Native Alaskans. *Id*.

E.  THE BURDEN SHIFTS TO THE GOVERNMENT TO DEMONSTRATE A SIGNIFICANT GOVERNMENTAL INTEREST SUFFICIENT TO DISREGARD THE SYSTEMIC PROBLEM.

Once the defendant has established a prima facie case, the burden shifts to the Government to show that a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process that result in the disproportionate exclusion of a distinctive group. *Duren*, at 367–68. Smith has made that prima facie showing. The Government must now demonstrate why deviations from the JSSA and the 2015 Plan serve a "significant state interest."

If the Government cannot do so, the Superseding Indictment must be dismissed.

### III. CONCLUSION

This Court should find that Smith has presented prima facie evidence of a fair cross section violation and grant an evidentiary hearing placing the burden on the Government to show that a significant governmental interest sufficient to disregard the systemic problem.

Signed this 5th day of October 2019.

/s/Suzanne Lee Elliott
Law Office of Suzanne Lee Elliott
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104
Phone (206) 623-0291
Fax (206) 623-2186
Email: Suzanne-elliott@msn.com

**CERTIFICATE OF SERVICE**

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 12

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
FAX (206) 623-2186

Case 3:16-cr-00086-SLG Document 525   Filed 10/05/19   Page 12 of 13

I, SUZANNE LEE ELLIOTT, hereby certify that on October 5th, 2019, I filed foregoing document with the United States District Court's Electronic Case Filing (CM/ECF) system, which will serve one copy by email on Assistant United States Attorneys FRANK V. RUSSO, WILLIAM A. TAYLOR, JAMES B. NELSON and KAREN VANDERGAW.

/s/ Suzanne Lee Elliott
Law Office of Suzanne Lee Elliott
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104
Phone: (206) 623-0291
Fax: (206) 623-2186
Email: suzanne-elliott@msn.com

MOTION TO DISMISS THE INDICTMENT – GRAND JURY - 13

LAW OFFICE OF SUZANNE LEE ELLIOTT
1300 Hoge Building
705 Second Avenue
Seattle, Washington 98104-1705
(206) 623-0291
Fax (206) 623-2186

Case 3:16-cr-00086-SLG Document 525   Filed 10/05/19   Page 13 of 13