# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN PEARL SMITH, II,

    Defendant.

Case No. 3:16-cr-00086-SLG-1

## OMNIBUS ORDER REGARDING RULE 12.2 PROCEDURES

At Docket 626 is Defendant John Pearl Smith, II's Notice Pursuant to Fed. R. Crim. P. 12.2(b)(2). Pending before the Court are two motions regarding Federal Rule of Criminal 12.2 procedures. At Docket 628 is Mr. Smith's Motion for an Order Establishing Procedures—Fed. R. Crim. P. 12.2(c).[1] The government responded at Docket 649. Mr. Smith replied at Docket 661. At Docket 648 is the government's Motion to Compel Mental Health Examination of Defendant and for Discovery. Mr. Smith responded at Docket 660. The government replied at Docket 669.

Mr. Smith requested a hearing on his motion, but the Court finds that a hearing is not necessary to its determinations.[2] Although the parties' respective arguments are not set forth below, the Court has reviewed and considered each

---

[1] Mr. Smith's memorandum in support of his motion is at Docket 629.

[2] Docket 628 at 1.

parties' positions regarding Rule 12.2 procedures in reaching its determinations. Pursuant to Rule 12.2(c)(1)(B),[3] the Court finds that the following procedures will preserve Mr. Smith's Fifth and Sixth Amendment rights and allow the government to adequately prepare a rebuttal to Mr. Smith's noticed intent to present mental health evidence.

**I. Government expert evaluation**

    A. The Court grants the government's motion for an examination of Mr. Smith pursuant to Rule 12.2(c)(1)(B).

    B. At least **seven business days** prior to conducting a Rule 12.2 examination, the government shall provide written notice of the examination to defense counsel. If defense counsel objects to any particular testing or examination and the parties are unable to reach an agreement, defense counsel must file an objection with the Court at least **four business days** before the examination is scheduled to occur.

    C. The government's notice must contain the date and time of the proposed examination.

    D. The government's notice must contain the kinds of mental health examiner(s) who will evaluate the defendant, the specific nature of any testing that the government examiner(s) will perform, and what issues

---

[3] "If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."

the examination will encompass. The names, areas of expertise, and curricula vitae of the examiners do not need to be disclosed.[4]

E. Mr. Smith's mental health experts who are expected to testify at trial shall provide the government examiner(s) with all of Mr. Smith's past medical records that were provided to the testifying defense mental health experts.

F. The defense need not disclose to the government or to a government examiner at this time the names, records, or reports of any retained non-testifying mental health experts.[5]

G. No result, report, or recording of the government's examination of Mr. Smith, or any medical record provided by the defense pursuant to paragraph I(E) of this order, shall be used by the government for any purpose other than to rebut expert testimony relating to Mr. Smith's mental condition offered by the defense during sentencing proceedings.

## II. Conduct of government expert evaluation

A. The Court declines to appoint firewall counsel at this time. However, if after its review of the mental health reports, the Court has concerns about

---

[4] *See* Docket 488 at 3 n. 11 (setting out identical requirements for the defense Rule 12.2 notice).

[5] *See United States v. Williams*, 1:06-cr000079-JMS-KSC, Docket 1356 (D. Haw. Sept. 24, 2010) (holding that *Pawlyk v. Wood*, 248 F.3d 815 (9th Cir. 2001), "does not mandate the disclosure of the reports an test results from non-testifying experts" to allow the government's examiners to review the information in those reports and denying government motion for disclosure of reports of non-testifying defense mental health experts); Fed. R. Crim. P. 16(b)(1)(B)(ii), (C).

the government examiner(s) potentially encroaching on Mr. Smith's Fifth or Sixth Amendment rights, it may reconsider appointing firewall counsel at that time.

B. Neither defense counsel nor counsel for the government, or any member of their respective teams (*e.g.*, mitigation specialists, investigators, paralegals), shall be present during the government's examination of Mr. Smith. Defense counsel may make themselves available to consult with Mr. Smith upon his request during the examination.

C. Before conducting any examination of Mr. Smith, each government examiner shall sign and file with the Court under seal a written confirmation that he or she understands his/her obligation not to discuss the examination, or any information related to or derived from the examination, with anyone unless and until the results of the examination are released to the government. The confirmation shall acknowledge that the examiner understands that any violation of this order may be punishable by contempt of this Court.

D. Each government examiner shall videotape, with audio, the entirety of his or her examination of Mr. Smith.

E. The government's examination of Mr. Smith shall occur at FDC SeaTac unless the government shows good cause why the examination should occur elsewhere.

F. By **May 29, 2020**, each government examiner shall deliver directly to the Court at

>United States District Court
>222 West 7th Avenue, Room 229
>Anchorage, AK 99513
>Attn: Judge Sharon L. Gleason
>Case No. 3:16-cr-00086-SLG-1

two identical copies of (a) the results of any Rule 12.2 examination; (b) the audiovisual recording of any Rule 12.2 examination; (c) any medical records provided by the defense pursuant to paragraph I(E) of this order; and (d) the examiner's report, in sealed envelopes. Each government examiner shall also provide to the Court a signed declaration that the materials delivered to the Court are true, accurate, and complete copies.

