| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:16-CR-26 |
| | § | |
| CHRISTOPHER EMORY CRAMER (1) | § | |
| RICKY ALLEN FACKRELL (2) | § | |

## MEMORANDUM AND ORDER

Pending before the court are: (a) Defendants Christopher Emory Cramer and Ricky Allen Fackrell's (collectively, "Defendants") Joint Motion Pursuant to *Brady v. Maryland* for Discovery Regarding the Government's Motive Theory as Admitted in the Civil Pleadings Regarding Johns' Murder (Doc. No. 234), wherein Defendants seek an order directing the Government to provide information related to the Government's "motive theory" as alleged in the civil lawsuit brought by Leo Johns's ("Johns") estate and heirs against the former warden of the Medium Security Institution ("MSI") at the Federal Correctional Complex ("FCC") in Beaumont, Texas, Francisco Lara ("Lara"), and other Bureau of Prisons ("BOP") employees; and (b) the Government's Response and Motion in Limine (Doc. No. 255), wherein the Government requests that defense counsel approach the bench before referencing the civil lawsuit. Having considered the motions, the response by the Government, the pleadings, and the applicable law, the court is of the opinion that Defendants' motion should be denied and the Government's motion in limine should be granted.

I. <u>Background</u>

On June 2, 2016, a grand jury returned a two-count superseding indictment charging Defendants, inmates of the United States Penitentiary ("USP") in Beaumont, Texas, with: (1) the

unlawful killing of a fellow inmate, Johns, with premeditation and malice aforethought, in violation of 18 U.S.C. §§ 1111, 1112 ("Count One") and (2) conspiracy to kill Johns with premeditation and malice aforethought, in violation of 18 U.S.C. § 1117 ("Count Two").[1]  *See* Doc. No. 47.  The maximum penalty if convicted of Count One is death.  Voir dire in this case is currently set to begin March 5, 2018, followed by trial on April 9, 2018.  *See* Doc. No. 77.

On June 8, 2016, Johns's estate and heirs filed suit in the United States District Court for the Eastern District of Texas, case number 1:16-CV-198, against Lara, the former warden of the MSI at FCC Beaumont, and several BOP correctional officers.  Defendants were not parties to this civil action.  The plaintiffs alleged violations of the Fourth, Fifth, and Eighth Amendments to the United States Constitution, along with state law claims for negligence, gross negligence, and intentional infliction of emotional distress.  On December 19, 2016, the court dismissed the action in its entirety in accordance with the parties' Stipulation of Voluntary Dismissal.  The Assistant United States Attorney ("AUSA") who handled the civil case on behalf of Lara notes that "no discovery was conducted in the civil matter prior to dismissal," and the Government only filed two documents over the course of the entire action:  (1) Motion to Dismiss Or, in the Alternative, Motion for Summary Judgment; and (2) an affidavit by BOP Special Investigative Agent ("SIA") Reshay Childress ("Childress") (the "Childress Affidavit"), which was appended to the motion to dismiss.  The Childress Affidavit was filed under seal on October 13, 2016; however, the court, at the Defendants' request, unsealed the affidavit on December 11, 2017.

---

[1] The Government contends that Defendants stabbed Johns more than sixty times.

In pertinent part, the Childress Affidavit states that on June 16, 2014, fellow inmate Brian Green ("Green") made a telephone call to Danny Richley ("Richley"), who is the non-inmate step-brother or brother-in-law[2] of Johns. During the call:

> Green told [Richley] that [Johns] made a deal with the [Soldiers of Aryan Culture (the "SAC")] that he was not going to be using drugs or drinking anymore. [Green] told [Richley] that [Johns] didn't hold up his end of the deal. [Richley] replied to inmate Green by stating [Johns] thought this was going to happen a year ago when he signed his power of attorney. [Green] told [Richley] that before Johns went out on writ he stole some "shit" from his cellie, who was another member of [the] SAC. And [the SAC] gave him a pass. [Green] alleges inmate Johns was "disciplined" for this conduct (beat up) and he was supposed to not drink or use drugs any more. [Green] claims inmate Johns disregarded this agreement and continued his behavior. [Richley] claims inmate Johns would previously run up large debts with drug dealers on the street and [Richley] would have to make it right with them.

