# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>   v.<br><br>JOHN PEARL SMITH, II,<br><br>               Defendant. | Case No. 3:16-cr-00086-SLG-1 |

## ORDER REGARDING MOTION TO PRECLUDE PETIT JURY VENIRE

Before the Court at Docket 526 is Defendant John Pearl Smith, II's Motion to Preclude the Use of Any Petit Jury Venire Summoned under the Alaska 2019 Jury Plan Because That Plan Violates the Jury Selection and Service Act. Mr. Smith filed a Supplemental Brief Re: Fair Composition of the Petit Jury Pool at Docket 556 and a declaration of defense expert Jeffrey Martin at Docket 556-1. The government responded in opposition at Docket 588. The Court then provided the parties with additional materials related to the 2019 Jury Plan, which had been requested by Mr. Smith.[1] Mr. Smith then filed his reply to the government's opposition at Docket 602 and filed a supplemental declaration of his expert at Docket 631.

---

[1] Docket 595.

The Court held an evidentiary hearing on the motion on January 9, 2020, and heard testimony from Mr. Martin.[2] After the evidentiary hearing, each party filed a supplemental brief.[3] The government filed an additional exhibit with its supplemental brief at Docket 654. The Court has struck the government's exhibit at Docket 654.[4]

The petit jurors summoned for the June 1, 2020 trial in this case were selected under the District of Alaska's 2019 Jury Plan.[5] Mr. Smith raises three challenges to the 2019 Jury Plan. First, he maintains that the Jury Plan "uses census areas—rather than state election districts—in place of counties or parishes, political subdivisions which do not exist in Alaska."[6] Second, he asserts that there are constitutionally significant "disparities between the composition of the Anchorage Division, from which the Petit Jury will be drawn, and the composition of the eligible jurors placed in the 2019 jury pool."[7] Third, he argues that the City

---

[2] Docket 639 (minutes of evidentiary hearing); Docket 642 (transcript of evidentiary hearing). Mr. Smith waived his physical appearance at the evidentiary hearing and instead appeared by telephone. Docket 610.

[3] Docket 650 (government's supplemental brief); Docket 653 (Mr. Smith's supplemental brief).

[4] Docket 682.

[5] The June 1, 2020 trial date has been vacated and the trial has been continued. Docket 806.

[6] Docket 526 at 1–2.

[7] Docket 556 at 2–3.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 2 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 2 of 15

of Yakutat may be miscategorized in the 2019 Jury Plan as being in the Anchorage Division when it should instead be in the Juneau Division.[8]

## I. The 2019 Jury Plan's use of "census areas" to define jury divisions does not substantially violate the Jury Selection and Service Act.

The Jury Selection and Service Act (JSSA) requires that each district court establish a jury plan that includes procedures "designed to ensure the random selection of a fair cross section of the persons residing in the community in the . . . division where the court convenes."[9] Unlike many federal districts, Alaska does not have statutorily defined divisions.[10] In this circumstance, the JSSA defines "division" to consist of "such counties, parishes, or similar political subdivisions surrounding the places where court is held as the district court plan shall determine: Provided, That each county, parish, or similar political subdivision shall be included in some such division."[11]

---

[8] Docket 631-1 at ¶ 9.

[9] 28 U.S.C. § 1863(b)(3).

[10] *Compare* 28 U.S.C. § 81A ("Alaska constitutes one judicial district. Court shall be held at Anchorage, Fairbanks, Juneau, Ketchikan, and Nome.") *with, for example*, 28 U.S.C. § 81 (Alabama is divided into three judicial districts . . . . The Northern District comprises seven divisions . . . . The Middle District comprises three divisions . . . . The Southern District comprises two divisions.").

