# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

JOHN PEARL SMITH, II,

        Defendant.

Case No. 3:16-cr-00086-SLG-1

## ORDER REGARDING MOTION TO DISMISS BECAUSE OF GRAND JURY COMPOSITION

Before the Court at Docket 525 is Defendant John Pearl Smith, II's Motion to Dismiss the Superseding Indictment Because the Grand Jury Did Not Represent a Fair Cross Section of the Community. Mr. Smith filed a declaration of defense expert Jeffrey Martin in support of the motion at Docket 525-1. The government responded in opposition at Docket 547. Mr. Smith filed a reply at Docket 551.

The Court held an evidentiary hearing on the motion on January 9, 2020, and heard testimony from Mr. Martin.[1] After the evidentiary hearing, each party filed a supplemental brief.[2] The government filed an additional exhibit with its

---

[1] Docket 639 (minutes of evidentiary hearing); Docket 642 (transcript of evidentiary hearing). Mr. Smith waived his physical appearance at the evidentiary hearing and instead appeared by telephone. Docket 610.

[2] Docket 650 (government's supplemental brief); Docket 653 (Mr. Smith's supplemental brief).

supplemental brief at Docket 654. The Court has struck the government's exhibit at Docket 654.[3]

The grand jurors summoned for the grand jury in this case were selected under the District of Alaska's 2015 Jury Plan. Mr. Smith challenges the composition of the grand jury in this case on three grounds. First, he alleges that the lack of current demographic information regarding each of the five jury divisions in the district violates the Jury Selection and Service Act (JSSA).[4] Second, he contends that the jury clerk did not comply with the district's 2015 Jury Plan because she used an inaccurate proration formula for the five divisions when summoning grand jurors.[5] Third, he maintains that the incorrect implementation of the 2015 Jury Plan caused systemic issues that resulted in African Americans and American Indians/Alaska Natives to be underrepresented in the grand jury venire in violation of the Sixth Amendment and the JSSA.[6]

**I.  There is sufficient information to assess the district's compliance with the Jury Selection and Service Act.**

The JSSA requires that district courts utilize jury plans that ensure the random selection of a fair cross section of people residing in the community.[7] The

---

[3] Docket 682.

[4] Docket 525 at 5–6.

[5] Docket 525 at 6–8.

[6] Docket 525 at 8–10.

[7] 28 U.S.C. § 1863(a).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 2 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 2 of 15

JSSA further requires that "[e]ach district court shall submit a report on the jury selection process within its jurisdiction to the Administrative Office of the United States Courts in such form and at such times as the Judicial Conference of the United States may specify."[8] Mr. Smith asserts that the forms used by the jury clerk to submit information to the Administrative Office (known as AO-12 forms) "do not describe the current demographic information for each the five divisions," and that "[t]his lack of essential information violates the JSSA and frustrates its goals because there is no way for Smith to enforce his Sixth Amendment right to a fair and impartial Grand Jury pool composed of a cross-section of the community."[9]

A JSSA challenge "is allowed only for 'substantial failure to comply with the Act.'"[10] "Technical violations are insubstantial where they do not frustrate the Act's goals of obtaining jury lists that are a cross-section of the community, allocating jury duty fairly among the citizenry, and determining disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only."[11] Even assuming that there is inadequate information on the AO-12 forms about the demographics of the registered voters in each division, this would not establish a

---

[8] 28 U.S.C. § 1863(a).

[9] Docket 525 at 6.

[10] *United States v. Erickson*, 75 F.3d 470, 477 (9th Cir. 1996) (quoting *United States v. Nelson*, 718 F.2d 315, 318 (9th Cir. 1983)).

[11] *Id.*

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 3 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 3 of 15

constitutional or statutory violation, particularly as it is undisputed that the district has submitted the AO-12 report on the form and in the manner required by the Judicial Conference.[12] Indeed, as the defense recognized in its post-hearing brief, Mr. Martin "pointed out that the population sampling done in the [American Community Survey] is a sufficient sample size for an accurate assessment of the population>"[13] Mr. Martin also testified at the hearing that he regularly relied on the AO-12 forms in his jury composition work.[14] The defense has failed to establish that the district's use of the AO-12 forms constituted a substantial failure to comply with the JSSA.

