BRYAN SCHRODER
United States Attorney

FRANK V. RUSSO
WILLIAM A. TAYLOR
KAREN E. VANDERGAW
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: frank.russo@usdoj.gov
Email: william.taylor@usdoj.gov
Email: karen.vandergaw@usodj.gov

JAMES D. PETERSON
Trial Attorney, Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
Email: james.d.peterson@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:16-cr-00086-SLG-DMS |
| Plaintiff, | ) | |
| vs. | ) | |
| JOHN PEARL SMITH, II, | ) | |
| Defendant. | ) | |

**UNITED STATES' MOTION TO ADMIT ACTS OF PRISON MISCONDUCT IN REBUTTAL TO DEFENSE THIRD PARTY MISCONDUCT EVIDENCE/STATISTICS AND PRISON SECURITY EVIDENCE**

NOW COMES the United States of America, by Bryan Schroder, United States Attorney for the District of Alaska, and Frank V. Russo, William A. Taylor, and Karen E. Vandergaw, Assistant United States Attorneys, and Department of Justice Trial Attorney James D. Peterson, and files this motion to admit incidents of prison misconduct in rebuttal to the defendant's proposed and proffered evidence of prison safety, statistics of third party misconduct or lack thereof, and prison security.

The United States respectfully requests that the Court permit the introduction of acts of misconduct by third parties to rebut Smith's proffered and proposed evidence that prison facilities are safe and relatively violence free, as well as the proffered statistics about third party violence in BOP facilities. Recently, Smith disclosed the scope and substance of the potential testimony of Dr. Thomas Reidy. Additionally, the defendant filed a pleading demanding additional information concerning statistics about third party violence at BOP facilities. The defense in most, if not all, federal capital trials also presents testimony concerning the confinement capacities of the Bureau of Prisons and their ability to manage violent offenders generally. Further, Smith's statement in his opposition to the government's motion *in limine* concerning prison conditions generally that "the Government does not acknowledge that numerous federal courts have permitted the testimony regarding prison conditions and future dangerousness" strongly suggests that the defense also intends to introduce prison conditions of confinement evidence. The Courts considering such third-party misconduct evidence have

overwhelmingly permitted the evidence of third-party violence in rebuttal by the government.

I.  PROCEDURAL HISTORY

On or about March 22, 2017, a federal grand jury returned the First Superseding Indictment charging Smith with capital eligible offenses. Doc. 102. On or about June 19, 2018, the government provided notice of an intent to seek the death penalty. Doc. 168. The Notice lists a future dangerousness non-statutory aggravating factor and its constituent sub-components in detail. ECF No. 168.

On January 14, 2020, the Court issue its Third Amended Scheduling order requiring the parties to file any motions *in limine* for both the guilt and penalty phases regarding all evidence disclosed to date. ECF No. 647. On February 25, 2020, the government filed a motion *in limine* to preclude defense evidence of general prison conditions in any penalty phase. *See* ECF No. 708. On March 25, 2020, the defense responded and objected, in part, because the motion was "based upon the Government's generalized belief about defense counsel do, and not in regard to any issue that has arisen in this case." ECF No. 812, pg. 1. On July 29, 2020, the Court denied the government's motion and noted in, in part, that "there is no specific information before the Court to review." ECF No. 921, pg. 2. The scope and substance of Dr. Reidy's testimony was disclosed on or about October 23, 2020 when Smith filed a declaration from Dr. Reidy. ECF No. 951. Previously, on February 13, 2019, the defense disclosed only "Future Dangerousness – Dr. Thomas Reidy and Dr. Jonathan Sorensen (cv attached)."

In May 2019, Smith moved to compel the discovery of information from the government about Bureau of Prisons statistics concerning third party inmate violence, not the defendant, that he argued was "relevant to whether Mr. Smith poses a danger of future violence if sentenced to spend the remainder of his life in BOP custody." See ECF Nos. 421 and 968. The Court granted the motion in part and denied it in part after concluding Mr. Smith had "made a sufficient prima facie showing that some of the requested BOP information requested is material and discoverable pursuant to Rule 16(a)(1)(E)(i)." ECF No. 549. On December 6, 2019, the government sent counsel for the defendant "the BOP data responsive to the Court's order." *See* Exhibit 1. On June 2, 2020, Smith requested "updated data" concerning the information previously produced by the government concerning BOP data. *See* Exhibit 2. On September 2, 2020, Smith also requested additional BOP data concerning third party misconduct at BOP facilities. *See* Exhibit 3. On December 28, 2020, Smith filed his second motion to compel BOP statistical information concerning third party misconduct at BOP facilities. ECF No. 968.

