E. BRYAN WILSON
Acting United States Attorney
KAREN VANDERGAW
CHRISTOPHER SCHROEDER
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: karen.vandergaw@usdoj.gov
Email: christopher.schroeder@usdoj.gov

JAMES D. PETERSON
Trial Attorney, Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
Email: james.d.peterson@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 3:16-cr-00086-SLG-DMS |
| Plaintiff, | ) |
| vs. | ) |
| JOHN PEARL SMITH, II, | ) |
| Defendant. | ) |

**GOVERNMENT'S MOTION TO RECONSIDER SCOPE
OF GOVERNMENT REBUTTAL EXAMINATION**

NOW COMES the United States of America, by E. Bryan Wilson, Acting United States Attorney for the District of Alaska, and Karen E. Vandergaw and Christopher Schroeder, Assistant United States Attorneys, and Department of Justice Trial Attorney James D. Peterson, and files this motion to reconsider the Court's June 2, 2021, Order Regarding Rule 12.2 Filings. ECF No. 1073. Specifically, the government requests authorization to conduct a basic mental health evaluation in order to rebut the defendant's broad mental health mitigation based in part on claims of risk factors, brain scan evidence, as well as expansive social history evaluations.

The government has a compelling need to conduct its own examination of the defendant to further the truth-seeking function of trial as well as to adequately rebut any mental health mitigation evidence the defendant will present at trial. More than twenty years ago, a federal district court noted that:

> Psychiatry is far from an exact science because it does not rely primarily on the analysis of raw data. Instead, the basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject. The Government's expert cannot meaningfully address the defense expert's conclusions unless the Government's expert is given similar access to the 'basic tool' of his or her area of expertise: an independent review with and examination of the defendant.

*United States v. Haworth*, 942 F. Supp. 1406, 1407-08 (D.N.M. 1996) (internal citations and quotations omitted). The Fourth Circuit has also emphasized the value and importance of medical examinations by government experts:

> Not only to enable the government to carry its full load, but also to respect the inviolability of the human personality, the [mental] examination [of the defendant by government experts] here was indicated. . . . The government, to meet its burden of proof, would have access to only three kinds of proof: cross-examination of defendant's experts, lay testimony, and testimony of government

experts predicated upon courtroom observations and hypothetical questions. *Medical science . . . deems these poor and unsatisfactory substitutes for testimony based upon prolonged and intimate interviews between the psychiatrist and the defendant.* Half truths derived from these unsatisfactory substitutes do more to violate human personality than full disclosure, especially because there is always the possibility that the psychiatrist who examines for the government and thus has full knowledge of a defendant, may corroborate his contention that he is legally insane.

*United States v. Albright*, 388 F.2d 719, 724-25 (4th Cir. 1968) (emphasis added) (internal citations and quotations omitted), *cited in United States v. Beckford*, 962 F. Supp. 748, 758 (E.D. VA 1997). Accordingly, it is important for the government to have its expert conduct a basic mental health evaluation of the defendant.

On June 2, 2021, the Court issued an Order Regarding Rule 12.2 Filings which limited the government in its rebuttal examination as follows:

> A government's expert may rebut the results of the neuropsychiatric assessment described in Paragraph 1 of Mr. Smith's amended notice by conducting a neuropsychiatric or psychiatric assessment of Mr. Smith. This expert may conduct an interview of Mr. Smith. The assessment interview shall be limited to the same topics as the defense neuropsychiatrist, specifically "establishing rapport, asking Mr. Smith open ended questions about his interests, observing how he presents self, processes information, how he uses language, and observing his functioning and any symptoms" and answering any questions Mr. Smith may have for the expert.

ECF No. 1073. Specifically, the Order precluded the government from rebutting the defendant's social history evidence presented by a psychologist as follows:

> The Court does not view a "social historian" as expert evidence of a mental condition pursuant to Rule 12.2, and the government is not permitted to have any mental health expert conduct an interview of Mr. Smith to rebut this anticipated evidence.

ECF No. 1073. By limiting the government's expert to an evaluation of the defendant's interests, how he presents himself, how he processes information, how he uses language,

and observing his functioning and any symptoms, the Court has effectively denied the government any mental health rebuttal.

Dr. Park Dietz is an esteemed forensic psychiatrist with decades of experience in precisely these types of cases and these types of evaluations. *See* Declaration of Park Dietz, attached as Exhibit 1 (with CV). As Dr. Dietz makes clear:

> The validity and reliability of a mental health evaluation depend in part on the completeness of the data available. These data ideally derive from multiple sources, including but not limited to examination of the defendant; witness interviews conducted by various interviewers; educational, occupational, military, medical, criminal justice, correctional, occupational, and other records; and biomedical, psychological, and neuropsychological testing where indicated.

*See* Exhibit 1. Moreover, the "basic mental health interview is designed to elicit a sufficiently complete picture of the person such that the interviewer will be able to validly and reliably characterize the individual's personality, habits, behavior, and any mental disorders that may be present." *Id*.

The government requests the Court to reconsider its ruling on June 2, 2021, in order to permit the government to conduct more broad questioning of the defendant so that it can adequately rebut the defense mental health mitigation. *See* Declaration of Park Dietz, attached as Exhibit 1.[1] The government requests authorization to conduct a "basic mental health interview" as outlined by Dr. Dietz in his attached Declaration.

---

[1] Given the Court's prior ruling concerning the scope of permissible testing, as well as the imposed requirement that all psychological testing be recorded, the government and Dr. Denney have elected not ta have Dr. Denney participate at this point in any testing or evaluation of the defendant. If permitted, the government proffers that Dr. Denney would like to perform the following testing to identify neurocognitive compromise contributing to possible mental disease or defect: Conners' Continuous Performance Test, Third Edition (CPT-3); Wechsler Adult Intelligence Scale-IV (WAIS-IV); Neuropsychological Assessment Battery (NAB); Trail Making Test, Parts A & B; Finger Tapping Test; Grooved Pegboard Test; Controlled Oral Word

## Conclusion

WHEREFORE, the government respectfully requests that the Court reconsider its ruling on June 2, 2021, profoundly limiting the government's rebuttal examination of the defendant as stating in its June 2, 2021, Order Regarding Rule 12.2 Filings. ECF No. 1073.

Respectfully Submitted,

E. BRYAN WILSON
Acting United States Attorney

*/s/ James D. Peterson*
JAMES D. PETERSON
Trial Attorney
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ James D. Peterson*
James D. Peterson
Trial Attorney
Capital Case Section
United States Department of Justice

---

Association Test; Wisconsin Card Sorting Test; Test of Premorbid Functioning Wide Range Achievement Test-5; Minnesota Multiphasic Personality Inventory-2 (MMPI-3); Validity tests deemed clinically appropriate for Mr. Smith.