E. BRYAN WILSON
Acting United States Attorney

KAREN E. VANDERGAW
A. JAMES KLUGMAN
CHRISTOPHER SCHROEDER
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: karen.vandergaw@usdoj.gov
Email: james.klugman@usdoj.gov
Email: chistopher.schroeder@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:16-cr-00086-SLG-DMS |
| vs. ) | |
| ) | |
| ) | |
| JOHN PEARL SMITH, II, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## TRIAL BRIEF

The First Superseding Indictment (the "indictment") in this case charges defendant

John Pearl Smith II with the following crimes:

Counts 1, 9, & 13:   Interference with Commerce by Robbery, a violation of 18 U.S.C. § 1951

Counts 2, 10, & 14:   Attempted Possession of Controlled Substances with Intent to Distribute, a violation of 21 U.S.C. §§ 846, 841(b)(1)(C)

Counts 3 - 6:   Use of Firearm During and in Relation to Crime of Violence Resulting in Murder, a violation of 18 U.S.C. § 924(c), (j)

Counts 7 & 8:   Use of Firearm During and in Relation to Drug Trafficking Crime Resulting in Murder, a violation of 18 U.S.C. § 924(c), (j)

Counts 11 & 15:   Use of Firearm During and in Relation to a Crime of Violence, a violation of 18 U.S.C. § 924(c), (j)

Counts 12 & 16: Use of Firearm During and in Relation to Drug Trafficking Crime, a violation of 18 U.S.C. § 924(c)

Included in the indictment is also Count 17: Felon in Possession of a Firearm, a violation of 18 U.S.C. § 922(g). This count will be bifurcated from the trial on the other counts. ECF No. 410.

Trial is scheduled to commence on October 18, 2021, in Anchorage, Alaska. The United States expects to call approximately 50 witnesses and believes that the government's case-in-chief should take approximately 3 to 4 weeks, depending on the how COVID-19 impacts the progression.

//

//

## II.   Summary

The first superseding indictment charges the defendant with 17 crimes. ECF No. 102.

### A.   Coal Road Murders

On June 5, 2016, John Pearl Smith's texted his girlfriend Cassie Schaefer. He asked her if she'd be interested "being helpful tonight" with some "crazy thoughts" He asked her to "drive him somewhere" in his car. He arrived at her house and instructed her to turn off her phone. Together, Schaeffer and Smith drove to the edge of Ben Gross' property in Wasilla. Smith told Schaeffer to return in approximately 30 minutes. Schaeffer drove to a nearby gas station, where she turned on her phone and continually refreshed the Alaska Department of Public Safety's daily dispatch webpage.

Meanwhile, Ben Gross, Crystal Denardi, and R.B. were spending time in the "shop" at Ben Gross' property. This shop was essentially a large garage, situation on a lake front in a wooded community. Gross' house has burned down a few months prior, so Gross' had been living and selling drugs out of the shop.

Smith, donning a mask, kicked open the door, fired two warning shots into the ceiling, and demanded to know where the safe was located. Gross responded by throwing a beer bottle at Smith. Smith shot Gross, killing him. Smith yelled at R.B and Denardi to get on the ground. Smith searched the room, asking R.B. where Gross kept the safe, his money, and his dope. R. B. explained that Gross ran out of most of his drugs and only had a quarter gram of "dark" remaining. Smith responded, "A quarter gram of dark? He

just died for nothing. He shouldn't have done that. He was stupid. Don't you be. If you do what I say, then you won't have to die either." Denardi and R.B. agreed that they would do what he said. R.B. said, "You don't have to kill us, I have kids, man."

Smith heard a noise outside and investigated. R.B warned Smith that people were likely to show up at the shop soon. Smith told R.B. and Denardi to give him money, but neither had any. Smith walked behind Denardi and shot her in the back of the head. Startled, R.B. started to run out of the garage. Smith shot R.B. in the back of the head and through the chest. Smith chased R.B. out of the shop and down to the lake. Beck jumped in the lake and Smith demanded that Beck swim away. As Smith turned away to return to the shop, Beck crawled out of the lake, shoved a kayak into the water, and paddled to a home across the lake. The homeowner called 911. R.B. was treated at the E.R. and survived his gunshot wounds.