G. Each government examiner shall maintain the confidentiality of any materials he or she receives from defense experts, the content of his or her testing of Mr. Smith, and the results, reports, and recordings of any testing of Mr. Smith. Each government examiner shall not disclose any of the materials outlined in paragraphs II(F) and II(G) of this order, or any other materials or information related to an examination of Mr. Smith, to any representative of the government, any representative of the defense team, or any other person unless expressly authorized by a court order.

**III.    Scope of government expert evaluation**

   A. Each government examiner shall conduct testing of Mr. Smith only as necessary to rebut the defense experts' expected mental health testimony.  The government's examination(s) shall not be used to search for any motive for the alleged crimes.  Although Mr. Smith indicates that his experts performed no personality, psychological, or neuropsychological testing, the Court will not prohibit the government from conducting such testing, but only to the extent such testing is reasonably related to the limited purpose of rebutting the anticipated defense Rule 12.2 evidence.

   B. If the government demonstrates that multiple examiners will not result in duplicative testing, more than one government examiner may conduct the examinations.  However, to avoid duplicative testing, the government examiners shall not, singly or cumulatively, administer more than one test to measure any specific function.

   C. The Court finds that defense challenges to the scope and methodologies of the government examination(s) will be more properly before the Court as evidentiary objections to admissibility should Mr. Smith reaffirm that he intends to present Rule 12.2 evidence during a penalty phase.  The Court intends on strictly limiting the admissibility of government examination results; if the government examination(s) go beyond what is

reasonably related to rebutting the defense expert's expected mental health testimony, the Court will exclude the results of that portion of the examination.[6]

## IV. Disclosure of government expert reports

A. Upon receipt of the materials outlined in paragraph II(F), the Clerk of Court shall hold these materials in a secure location—without opening them or uploading them into the electronic case file—until a verdict is returned.

B. The Court will not review the materials for exculpatory evidence to be disclosed to the defense.

C. If Mr. Smith is found guilty of one or more capital crimes, the defense shall, **within 24 hours of the verdict**, file a notice confirming or withdrawing his intent to introduce expert evidence relating to mental condition during sentencing proceedings.

D. If Mr. Smith confirms his intent to introduce expert evidence relating to mental condition at sentencing, the reports of any examination by government experts shall be released to defense counsel immediately, that same business day (Rule 12.2(c)(2)). The Court will also review the materials at that time.

---

[6] *Kansas v. Cheever*, 571 U.S. 87, 97 (2013) ("[T]estimony based on a court-ordered psychiatric evaluation is admissible only for a 'limited rebuttal purpose.'") (quoting *Buchannan v. Kentucky*, 483 U.S. 402, 424 (1987)).

E. Mr. Smith shall have **five business days** after receiving the government experts' report(s) to either re-confirm his intent to present mental health evidence or to withdraw his notice. If Mr. Smith withdraws his notice, the results of any examinations by government experts shall not be released to the government. Those reports shall remain under seal. If Mr. Smith re-confirms his intent to present mental health evidence, the defense shall then (1) immediately disclose to the government the government examiner(s)' reports, records, and recordings; (2) disclose to the Court and to the government the results and reports of any Rule 12.2 examination conducted by a defense expert about which the defense intends to introduce expert evidence; and (3) give to the Court and to the government a written summary of any mental health expert witness testimony that the defendant intends to use.[7]

F. Even if Mr. Smith confirms his intent to present Rule 12.2 evidence, he may withdraw his notice of intent at any time before such evidence is presented at a sentencing proceeding. In that event, the fact of notice, results, or reports of any mental examination, or any facts disclosed only through a mental examination, shall not thereafter be admissible against Mr. Smith.

---

[7] Fed. R. Crim. P. 16(b)(1)(C).

G. Failure of Mr. Smith to participate in the government's examination, or to confirm his intent to introduce Rule 12.2 evidence at the penalty phase may result in forfeiture of the right to present defense Rule 12.2 evidence.

H. If Mr. Smith is acquitted of all capital charges, or if he withdraws his notice prior to disclosure of the government's expert materials, the Court will consult with the parties at that time as to whether the materials should be destroyed.

## V. Scheduling

The scheduling order at Docket 647 is amended as follows:

| | |
|---|---|
| 05/15/2020 | Deadline for completion of government's testing of Mr. Smith |
| 05/29/2020 | Deadline for results, reports, and recordings of government's testing to be submitted to the Court under seal directly from the experts. |

In light of the foregoing, IT IS ORDERED that the motion at Docket 628 and the motion at Docket 648 are both granted in part and denied in part as set forth above.

DATED this 13th day of February, 2020, at Anchorage, Alaska.

                                                 */s/ Sharon L. Gleason*
                                                 UNITED STATES DISTRICT JUDGE