Childress Affidavit at 5 ¶ 10, *Johns v. Lara*, No. 1:16-CV-198 (E.D. Tex. Oct. 13, 2016), ECF 14-1 (footnote omitted).

II. Analysis

    A.    Defendants' *Brady* Request

Defendants request that the court order the Government to provide information related to its "motive theory" as alleged in the civil lawsuit brought by Johns's estate and heirs against Lara and several BOP correctional officers. Specifically, Defendants contend that "the [G]overnment will argue that [Defendants] were motivated to murder Johns because he violated SAC policy in his continued use of drugs and alcohol." Doc. No. 234, at 1. In support of their position, Defendants aver that "[t]he [G]overnment recently admitted that 'the conduct by [Johns] demonstrates that he was more than 50% responsible for his injuries, thus allowing a complete bar

---

[2] The Childress Affidavit states that Richley and Johns were step-brothers, while the Government's response to the instant motion describes Richley as Johns's brother-in-law.

to recovery on any survival action.'" *Id.* at 1-2 (quoting Lara's Motion to Dismiss Or, in the Alternative, Motion for Summary Judgment at 27, *Johns v. Lara*, No. 1:16-CV-198 (E.D. Tex. Oct. 13, 2016), ECF 13). For example, in a motion filed in the civil case, Lara stated that:

> One of the tenets of the [SAC] gang is that their members will not consume alcohol or drugs. The office of SIA Childress received information from the Utah Department of Corrections indicating inmate Johns was a validated member of [the] SAC since August 19, 2008. Additionally, BOP staff monitoring the Inmate Telephone System after the homicide revealed that an inmate told inmate Johns'[s] step-brother that inmate Johns had made a deal with the SAC that he was not going to be using drugs or drinking anymore, but inmate Johns did not hold up his end of the deal. The inmate making the call also claimed that before inmate Johns went out on writ he stole some of his cellmate's belongings, who was another member of the SAC, and [the SAC] gave him a pass. While the caller claimed inmate Johns was disciplined (beat up) for this conduct, inmate Johns was not supposed to drink or use drugs anymore, but inmate Johns disregarded this agreement and continued his behavior.

*Id.* at 2 (quoting Lara's Motion to Dismiss Or, in the Alternative, Motion for Summary Judgment at 26-27, *Johns v. Lara*, No. 1:16-CV-198 (E.D. Tex. Oct. 13, 2016), ECF 13).

In response, the Government contends that Defendants misconstrue their theory in the instant action by relying on motions filed in a civil case by an AUSA unaffiliated with this criminal prosecution. Doc. No. 255, at 8. The Government notes that "[c]onsistent with Department of Justice procedures, the criminal AUSA's dealing with the Johns murder have had no case related contact or coordination with the civil AUSA who handled the suit brought by Johns' [estate and] heirs." *Id.* at 6.

Evidence constitutes *Brady* material when it is (1) favorable to the accused, either because it is exculpatory[3] or impeaching, and (2) material either to guilt or to punishment. *United States*

---

[3] "Exculpatory evidence is '[e]vidence tending to establish a criminal defendant's innocence.'" *Floyd v. Vannoy*, No. 11-2819, 2017 WL 1837676, at *8 (E.D. La. May 8, 2017) (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)).

4

*v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017).  "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* (quoting *United States v. Dvorin*, 817 F.3d 438, 451 (5th Cir.), *cert. denied*, 137 S. Ct. 140 (2016)); *accord Turner v. United States*, 137 S. Ct. 1885, 1893 (2017) (quoting *Cone v. Bell*, 556 U.S. 449, 469-70 (2009)).  In determining materiality, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).  Nevertheless, "even when applicable, *Brady* is not a discovery rule."  *United States v. Beasley*, 475 F.2d 626, 630 (5th Cir. 1978), *cert. denied*, 440 U.S. 947 (1979).