[11] 28 U.S.C. § 1869(e).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 3 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 3 of 15

There are no counties or parishes in Alaska.[12] There are cities and boroughs in the state;[13] but there are also many parts of the state that are not within any organized borough that together constitute "a single unorganized borough."[14] Thus, "the use of cities for purposes of summoning juries is obviously unsatisfactory, for they are small and leave out most of the state's land area and much of its population."[15] Moreover, because many areas of Alaska are not within an organized borough, a jury plan based on the organized cities and boroughs "would fail to give all Alaskans an opportunity to be considered for service on a federal jury" as required by the JSSA.[16]

The 2019 Jury Plan defines divisions within the district by referencing "census designations":

**Jury Management Divisions** (See 28 U.S.C. § 1869(e))

---

[12] *See generally* Alaska Statutes Title 29 (Municipal Government); *see also United States v. Pleier*, 849 F. Supp. 1321, 1323 (D. Alaska 1994) ("A third fundamental attribute is the Plan's use of election districts in place of counties or parishes, political subdivisions which do not exist in Alaska."). Prior to defining divisions by census designations, the District of Alaska defined divisions by election districts. *Id.*

[13] AS 29.05.011 (incorporation of a city); AS 29.05.031 (incorporation of a borough or unified municipality).

[14] AS 29.06.010 (2019) ("Areas of the state that are not within the boundaries of an organized borough constitute a single unorganized borough."); *see also United States v. Pleier*, 849 F. Supp. 1321, 1325 (D. Alaska 1994) (recognizing that "[i]f the entire state were divided into boroughs, Alaska would have a local government analog to counties or parishes" but noting "that there are large tracts of inhabited (albeit sparsely) land scattered throughout Alaska which fall outside organized boroughs and cities").

[15] *Pleier*, 849 F. Supp. at 1325.

[16] *Id.*

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 4 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 4 of 15

> In order to facilitate the Jury Selection Process, the Clerk is directed to divide the District of Alaska into the following three jury management divisions for jury selection purposes:
>
> **Anchorage Division:** Includes cities within the Anchorage/Mat-Su, Gulf Coast and Southwest census designations.
>
> **Fairbanks Division:** Includes cities within the Interior, and Northern census designations.
>
> **Juneau Division:** Includes cities within the Southeast census designation.
>
> Unless otherwise specifically indicated, the provisions of this plan apply to all divisions in the district. The Court has considered parts of the District from which grand and petit jurors should be selected for the places where court is held based on census information provided to the Alaska State Department of Labor 2010 Census designations. (See http://live.laborstats.alaska.gov/cen/maps.cfm#cen2010.)[17]

Mr. Smith asserts that the 2019 Jury Plan substantially violates the JSSA because "census designations" are not "similar political subdivisions" as required by the JSSA.[18] Mr. Smith reasons that the JSSA's "use of the word 'similar' in providing for the use of 'counties, parishes, *or similar political subdivisions*' . . . requires that the chosen political subdivision be conceptually similar or otherwise comparable to counties and parishes."[19] Specifically, he contends that "census areas, unlike counties and parishes, do not function as municipal units with elected leaders,

---

[17] D. Ak. 2019 Jury Plan § 1.08.

[18] Docket 526 at 3.

[19] Docket 526 at 4 (emphasis added); *see also* Docket 602 at 2 (applying the canon of *noscitur a socils* to contend that "words grouped in a list should be given related meaning").

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 5 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 5 of 15

courts, or comparable political functioning. They are merely geographic units for census purposes . . . ."[20]

The government responds that "the census designations are political divisions into which the entire state is divided" and that the term "similar political subdivision" is intended "as a catch-all term that encompasses more than just parishes and counties."[21]

As explained by the Ninth Circuit, "[t]he JSSA relies on . . . political subdivisions as a means of achieving a fair cross-section of the community. It does not, however, grant a right to any particular kind of political subdivision to be used in order to achieve that fair cross-section."[22] "The JSSA requires that jury plans include all 'persons residing in each of the counties, parishes, or similar political subdivisions' . . . . The JSSA thus leaves it to each judicial district to determine which kind of political subdivision to use—county, parish, or 'similar political subdivision[ ]'—so long as all persons are included in the subdivisions chosen and thus in the overall jury pool."[23]

---

[20] Docket 526 at 4–5. Mr. Smith suggests that to be a political subdivision, an area would need some combination of "the power of taxation, the power of eminent domain, and the power to police or regulate." Docket 526 at 6 (citing Rev. Rul. 78-276, 1978-2 C.B. 256 (1978)).

[21] Docket 588 at 8.

[22] *United States v. Bushyhead*, 270 F.3d 905, 910 (9th Cir. 2001).

[23] *Id.*

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 6 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 6 of 15

Mr. Smith acknowledges that "[c]ensus designations collectively cover the entire state of Alaska and thus include all Alaskans."[24] In fact, due to large areas of land in Alaska being unincorporated, the use of census designations may be one of the only ways of ensuring that the proportionality requirement of 28 U.S.C. § 1863(b)(3), discussed below, is met.[25] Because the District of Alaska uses subdivisions—census designations—that cover the entire state and ensure that persons residing in each census designation may be placed in the jury pool, it supports the JSSA's objective of insuring that each citizen has an opportunity to be considered for jury service. For purposes of the JSSA, the Court finds that census designations are the functional equivalent of a political subdivision. Accordingly, the use of census designations to define jury divisions does not constitute a violation of the JSSA.

Mr. Smith also asserts that the District of Alaska's 2019 Jury Plan violates § 1863(b)(3) of the JSSA.[26] Section 1863(b)(3) requires a jury clerk to "ensure that each county, parish, or similar political subdivision within the district or division is substantially proportionally represented in the master jury wheel for that judicial district, division, or combination of divisions." The 2019 Jury Plan states that

---

[24] Docket 526 at 3.

[25] Administrative Office of the United States Courts, *Jury Management Report for the United States District Court District of Alaska* (Sept. 2016) at 3–4 (recommending district adopt census designations as basis for organizing jury divisions).

[26] Docket 526 at 7.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 7 of 15

"random selections of names from the source lists for inclusion in the master wheels . . . must ensure that *each division within the jury division is substantially proportionally represented in the master jury wheel* in accordance with [JSSA] § 1863(b)(3)."[27] The Court agrees with Mr. Smith that the language of this section of the 2019 Jury Plan is not a model of clarity. However, the language is most rationally interpreted to mean that each *census designation* within each jury division must be substantially proportionally represented in the master jury wheel. As Mr. Smith concedes, "[i]f the census designations were valid political subdivisions under § 1869(e), then this interpretation might satisfy the proportionality requirement of § 1863(b)(3)."[28] The Court has found that census designations are valid political subdivisions under § 1869(e). The defense has not identified any census designation within the Anchorage division that is not substantially proportionately represented in the petit jury wheel. Accordingly, the Court finds that the 2019 complies with section 1863(b)(3) of the JSSA.

**II.    The disparities between the composition of the Anchorage division and the petit jury pool do not rise to the level of a constitutional violation or JSSA violation.**

Mr. Smith next asserts that "there are disparities between the composition of the Anchorage Division, from which the Petit Jury will be drawn, and the

---

[27] D. Ak. 2019 Jury Plan § 1.10(a) (emphasis added).

[28] Docket 526 at 7.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 8 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 8 of 15

composition of the eligible jurors placed in the 2019 jury pool."[29] According to defense expert Jeffrey Martin, the "Qualified Jury Wheel under represents American Indians and Native Alaskans, and African Americans. The under representation is statistically significant."[30]

The Sixth Amendment and the JSSA require that the venire from which a jury is chosen be comprised of a fair cross-section of the community.[31] "The test for a constitutionally selected jury is the same, whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act."[32] Under *Duren v. Missouri*, to establish a prima facie violation of the fair cross-section requirement, "the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."[33] The parties and the Court agree that American Indians, Native Alaskans, and African Americans are distinctive groups in the community. Thus, the parties' arguments focus on the second and third *Duren* factors.

---

[29] Docket 556 at 2.

[30] Docket 556-1 at 1, ¶ 8.

[31] *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975).

[32] *United States v. Miller*, 771 F.2d 1219, 1227 (9th Cir. 1985).

[33] 439 U.S. 357, 364 (1979).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 9 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 9 of 15

In determining whether the representation of a distinctive group is fair and reasonable, "[c]ourts have employed a number of analytical methods . . . including the absolute disparity test, the absolute impact test, the comparative disparity test, and standard deviation analysis."[34] The parties have briefed and the Court has reviewed Ninth Circuit cases discussing the shortcomings of the various analytical tools. Here, Mr. Smith's expert compared the jury-eligible population in the Anchorage division with the prospective jurors actually placed in the Anchorage division jury pool using the absolute disparity and comparative disparity methods along with standard deviation analysis.[35]

Using the absolute disparity method, which is the difference between the percentage of a distinct group in a jury pool and the same group in the population, Mr. Martin concluded that the absolute disparity for African Americans is 2.03% underrepresentation and for American Indian or Alaska Native is 2.98% underrepresentation.[36] "Although no bright-line rule exists as to what level of absolute disparity constitutes a constitutional or Jury Selection Act violation, [the Ninth Circuit has] 'declined to find underrepresentation of a distinctive group where the absolute disparity was 7.7% or lower.'"[37] And yet, as the Ninth Circuit has

---

[34] *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1160 (9th Cir. 2014) (en banc).

[35] Docket 556 at 2.

[36] Docket 556-1 at 2, ¶ 22.

[37] *Hernandez-Estrada*, 749 F.3d at 1161 (quoting *United States v. Rodriguez–Lara*, 421 F.3d 932, 943–44 (2005)).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 10 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 10 of 15

recognized, under the absolute disparity method, "if a minority group makes up less than 7.7% of the population in the jurisdiction in question, that group could *never* be underrepresented in the jury pool, even if none of its members wound up on the qualified jury wheel."[38]

"[T]he comparative disparity test illustrates, in a general way, the comparative differences in a manner that takes population size into consideration."[39] The method calculates the rate at which a distinct group is represented in the jury pool. Using the comparative disparity test, Mr. Martin determined that African Americans are 54.1% underrepresented and American Indians and Native Alaskan are 26.48% underrepresented.[40] And yet, as the Ninth Circuit has recognized, "one problem with the comparative disparity test is that it can overstate the underrepresentation of a group that has a small population percentage."[41]

Finally, the standard deviation analysis "determine[s] whether the demographics of the jury list diverge substantially enough from the population

---

[38] *Id.* (citing *United States v. Rodriguez–Lara*, 421 F.3d 932, 944 n. 10 (2005)) (emphasis in original).

[39] *Id.* at 1163.

[40] Docket 556-1 at 3, ¶ 26.

[41] *Hernandez-Estrada*, 749 F.3d at 1163. Of the jury-eligible population of the Anchorage division in 2015, 72.15% were white, 3.75% were African American, 11.26% were American Indian or Alaska Native, 4.66% were Asian, 1.03% were Native Hawaiian or Pacific Islander, 1.15% were other races, 5.99% were multiracial, and 5.49% were Hispanic or Latino. Docket 556-1 at 2, ¶ 18.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 11 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 11 of 15

demographics that the difference is not the product of chance but is systematic."[42] Mr. Martin determined that the percentage of African Americans in the Anchorage jury division differs from the percentage of African Americans in the division's population by four standard deviations and the percentage of American Indian and Alaska Natives also differs from the percentage of these groups in the population by four standard deviations.[43] Mr. Martin found these deviation statistically significant.[44]

The Court adopts the calculations of Mr. Martin under each of these methods as accurate. But the Court need not determine which method, or combination of methods, it should consider, nor does it need to determine whether the disparities identified by Mr. Martin rise to the level of constitutional or JSSA violations. Mr. Smith has not identified any problem with the jury plan itself or the implementation of the jury plan—as related to the petit jury—that may have caused any systematic exclusion of the distinctive groups in the petit jury-selection process. In his motion filed October 31, 2019, Mr. Smith noted that he was "still missing some data that would reveal whether or not these disparities are the result of systemic issues."[45] Mr. Smith "filed a contemporaneous motion for the General Order and source data

---

[42] Docket 556-1 at 3, ¶ 29.

[43] Docket 556-1 at 3–4, ¶¶ 29–31.

[44] Docket 556-1 at 4, ¶ 31.

[45] Docket 556 at 2.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 12 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 12 of 15

so that Mr. Martin [could] determine if the divisions—a systemic issue—are the basis for the disparity . . . ." in the Anchorage division.[46] The Court granted the motion and provided each party with the General Order and source data on November 19, 2019.[47]

At the evidentiary hearing in January 2020, Mr. Martin confirmed that he had received all of the data he had sought as to the petit jury issue.[48] However, despite having all of the needed information from the Court, the defense did not identify any systematic (or systemic) cause for the racial disparities that Mr. Martin identified at either the evidentiary hearing or in its supplemental briefing.[49] "A showing that a jury venire underrepresents an identifiable group is, without more, an insufficient showing of systematic exclusion under the third prong of the *Duren* test."[50] A defendant must also present "evidence that the underrepresentation . . . is due to the system [the Court] uses to assemble the venire."[51] Accordingly, Mr. Smith has not established a prima facie case that any underrepresentation related

---

[46] Docket 556 at 2; Docket 557.

[47] Docket 595.

[48] Docket 642 at 65.

[49] The *Mirriam-Webster Dictionary* defines systemic as "of, relating to, or common to a system"; it defines systematic as "relating to or consisting of a system."

[50] *Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1141 (9th Cir. 2004).

[51] *Id.*

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 13 of 15

to the petit jury pool is due to systemic exclusion in the jury selection process; the third requirement of the *Duren* test has not been met.

## III. The inclusion of the City of Yakutat in the Anchorage Division

Mr. Smith asserts that "[j]urors have been placed in the wrong division because there are discrepancies between the description of the division in the Jury Plan Section 1.08 and how the divisions are implemented . . . ."[52] At the evidentiary hearing, defense expert Jeffrey Martin testified that the only city he identified as being misclassified into the wrong division was Yakutat, although he was not able to review every city due to the tedious nature of comparing addresses on maps to census designations.[53] Assuming that Yakutat is in fact incorrectly placed in the Anchorage jury division, and instead should be in the Juneau jury division, Mr. Martin agreed that the jury clerk could simply exclude any potential juror from Yakutat who was incorrectly drawn for an Anchorage petit jury and replace them with a juror correctly drawn from the Anchorage jury division.[54]

The incorrect inclusion of Yakutat in the Anchorage Division does not constitute a substantial deviation from the directives of the JSSA.[55] Moreover, it is

---

[52] Docket 631-1 at 1, ¶ 8 (Supplemental Declaration of Jeffery Martin).

[53] Docket 642 at 60–62.

[54] Docket 642 at 63–65. The jury clerk would need to keep records of any juror who was excluded due to being drawn into the incorrect jury divisions.

[55] *Hernandez-Estrada*, 749 F.3d at 1167 ("[N]ot just any violation of the Jury Selection Act is actionable. Instead, the violation must constitute a 'substantial failure to comply' with the Jury Selection Act. Technical violations of the Jury Selection Act are 'insubstantial where they do not frustrate the Act's goals.' The two underlying goals of the Act are the random selection of prospective jurors "from voter lists" and exclusions of prospective jurors "on the basis of

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 14 of 15
Case 3:16-cr-00086-SLG Document 861 Filed 04/16/20 Page 14 of 15

a correctable error. The Jury Clerk shall review the petit jury venire for this case and notify the Court if any prospective juror is from Yakutat. If such jurors are found, the Jury Clerk shall exclude them from the petit jury pool for the Anchorage Division and summon replacements from the Anchorage Division. The Jury Clerk shall keep records of Yakutat jurors summoned into the Anchorage Division.

In light of the foregoing, IT IS ORDERED that the Motion to Preclude the Use of Any Petit Jury Venire at Docket 526 is DENIED.

DATED this 16th day of April, 2020, at Anchorage, Alaska.

/s/ *Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

objective criteria only." (internal citations omitted).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Preclude Petit Jury Venire
Page 15 of 15
Case 3:16-cr-00086-SLG   Document 861   Filed 04/16/20   Page 15 of 15