## II. An inaccurate proration formula was used to summon the grand jurors.

The 2015 Jury Plan contemplates five master jury wheels, one from each of the five divisions in the district: Anchorage, Fairbanks, Juneau, Ketchikan, and Nome.[15] The jury plan requires that grand juries be drawn from each of the five divisions "on a *pro rata* basis according to the number of voters in each division."[16] Mr. Smith asserts that the jury clerk used an incorrect proration formula, resulting in an incorrect number of grand jurors being summoned from each of the five

---

[12] *See* 28 U.S.C. § 1863(a).

[13] Docket 653 at 5.

[14] Docket 642 at 81–83.

[15] Docket 525-2 at 4, § 1.2(b) (D. Ak. 2007 Plan for Random Selection of Grand and Petit Jurors).

[16] Docket 525-2 at 9, § 5.1(b) (D. Ak. 2007 Plan for Random Selection of Grand and Petit Jurors).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 4 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 4 of 15

divisions.[17] For purposes of this motion, the Court accepts the proration calculations of Mr. Martin as valid and accurate. His calculation on this issue were as follows:[18]

| Division | Proration formula if jury plan proration formula used | Proration formula jury clerk was instructed to use | Actual composition of 125 summoned grand jurors |
|---|---|---|---|
| **Anchorage** | 68.69% of grand jury | 50.00% | 52.80% |
| **Fairbanks** | 16.81% | 45.00% | 41.60% |
| **Juneau** | 7.94% | 2.00% | 3.20% |
| **Ketchikan** | 3.13% | 2.00% | 1.60% |
| **Nome** | 3.43% | 1.00% | 0.80% |

The defense has established that the district did not apply the correct proration formula when summoning the grand jurors in this case. The issue is whether this error constitutes a substantial failure to comply with the Constitution and the JSSA.[19] As the defense acknowledges, "the substantial failure requirement seems to get collapsed into the merits of the fair cross-section requirement."[20] Thus, this Court turns to that analysis.

---

[17] Docket 525 at 7–8.

[18] Docket 525-1 at 3, ¶¶ 26, 27, 28.

[19] 28 U.S.C. § 1867(d) ("If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate.").

[20] Docket 525 at 9.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 5 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 5 of 15

**III. The disparities between the racial demographics of the eligible jurors in Alaska and the grand jury venire do not constitute a constitutional violation or JSSA violation.**

Mr. Smith maintains that the district's use of an incorrect proration formula "resulted in a grand jury that did not represent a cross-section of the community."[21] The Court accepts Mr. Martin's calculations on this topic as accurate for purposes of this motion. He calculated the racial demographics as follows:

|  | District-wide demographics of all eligible jurors[22] | District-wide demographics of selected jury pool[23] | Demographics of 125 selected potential grand jurors[24] |
|---|---|---|---|
| **White** | 71.36% | 78.40% | 83.06% |
| **African American** | 3.37% | 1.67% | 1.61% |
| **American Indian/Alaska Native** | 13.21% | 9.36% | 5.65% |
| **Asian** | 4.06% | 3.13% | 0.81% |
| **Hispanic/Latino** | 5.29% | N/A[25] | N/A |
| **Native Hawaiian/Pacific Islander** | 0.88% | 0.76% | 0.81% |
| **Other** | 1.08% | 2.06% | 4.84% |
| **Multiracial** | 6.04% | 4.62% | 3.23% |

---

[21] Docket 525 at 8.

[22] Docket 525-1 at 2, ¶ 21.

[23] Docket 525-1 at 4, ¶ 39. This group consists of the 32, 557 summoned jurors who returned a preliminary questionnaire. Docket 642 at 26; *see also* Docket 525-1 at 4, ¶¶ 34-38.

[24] Docket 525-1 at 6, ¶ 52. One potential grand juror did not indicate their racial identification.

[25] Mr. Martin's calculations do not include any reference to Hispanic/Latino demographics as related to the selected jury pool or the 125 selected potential grand jurors.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 6 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 6 of 15

The Sixth Amendment and the JSSA require that the venire from which a jury is chosen be comprised of a fair cross-section of the community.[26] "The test for a constitutionally selected jury is the same, whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act."[27] In *Duren v. Missouri*, the Supreme Court held that a defendant must show three things to establish a prima facie violation of the fair-cross-section requirement:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.[28]

However, "[t]he fair-cross-section principle must have much leeway in application."[29] The parties and the Court agree that African Americans and American Indians/Alaska Natives are distinctive groups in the community. Thus, the parties' arguments focus on the second and third *Duren* requirements; the Court addresses the third requirement first.

### A. The third *Duren* requirement: Was there a systematic exclusion of a distinctive group?

---

[26] *Taylor v. Louisiana*, 419 U.S. 522, 529–30 (1975).

[27] *United States v. Miller*, 771 F.2d 1219, 1227 (9th Cir. 1985).

[28] 439 U.S. 357, 364 (1979).

[29] *Berghuis v. Smith*, 559 U.S. 314, 321 (2010) (alteration in original) (quoting *Taylor*, 419 U.S. at 537–38).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 7 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 7 of 15

The Court recognizes that the district court did not apply the correct proration formula to summon the grand jury in this case. Going forward, the Court has conferred with the Clerk of Court and the jury clerk in an effort to ensure that future grand juries are selected using the correct proration formula.

However, Mr. Smith has not shown that the use of incorrect proration formulas was directed at a distinct group. Although "disproportionate exclusion of a distinctive group from the venire need not be intentional to be unconstitutional,"[30] from the Court's perspective, the use of the incorrect proration formula does not raise the same systematic concerns as the intentional exclusion of a distinctive group. "[T]he essence of randomness is the absence of any arbitrary attempt to exclude a class of persons from the jury."[31] Here, there is no indication that the district's proration formula was used in an attempt to exclude a distinctive group.[32] The Court does not find that that the underrepresentation of African Americans and American Indians/Alaska Natives is "*inherent* in the particular jury-selection process" used to select the grand jury in this case.[33] For this reason, the defense has not established the third requirement of the *Duren* test.

---

[30] *Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004) (holding that Fresno County's failure to issue summonses to prospective jurors who failed to return preliminary questionnaires did not cause a systematic exclusion of Hispanics in the jury selection process).

[31] *McClendon v. United States*, 587 F.2d 384, 387 (8th Cir. 1978).

[32] *Cf. Vasquez v. Hillery*, 474 U.S. 254, 258, 262 (1986) (noting that "intentional discrimination in the selection of grand jurors is a grave constitutional trespass" in a case where African Americans had never served on a grand jury in the history of the county).

[33] *Randolph*, 380 F.3d at 1142 (emphasis in original) (quoting *Duren*, 439 U.S. at 366).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 8 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 8 of 15

## B. The second *Duren* requirement: Does the representation of distinctive groups in the grand jury demonstrate a substantial disparity that constitutes a constitutional or statutory violation?

Assuming the use of the proration formula resulted in a systematic exclusion of distinctive groups so as to have met the third *Duren* requirement, the Court next considers whether the use of the incorrect formula caused a substantial disparity between the composition of the grand jury and the population in the community. In determining whether the representation of a distinctive group is fair and reasonable, "[c]ourts have employed a number of analytical methods . . . including the absolute disparity test, the absolute impact test, the comparative disparity test, and standard deviation analysis."[34] The parties have briefed and the Court has reviewed Ninth Circuit cases discussing the shortcomings of the various analytical tools. Here, Mr. Smith's expert compared the demographics of the jury-eligible population in the district with the grand jurors actually summoned and seated in this case using the absolute disparity and comparative disparity methods along with standard deviation analysis. For purposes of ruling on this motion, the Court adopts the calculations of Mr. Martin under each of these methods as accurate. Mr. Smith maintains that each of these methods demonstrates a constitutionally significant underrepresentation of African Americans and American Indians/Alaska Natives on the grand jury.[35]

---

[34] *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1160 (9th Cir. 2014) (en banc).

[35] Docket 525 at 10–12; Docket 551 at 2–6.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 9 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 9 of 15

### 1. Absolute disparity

The absolute disparity method assesses the difference between the percentage of a distinct group in a jury pool and the same group in the population.[36] Using that method, Mr. Martin concluded that the absolute disparity for African Americans is 1.70% underrepresentation and for American Indians/Alaska Natives is 3.85% underrepresentation within the selected jury pool.[37] Within the smaller pool of 125 selected as potential grand jurors, the absolute disparity for African Americans is 1.76% underrepresentation and for American Indians/Alaska Natives is 7.57% underrepresentation.[38] "Although no bright-line rule exists as to what level of absolute disparity constitutes a constitutional or Jury Selection Act violation, [the Ninth Circuit] 'ha[s] declined to find underrepresentation of a distinctive group where the absolute disparity was 7.7% or lower.'"[39] And yet, as the Ninth Circuit has recognized, under the absolute disparity method, "if a minority group makes up less than 7.7% of the population in the jurisdiction in question, that group could *never* be underrepresented in the jury pool, even if none of its

---

[36] Docket 525-1 at 4, ¶ 41.

[37] Docket 525 at 11; Docket 525-1 at 5, ¶ 42. This group consists of the 32, 557 summoned jurors who returned a preliminary questionnaire. Docket 642 at 26; *see also* Docket 525-1 at 4, ¶¶ 34-38.

[38] Docket 525-1 at 6, ¶¶ 53, 54.

[39] *Hernandez-Estrada*, 749 F.3d at 1161 (quoting *United States v. Rodriguez–Lara*, 421 F.3d 932, 943–44 (9th Cir. 2005)).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 10 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 10 of 15

members wound up on the qualified jury wheel."[40]  Nonetheless, in accordance with Ninth Circuit precedent, Mr. Smith has not demonstrated a constitutional or statutory violation using the absolute disparity method.

### 2. Comparative disparity

Because the absolute disparity method can overlook some minority groups, Mr. Smith asserts that "it is more appropriate to use Comparative Disparity" when considering underrepresentation in this case.[41]  "[T]he comparative disparity test illustrates, in a general way, the comparative differences in a manner that takes population size into consideration."[42]  Comparative disparity is determined by taking the absolute disparity and dividing that by the percentage of the distinct group in the total eligible population.[43]  Using the comparative disparity test, for the approximately 33,000 summoned individuals who returned a questionnaire, Mr. Martin determined that African Americans were 50.39% underrepresented[44] and American Indians/Alaska Natives were 29.14% underrepresented.[45]

---

[40] *Id.* (emphasis in original) (citing *Rodriguez–Lara*, 421 F.3d 932, 944 n. 10).

[41] Docket 525 at 11.

[42] *Hernandez-Estrada*, 749 F.3d at 1163.

[43] *Id.* at 1162.

[44] Docket 525-1 at 5, ¶ 46.  Mr. Martin calculated the absolute disparity for African Americans to be 1.70% underrepresentation; to determine comparative disparity, this figure is divided by 3.37%, which is the percentage of the entire eligible population that is African American.  *See* Docket 525-1 at 2, 4, ¶¶ 21, 39; Docket 642 at 54.

[45] Docket 525-1 at 5, ¶ 46.  Mr. Martin calculated the absolute disparity for American Indians/Alaska Natives to be 3.85% underrepresentation; to determine comparative disparity, this figure is divided by 13.21%, which is the percentage of the entire eligible population that is

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 11 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 11 of 15

As for the 125 people actually summoned as potential grand jurors for this case, the comparative disparity for African Americans was 52.15% underrepresentation and for American Indians/Alaska Natives was 57.27% underrepresentation.[46] According to Mr. Martin, this means that "we're missing about half the group we would have expected."[47]

As the Ninth Circuit has recognized, "one problem with the comparative disparity test is that it can overstate the underrepresentation of a group that has a small population percentage."[48] For this reason, the government contends that the comparative disparity test is inappropriate in this case.[49] Moreover, the government maintains that "the 50% comparative disparity suggested by the defendants' [sic] statistics does not amount to substantial underrepresentation."[50]

The Court finds that, as applied here, the comparative disparity rates ranging from 29.14% to 57.27% fall within the level of comparative disparity that other circuit courts have held to be permissible, even as those courts recognized the shortcomings of the comparative disparity methodology. For example,

---

American Indians/Alaska Native. *See* Docket 525 at 11; Docket 525-1 at 5, ¶¶ 21, 39.]

[46] Docket 525-1 at 6, ¶¶ 53–54; Docket 642 at 48.

[47] Docket 642 at 48.

[48] *Hernandez-Estrada*, 749 F.3d at 1163. The Ninth Circuit explained that if "a group constitutes .1% of the population, with no representation in the jury pool[,] [t]he comparative disparity of that group would be 100%. Few would argue that the absence of a group representing just 0.1% of the population violates the fair cross-section requirement . . . ." *Id.*

[49] Docket 547 at 7–8.

[50] Docket 547 at 8.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 12 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 12 of 15

comparative disparities of 54.49%,[51] 58.39%,[52] and 59.84%[53] have been found permissible by other circuits. Moreover, the Ninth Circuit, in dicta, has permitted a comparative disparity of 52.9%.[54] Mr. Smith points to no court that has dismissed an indictment because a distinctive group in the grand jury had a comparative disparity in this range. Here, where the distinctive groups in question make up a small portion of the district's population, comparative disparities in the high-50% range are acceptable. Accordingly, the Court finds that the underrepresentation that Mr. Martin calculated using the comparative disparity method does not establish a violation of the Sixth Amendment or the JSSA.

### 3. Standard deviation analysis

Finally, the standard deviation analysis looks at both the absolute disparity and comparative disparity in combination in an effort to "determine whether the demographics of the jury list diverge substantially enough from the population

---

[51] *Howell v. Superintendent Rockview SCI*, 939 F.3d 260, 268–69 (3d Cir. 2019) (noting absolute disparity of 5.83% for African Americans in jury venire, while census data indicated that 10.7% of adult population in county was African American).

[52] *United States v. Chanthadara*, 230 F.3d 1237, 1256–57 (10th Cir. 2000) (noting absolute disparity of 1.60% for Hispanics within master jury wheel, while 2.74% of adult population was Hispanic and holding that a comparative disparity of 58.39% did not establish a prima facie violation where the group in question only made up 2.92% of the population).

[53] *United States v. Shinault*, 147 F.3d 1266, 1273 (10th Cir. 1998) (noting absolute disparity of 0.51% for Asians among veniremen, while 1.27% of adult population was Asian, but noting that "considering the small size of each of the groups in relation to the larger community, it is not surprising that the comparative disparity numbers are large.").

[54] *United States v. Sanchez-Lopez*, 879 F.2d 541, 548 (9th Cir. 1989) (noting absolute disparity of 2.05% for Hispanics within master jury wheel, while 3.87% of total population was Hispanic).

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 13 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 13 of 15

demographics that the difference is not the product of chance but is systematic."[55] Using this analysis, Mr. Martin determined that the percentage of African Americans in the jury pool differed from the percentage of African Americans in the population by 13 standard deviations and the percentage of American Indians/ Alaska Natives in the jury pool differs from the percentage of these groups in the population by 16 standard deviations.[56] It is unclear how Mr. Martin combined the two other methods to arrive at these calculations, but the Court accepts them as accurate for purposes of ruling on this motion. Mr. Martin found these deviations statistically significant.[57]

The Court finds that the disparities shown by the standard deviations are likely caused at least in part by the Court's use of the incorrect proration formula.[58] However, a "challenging party must establish not only statistical significance, but also legal significance."[59] Given that disparities calculated under both the absolute disparity method and comparative disparity method fall within the ranges upheld

---

[55] Docket 525-1 at 6, ¶ 49.

[56] Docket 525-1 at 6, ¶¶ 50, 51.

[57] Docket 525-1 at 6, ¶¶ 50, 51. Mr. Martin explained that "[i]f there is no systematic under or over representation of a distinctive group, the divergence of demographics should exceed 2 standard deviations only approximately 5% of the time while the divergence of demographics should exceed 3 standard deviations only approximately 0.5% of the time." Docket 525-1 at 6, ¶ 49.

[58] Docket 642 at 56 (testimony of Mr. Martin explaining that while the proration formula is "one part of skewing the demographic numbers," the standard deviation analysis is also affected by "not splitting jurors in half" and "the small number [of grand jurors] that we're picking").

[59] *Hernandez-Estrada*, 749 F.3d 1154 at 1165

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 14 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 14 of 15

by the Ninth Circuit, the defense has not demonstrated that this statistical deviation, to the extent it was caused by the district's use of the wrong formula, is of legal significance.[60]

## CONCLUSION

Mr. Smith has not established a prima facie case that any underrepresentation of a distinct group constitutes a substantial violation of the JSSA or that the three-part *Duren* test has been met.[61]  For the foregoing reasons, IT IS ORDERED that the Motion to Dismiss at Docket 525 is DENIED.

DATED this 5th day of May, 2020, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[60] *See United States v. Maskeny*, 609 F.2d 183, 190 (5th Cir. 1980) (declining to focus on standard deviation disparity when the absolute disparities demonstrated by the defendant did not make out a constitutional violation); *United States v. Orange*, 447 F.3d 792, 799 (10th Cir. 2006) (declining to consider "other statistical measures . . . when the existing measures, absolute and comparative disparity, fail to establish a prima facie case under existing law.").

[61] Only if a defendant establishes a prima facie case does the burden shift to the government to demonstrate that "a significant state interest be manifestly and primarily advanced by those aspects of the jury selection process . . . that result in the disproportionate exclusion of a distinctive group." *Duren*, 439 U.S. at 367–38.

Case No. 3:16-cr-00086-SLG-1, *United States v. Smith*
Order Re Motion to Dismiss Because of Grand Jury Composition
Page 15 of 15
Case 3:16-cr-00086-SLG   Document 872   Filed 05/05/20   Page 15 of 15