On October 23, 2020 Smith filed an opposition arguing to preclude the admission of adjudicated acts of juvenile misconduct in any penalty phase. ECF No. 951. That pleading was accompanied by a 22-page sworn declaration by the defense retained psychologist, Dr. Thomas Reidy. *See* ECF No. 951-1. As part of his pleading, Dr. Reidy asserted that "Rates of serious violence, including murder, are exceptionally low in prison, contrary to "illusory" expectations." ECF No. 951-1, pg. 21.

//

## II. LEGAL ARGUMENT

The government does not agree with the information and argument presented by Dr. Reidy, and should be permitted to properly rebut that testimony or evidence concerning third party lack of violence, or prison security. As a general matter, the statistical information argued by the defendant presents a sterile and misleading account of prison violence, and potential violence, at BOP facilities. There have been a significant number of murders and extreme violence at BOP facilities, including at the maximum security ADX Florence Supermax facility in Colorado. As an example, Ishmael Petty was serving a life sentence for a murder that occurred at the BOP facility at USP Pollock. *See United States v. Petty*, 1:02-cr-10006-FAL-JDK-1 (W.D. LA, Aug. 19, 2002) ECF. No. 23. He was previously sentenced to an effective life sentence for armed bank robbery. *See United States v. Petty*, 1:98-cr-00018-WAP-JAD (D. MS, Aug. 13, 1998) ECF. No. 36. On September 11, 2013, Petty brutally assaulted two educational technicians and one case manager at the Administrative Maximum Security (ADX) prison in Florence, Colorado. The brutal attack was described, after conviction, in the government's sentencing statement. *See United States v. Petty*, Case No. 15-cr-00029-PAB (D. Colo., Aug. 5, 2015) ECF. No. 54. The transcript of the trial is publicly available on PACER. Another example is the case of Richard Santiago. Santiago was serving a life sentence for murder and was housed at the maximum security ADX facility in Colorado. On April 21, 2005, he and another inmate were in the recreation yard at the ADX when they stomped Manuel Torres to death. *See United States v. Santiago*, Case

1:10-cr-00164-REB (D. Colo., Dec. 8, 2016) ECF No. 1309. The transcripts of the trial of the co-defendant are publicly available on PACER and recount the murder in detail. *See United States v. Rivera*, Case 1:10-cr-00164-REB (D. Colo., Sept. 23, 2015) ECF Nos. 1193-1202. The sad truth is that there is an abundance of such violence by inmates serving lengthy, or life, sentences at BOP facilities including stabbing guards in the eye with a sharpened comb causing brain damage, conspiracies to murder and murders at the ADX Supermax prison, attacks on, and murders of, BOP guards, and multiple murders occurring when inmates are housed in a prison's special housing unit, or the "jail within a jail." *See* Response to defense motion to limit rebuttal, *United States v. Coonce*, No. 10-03029-01-CR-S-GAF (W.D. MO, Apr. 11, 2014) ECF No. 656 and attached exhibits.

      Several federal courts have considered the admissibility in rebuttal of third-party inmate acts of violence that illustrate the point that no conditions of confinement can guarantee the safety and security of inmates and staff from violent felons. Those courts have uniformly rejected the defense arguments to limit the cross-examination of defense experts as well as the rebuttal evidence. *See United States v. Larry Lujan*, No: CR-05-924RB, doc. 1299 (D. N.M., Sept. 7, 2011); *United States v. John Charles McCluskey*, Cr. No. 10-2734 JCH, doc. 872 (D. N.M., Apr. 1, 2013); *United States v. Coonce*, No. 10-03029-01-CR-S-GAF (W.D. MO, May 15, 2014) ECF No. 850, pg. 102-3. Copies of the *Lujan* and *McCluskey* orders are attached as Exhibit 4 and 5 respectively.

In *United States v. Lujan*, the district court denied a defense motion to preclude the admission of third-party inmate misconduct evidence in rebuttal. Dr. Reidy was also a retained expert in the *Lujan* case. In an unpublished opinion, Judge Brack stated:

> Defendant desires to use the presentation of evidence as a single-edged sword; that is, he wants to have his expert testify about his experience in the BOP prisons in which various security measures have been successfully used with other inmates, but he does not want the government to be able to challenge the experts' experiences with other similar situations in which the security measures have not been so successful. The Court will not limit cross-examination in the manner Defendant requests. "Cross-examination . . . is beyond any doubt the greatest legal engine ever invented for the discovery of truth." *Ford v. Wainwright*, 477 U.S. 399, 415 (1986) (internal quotation marks omitted). Cross examination of an expert in a death penalty trial helps by "bringing to light the bases for each expert's beliefs, the precise factors underlying those beliefs, any history or error or caprice of the examiner, any personal bias with respect to the issue of capital punishment, [and] the expert's degree of certainty about his or her own conclusions. . . ." Id.
>
> The Court declines to limit the anecdotal incidents of prisoner violence to the past five years as Defendant has offered no reasoned basis for such limitation, other than it would arbitrarily exclude most of the anecdotal incidents.

*Lujan, supra*, Doc. 1316 at 3.

In *United States v. McCluskey*, the District Court considered an identical issue *in limine*. In considering the defense motion to preclude, the Court stated:

> To counter the future dangerousness aggravating factor, Defendant states that he will "most likely" present an expert in "violence risk assessment in prison" to testify, if the facts warrant it, to an opinion that Defendant "is likely to make a positive adjustment to the Bureau of Prisons." [Doc. No. 872, pp. 4-5] Defendant anticipates that the Government may cross-examine his expert via anecdotal acts of violence by other prisoners; Defendant asserts that other cases have included cross-examination of such incidents with inaccurate information. Defendant argues that such evidence is irrelevant and more prejudicial than probative under 18 U.S.C. § 3593(c). Defendant requests that the Court prohibit the use of such acts in cross-examining "defense risk assessment experts" or in rebuttal; alternatively, Defendant asks the Court to limit such incidents to those occurring

within the past five years. [Doc. No. 872, pp. 9-10] In addition, if the Court determines that such evidence is permissible, Defendant asks the Court to order the Government to disclose such evidence and any supporting documents at least thirty days prior to the witness's testimony so that defense counsel can investigate the accuracy and relevance of the incident. [Doc. No. 872, p. 10]

*Id*., at 12. In denying the motion, the Court held:

> The Court approves and will follow the reasoning and approach taken by Judge Brack in *Lujan*. Information is admissible in a capital sentencing proceeding "'if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without'" that information. *Lujan*, Cr. No. 05-924 RB, pp. 2-3 [Doc. No. 905-3] (quoting *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010)). Both "'the government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.'" Lujan, Cr. No. 05-924 RB, p. 3 [Doc. No. 905-3] (quoting 18 U.S.C. § 3593(c)). Judge Brack rejected the defendant's similar attempt to limit cross-examination and rebuttal evidence:
>
> \*             \*             \*
>
> The Court thus denies Defendant's motion requesting the Court to prohibit cross-examination and rebuttal evidence showing specific acts of violence or escape by other prisoners. The Court also denies the motion requesting that such evidence be limited to the preceding five years.

*Id*., at 13.

In *United States v. Candelario-Santana*, No. 09-427 (D. P.R., Mar. 18, 2013) the following exchange took place in the penalty phase of the defendant's trial during the defense expert testimony:

> Q. And you are aware of a situation at USP Marion where – and we know that inside of a prison facility, the most secure area inside, the most secure area is the SHU, right? The special housing unit?
>
> Bezy: Yes.

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG                    Page **8** of **16**

Case 3:16-cr-00086-SLG   Document 984   Filed 01/15/21   Page 8 of 16

Q.  And you are aware that U.S. –

Mr. RUHNKE:   I'm going to object to individual incidents of past violence in prison as creating the wrong impression that it's the norm.

THE COURT:   No.

Mr. RUHNKE:   And there are lots of things that have happened.

THE COURT:   I think that the same way that you had the opportunity to present the side of the story how secure prisons are, Mr. Hegyi has the same right to present the incidents that happened in prisons so the jury has a complete picture.

Mr. RUHNKE:   Yes, sir.

THE COURT:   Because the jury has never been to prison. They were not correctional officers. They have never visited one. Probably they have never read about it. And I think they have to have a complete picture.

Mr. RUHNKE:   Yes, sir.

BY Mr. HEGYI:

Q.  And you are aware that within the most secure area, the SHU, at the time the most secure prison facility in the United States, Marion, that two different correctional officers were murdered on the same day?

Bezy.  Yes.

Q.  Despite the best efforts and despite the fact that was the most secure facility in the entire Bureau of Prisons at the time; is that correct?

Bezy.  Correct.

Q.  And despite the fact that they were inside the SHU of the most secure facility, correct?

A.  It was a control unit, but it did happen, yes.

> Q. And one was killed first, and later that same day the next one was killed, right?
>
> A. Correct.

Transcript of penalty phase trial, *United States v. Candelario-Santana*, No. 09-427 (D. P.R., March 18, 2013).

In *United States v. Coonce*, the defendant sought to preclude the government from cross examining Dr. Reidy and other experts concerning third party inmate violence, as well as presenting affirmative rebuttal evidence of such violence. *See* Motion to Exclude Irrelevant and Prejudicial Acts of Custodial Misconduct by Others, *United States v. Coonce*, No. 10-03029-01-CR-S-GAF (W.D. MO, Apr. 5, 2014) ECF No. 639 ("at trial, Mr. Coonce intends to call experts in corrections, rates of violence in Bureau of Prison facilities"). The government opposed the motion and the court subsequently denied the defendant's motion to preclude the third-party inmate misconduct rebuttal evidence. Although retained as an expert witness to testify about future dangerousness, the defense never called Dr. Reidy as a witness, but instead called former Warden Mark Bezy to testify about the conditions of confinement. Over the defense objection, the government was permitted to cross examine Mr. Bezy extensively concerning third-party inmate violence:

> Q . . . Snarr and Garcia, Beaumont, Texas, you're familiar with that case?
>
> A Yes, I am.
>
> Q You've actually seen the videotape of that, correct?

A   Yes.

Q   They are being brought back from the SHU rec yard and they are both handcuffed?

A   Yes.

Q   Walking down a corridor?

A   Yes.

Q   They slip out of their handcuffs?

A   Yes.

Q   They have secreted on their person despite the fact that this is the jail within the jail two shanks or a shank each, correct?

A   I believe so.

Q   And then they turn around and they start stabbing the guard, correct?

A   Correct.

Q   The other gentleman slips out of his handcuffs, correct?

A   Correct.

Q   They had been handcuffed but they were able to slip out of their handcuffs, correct?

A   Correct.

Q   Then they both start stabbing the guard, correct?

A   It's been awhile since I've seen it, yes.

Q   Many, many times? Dozens of times?

A   Okay.

Q   Do you disagree with that?

A    No.

Transcript of trial, *United States v. Coonce*, No. 10-03029-01-CR-S-GAF (W.D. MO, Jun. 23, 2014) ECF No. 850, pg. 2831-2. The government also offered the testimony of Scott Dodrill in rebuttal who discussed prison misconduct and other rebuttal to the conditions of confinement evidence.

Courts considering the issue have permitted the government to properly rebut a defendant's claim that he can be safely housed, is not a future danger based upon conditions of confinement, or is statistically unlikely to commit an act of violence by reference to studies of third party prisoners by means of impeachment or evidence identifying specific instances of violence at BOP facilities by third parties. The government respectfully requests that the Court permit such evidence in this case in rebuttal.

    a.    <u>**BOP violence evidence is proper rebuttal**</u>

During the penalty phase of trial, "information may be presented as to any matter relevant to the sentence." 18 U.S.C. § 3593(c). "Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id*. Moreover, both parties have a statutory right to "***rebut any information received at the hearing***." *Id*. (emphasis added). The Tenth Circuit has defined relevant evidence for the penalty phase of a capital trial to be "information [that] has 'any tendency to make the existence

of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information].'" *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010) (quoting Fed. R. Evid. 401).

The purpose of rebuttal testimony is to explain, repel, counteract, or disprove the evidence of the adverse party and if the defendant opens the door to the line of testimony, he cannot successfully object to the prosecution accepting the challenge and attempting to rebut the proposition asserted. *United States v. Delk*, 586 F.2d 513, 516 (5th Cir. 1978), *quoted in United States v. Troya*, 733 F.3d 1125, 1139 (11th Cir. 2013).

The Fourth Circuit considered the scope of rebuttal evidence in a capital case in *United States v. Jackson*, 327 F.3d 273, 293 (4th Cir. 2003). In that case, the defendant was convicted of a death eligible offense. During the sentencing phase, the government presented the testimony of the victim's mother, and the defense presented the testimony of Jackson's adoptive mother, Sally Jackson. The defense also attempted to offer the testimony of the adoptive parents of Jackson's natural sister, who suffered behavioral disorders, but the district court did not allow this testimony without any expert testimony linking the sister's mental condition to Jackson's. To rebut Sally Jackson's testimony, the government played for the jury, over Jackson's objection, portions of a videotaped interview given by Jackson for FOX News in October 2000, after his State conviction had been reversed and he had been sentenced pursuant to a guilty plea. The defendant was given a death sentence and the Court of Appeals considered the admission of the

video-taped interview on appeal. In finding no reversible error in the admission of the FOX TV interview, the Fourth Circuit held:

> While isolated statements and subjects discussed during the course of the interview could fairly be the subject of a challenge on the basis that the statements were not within the strict limits of the subjects to which Sally Jackson testified and thus were not reasonably "tailored" to what she said, see *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001), the videotape as a whole was substantially and reasonably within the range of rebutting the impression that Sally Jackson intended to leave with the jury. Although our rule in *Stitt* requires that rebuttal evidence be reasonably tailored to the evidence being rebutted, this is not to say that the evidence being rebutted must be taken in its most narrow probative range. To the contrary, ***any fact tended to be proved by the original evidence -- whether directly, by inference, or by logic -- can be rebutted. Our focus on what evidence may be offered in rebuttal must be directed at what is reasonably tailored to rebut the original evidence, including any inference that may fairly be drawn from it.***

*Id*., at 293 (emphasis added). Evidence of violence by third parties at BOP facilities is proper to rebut any claim that the defendant can be safely housed, is not a future danger based upon conditions of confinement, or is statistically unlikely to commit an act of violence by reference to studies of third party prisoners.

### b. BOP violence evidence is proper cross-examination

The government should be granted substantial leeway in cross-examining defendant's experts and instances of prison violence is proper cross-examination for several reasons. First, cross-examination as to instances of prison violence is permissible to test the scope of the expert's knowledge. Second, cross-examination as to instances of prison violence is proper cross-examination to rebut the expert's specific testimony.

The government is entitled to explore the basis, and deficiencies, of an expert opinion on cross-examination. Federal Rule of Evidence 705 provides:

> Rule 705. Disclosing the Facts or Data Underlying an Expert's Opinion
>
> Unless the court orders otherwise, an expert may state an opinion--and give the reasons for it--without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.

Fed. R. Evid. 705. Rule 705 removes the need for an expert to make elaborate disclosure of the bases of his opinion. The onus of eliciting the bases of the opinion is placed on the cross-examiner and the cross-examiner is entitled to delve into basis of expert's opinion in detail. *Polk v Ford Motor Co.*, 529 F. 2d 259 (8th Cir. 1976), cert. den. 426 US 907 (1976). The government also notes that, pursuant to 18 U.S.C. § 3593, the rules of evidence are not applicable in a penalty phase, but they may be instructive.

    c.    **<u>Smith, through counsel, is well aware of this evidence</u>**

Defendant Smith is not statutorily or constitutionally entitled to the disclosure of the government's cross-examination questions or information, or the government's rebuttal case. Nevertheless, the government has previously provided this information to resource counsel in other cases, who are also participating in this case. *See United States v. Coonce* and *United States v. McCluskey*. Rebuttal evidence is not subject to disclosure under Rule 16. *See United States v. Di Carlantonio*, 870 F.2d 1058, 1063 (6th Cir. 1989); *United States v. Windham*, 489 F.2d 1389, 1392 (5th Cir. 1974) (rebuttal witnesses are a recognized exception to all witness disclosure requirements); *United States v. Frazier*, 387 F. 3d 1244, 1269 (11th Cir. 2004) (Our case law establishes that, consistent with the plain language of the Rule, the government's presentation of rebuttal testimony

*US v. John Pearl Smith, II*
3:16-cr-00086-SLG                Page **15** of **16**

Case 3:16-cr-00086-SLG   Document 984   Filed 01/15/21   Page 15 of 16

without prior notice does not violate Rule 16, since the Rule's notice requirements apply only to the government's case-in-chief).

## Conclusion

WHEREFORE, the government respectfully requests that the Court permit the introduction of third-party inmate misconduct in rebuttal, and cross-examination of defense experts, at any penalty phase proceeding in this matter.

Respectfully Submitted,

BRYAN SCHRODER
UNITED STATES ATTORNEY

*/s/ James D. Peterson*
JAMES D. PETERSON
Trial Attorney
United States Department of Justice

**CERTIFICATE OF SERVICE**
I hereby certify that on January 15, 2021,
I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF system
which will send notification of such filing to counsel of record.

*/s/ James D. Peterson*
James D. Peterson,
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
Tel: (202) 353-0769
james.d.peterson@usdoj.gov