Smith returned to the shop, doused the bodies of Gross and Denardi with gasoline, and ignited them. Smith left the property, waiting in the woods for Schaeffer's return. When Schaeffer returned, Smith leap out of the woods and got inside the car.

Smith directed Schaeffer to drive down Johnson Road, advising her to stop at a pullout at an ATV trail. Smith ventured down the trail while Schaeffer waited in the car. Smith walked several feet into the woods, burying the Astra 9-shot .22 caliber revolver used to kill Denardi and Gross. Smith returned to the car, and Smith and Schaeffer drove to Nancy Lake, where they had sex, before driving into the night.

When first responders arrived at the scene of the arson and murders, they found J.F. and T.P. near the entrance to the driveway. The men, both drug users, saw police and threw a gun and a BB gun into the woods. The Alaska State Troopers interviewed the men, who both confirmed they were at the property to visit Ben Gross.

While in-custody for state charges, Smith was cellmates with his friend G.C.. Knowing that G.C. was likely to be released soon, Smith confessed to the murders, drew a map of the location of the murder weapon and directed G.C. to dig up the gun and plant it on T.P. Instead, G.C. shared the information and map with the authorities. Law enforcement followed the map to Johnson Road, walked down the trail, and found the murder weapon buried in the earth.

B.  M.B. robbery

Around the summer of 2015, Smith began targeting drug traffickers for robberies, as drug traffickers typically do not call the police after they are robbed. Smith told D.K. about his plans to rob drug dealers, and if anything went wrong, he would shoot witnesses and burn the evidence. Smith's intent was to steal controlled substances, including heroin, and the proceeds of the sale of controlled substances. The defendant intended to provide the drugs to others.

On or about September 2015, in the early hours of the morning, Smith forcibly entered a residence located in the Settler's Bay area of Wasilla. He believed the residence belonged to a drug trafficker. Inside the residence was M.B. The defendant threatened M.B. with a firearm Smith was carrying, a Plumcrazy Model C15, 5.56 mm assault rifle;

Smith pointed the rifle at M.B., threatened to shoot him, and demanded money and heroin. M.B. did not have heroin, but he had numerous firearms and other items that the defendant took. Smith bound M.B. and took the property. M.B. was tending a small marijuana grow in the house and did not call the police.

    C.    R.H. robbery

On or about May 11, 2016, Smith forcibly entered another residence, located at 5328 Alvin's Alley in Wasilla. Smith intended to rob one of the occupants, R.H., whom he knew to be a drug trafficker. Again, Smith pointed the Plumcrazy Model C15, 5.56 mm assault rifle at R.H. and J.L. Smith demanded money and drugs. R.H. told Smith the drugs were, and R.H. pointed out approximately ¾ ounce of heroin that was in her room. Smith asked where the rest of R.H.'s stash was, and R.H. denied having additional stash. Inside a safe in R.H.'s room, the defendant found an Astra .22 caliber 9-shot revolver. Smith tied up both R.H. and J.L, and left with the stolen property, including the Astra revolver and the heroin. He provided the heroin to another person.

A few weeks later, Smith used this stolen Astra revolved to kill Denardi and Gross.

    D.    Felon in Possession[1]

In June 2016, members of the Alaska State Troopers were investigating the Coal Road murders. Investigators focused their attention on Smith and began to conduct

---

[1] Bifurcated.

U.S. v. John Pearl Smith II            Page 6 of 11
3:16-cr-00086-SLG

Case 3:16-cr-00086-SLG   Document 1121   Filed 09/27/21   Page 6 of 11

surveillance using tracking warrants and air support. On June 22, 2016, the State Troopers observed the defendant leave his then-residence, located at 5238 Alvin's Alley, drive to the residence of G.C., and return back to the Alvin's Alley address. The defendant was followed by G.C. in a separate vehicle. Troopers observed G.C. retrieve firearms from his vehicle and watched as both he and the defendant shot the firearms. Both G.C. and the defendant are convicted felons. G.C. was stopped by Troopers as he left Alvin's Alley. Ultimately, Troopers obtained a search warrant for G.C.'s vehicle and found two firearms, a DPMS .308 caliber semi-automatic rifle and a Taurus .45 caliber semi-automatic pistol. G.C., who was on state probation, was detained by state authorities.

**IV.     ISSUES**

    A.     COVID-19's impact

COVID-19's impact in Alaska has reached new levels of severity. The prevalence of this virus will undoubtedly impact the progression of the trial. The United States request that this Court determine the procedure if and when a witness contracts COVID-19. Additionally, the court should determine what procedures will occur if an in-custody witness is barred from transport to court due an outbreak of COVID-19 in the Alaska Department of Corrections.

    B.     Stipulations

To date, the parties have not entered into any stipulations.

C. <u>Impeachment</u>

The United States may use specific instances of any of the defendant's prior bad conduct to impeach him or her, as provided under Evidence Rule 608(b). It may also inquire about the defendant's reputation as provided under Evidence Rule 608(a).

Evidence Rule 609(a) provides that the government may impeach witnesses with prior convictions, provided it can show that the probative value of such impeachment outweighs any prejudicial effect. *See United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir. 2000). Should Smith choose to testify, the United States will seek to introduce any prior qualifying conviction to impeach him as provided for under Rule 609(a)(1), as well as any conduct involving dishonesty.

In addition, the government reserves the right to introduce evidence of Smith's prior convictions or conduct to rebut any arguments he may raise at trial through argument, cross-examination, other witnesses or otherwise. *See United States v. Sager*, 227 F.3d 1138, 1148 (9th Cir. 2000) (prior conviction admitted to rebut defendant's innocent explanation as to why he was present near the mailbox at issue).

D. <u>Expert Testimony</u>

Expert opinions are admissible if they will assist the trier of fact to understand the evidence or determine a fact in evidence. Rule 702, Fed. R. Evid. Expert opinions, as opposed to testimony by summary witnesses, may be based on facts or data not admissible into evidence. Rule 703, Fed. R. Evid. An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact. Rule 704, Fed. R. Evid.

Expert scientific testimony is governed by *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). *Daubert* announced five factors which may be considered in evaluating the relevance and reliability of proposed expert testimony: 1) whether the relevant scientific theory can be tested; 2) whether the theory is subjected to peer review and publication; 3) the known rate of error; 4) the existence of standards; and 5) the degree of general acceptance in the relevant scientific community. 509 U.S. at 593-94.

> Carl McClary: handwriting analysis
>
> Cristin Rolf: medical examiner
>
> Jamie Nading: fingerprints
>
> Derek Walton: controlled substance analysis
>
> Robert Shem: firearm and ballistic analysis
>
> Nathan Rochielieu: arson investigator
>
> Kristin Vaona: biological screening
>
> David Kanaris: presence of blood, collection of DNA, and examination of footwear and comparison to impressions.
>
> Gordon Dorr: Drug trafficking expert
>
> Sara Graziano: DNA analysis and comparison
>
> Ramin Dunford: Forensic analysis of computers, cellular telephones, and cell tower information

Andrew Armstrong: Chemical analysis to determine presence of gasoline

E. <u>Reciprocal Discovery Issues</u>

Pursuant to Rule 16, Fed. R. Crim. P., all parties to the instant action have been under an obligation of reciprocal discovery. The defendant requested and the United States has provided all discoverable items to the defendant and his attorney. The defendant has had ample access to inspect all items of the physical evidence.

The defendant has not provided the government with any discovery or witness statements in this case. To the extent that the defendant attempts to introduce any evidence not provided to the United States pursuant to his obligations under Rule 16(b), Rule 26, or other applicable law, the government will seek a preclusion order. *See Taylor v. Illinois*, 484 U.S. 400 (1988) (upholding constitutionality of preclusion of defense witness withheld from prosecution in violation of discovery rules).

F. <u>Consciousness of Guilt</u>

Escape attempts immediately after the commission of a crime, or immediately prior to trial, both support an inference of consciousness of guilt. *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1107 (9th Cir. 1979)

RESPECTFULLY SUBMITTED this 27th day of September, 2021 in Anchorage, Alaska.

    E. BRYAN WILSON
    Acting United States Attorney

    <u>s/ Karen Vandergaw</u>
    Assistant U.S. Attorney
    United States of America

*United States v. John Pearl Smith II*
Case No. 3:16-cr-00086-SLG     Page 10 of 34

Case 3:16-cr-00086-SLG    Document 1121    Filed 09/27/21    Page 10 of 11

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2021, a copy of the foregoing was served electronically via ECF on:

Mark Larranaga
Suzanne Elliot
Theresa Duncan

s/ Karen Vandergaw
Office of the U.S. Attorney