The court finds that Lara's assertion of an affirmative defense under Texas comparative negligence law in a civil lawsuit does not constitute *Brady* material in the instant criminal prosecution against Defendants.  The plaintiffs in the civil action alleged that the negligence and deliberate indifference of certain BOP employees caused Johns's death.  Defendants were not parties to the civil case, and their responsibility for Johns's death was not at issue in that litigation.  When Johns was killed in the USP in June 2014, Lara was the warden of the MSI, the medium security facility, at FCC Beaumont, where he served as warden from February 2014 until February 2015.  In that capacity, he would have had no policy-making or supervisory authority over the USP Beaumont or its employees.  None of the inmates involved in the incident at issue were housed in the MSI at that time.  Not surprisingly, Lara is not listed as a witness in the criminal case.  Moreover, Lara's comparative negligence theory in the civil case—that Johns's drug and alcohol use made him more than fifty percent responsible for his death as compared to

Lara—does not exculpate Defendants, or mitigate their alleged actions, and is immaterial in this criminal prosecution for premeditated murder and conspiracy to commit premeditated murder. Furthermore, because Lara will not be a witness in this case, such theory is not impeaching.

Furthermore, Defendants do not allege that the Government has failed to comply with its obligations and is withholding exculpatory evidence. In fact, Defendants' request lacks support and is merely bare-bones. The Government asserts that it "has produced all documents, both inculpatory and exculpatory in its possession." *Id.* at 5. Indeed, the Government states that it has provided Defendants "in excess of nineteen-thousand (19,000) pages of Bates stamped discovery." *Id.* Additionally, documents in the civil case, including the Childress Affidavit, are available in the public record. *United States v. Infante*, 404 F.3d 376, 387 (5th Cir. 2005) (holding that no *Brady* violation occurs where the complained of evidence is a matter of public record, obtainable upon request).

    B.    Government's Motion in Limine

        1.    Motion in Limine Standard

A motion in limine "is not a definitive ruling on the admissibility of evidence." *Pact XPP Tech.*, *AG v. Xilinx*, *Inc.*, No. 2:07-CV-563-RSP, 2012 WL 2774971, at *1 (E.D. Tex. May 13, 2012); *see Craig v. Director*, *TDCJ-CID*, No. 5:07-CV-167, 2013 WL 4711483, at *10 (E.D. Tex. Aug. 30, 2013). Rather, an order granting a motion in limine is an order requiring the proponent of the evidence to approach the bench and seek leave of court prior to offering the disputed evidence at trial. *Pact XPP Tech.*, *AG*, 2012 WL 2774971, at *1. The United States Court of Appeals for the Fifth Circuit has observed that "[m]otions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial."

*Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980). Nonetheless, they are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues. *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir.), *cert. denied*, 535 U.S. 1119 (2002). Motion in limine rulings "are not binding on the trial judge, however, and the judge may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 764 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984) (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

### 2. References to the Civil Case

In its response, the Government requests that Defendants' counsel approach the bench before making any reference to statements and pleadings in the civil case brought by Johns's estate and heirs. Doc. No. 255, at 10-11. The Government contends that these statements are irrelevant, immaterial, and would confuse the jury. *Id.* at 11.

The court agrees that any reference to the civil lawsuit, as well as any pleadings and motions submitted in that case, are irrelevant and immaterial and would confuse the jury. *See* FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *id.* 402 ("Irrelevant evidence is not admissible."). The allegations in the civil and criminal cases are vastly different. The civil case alleged that the negligence of BOP officials caused Johns's death, while the instant criminal prosecution alleges that Defendants murdered, and conspired to murder, Johns with premeditation and malice aforethought. The AUSA in the civil lawsuit is unaffiliated with the AUSAs prosecuting the criminal case, and Lara's assertion of an

7

affirmative defense under Texas comparative negligence law in a civil lawsuit has no bearing on this criminal action, a case in which Lara is not involved in any respect. Consequently, the parties are precluded from making any reference to the civil case, including offering into evidence any pleadings or motions from that lawsuit without first approaching the bench.

III.    Conclusion

Consistent with the foregoing analysis, Defendants' Joint Motion Pursuant to *Brady v. Maryland* for Discovery Regarding the Government's Motive Theory as Admitted in the Civil Pleadings Regarding Johns' Murder (Doc. No. 234) is DENIED, and the Government's Motion in Limine is GRANTED.

SIGNED at Beaumont, Texas, this 1st day of February, 2018.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE