S. LANE TUCKER
United States Attorney

KAREN E. VANDERGAW
A. JAMES KLUGMAN
CHRISTOPHER D. SCHROEDER
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: karen.vandergaw@usdoj.gov
Email: james.klugman@usdoj.gov
Email: chistopher.schroeder@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>JOHN PEARL SMITH II,<br><br>        Defendant. | No. 3:16-cr-00086-SLG |

**RESPONSE IN OPPOSITION TO
"MOTION TO DISMISS COUNTS 7, 8, 12 AND 16" DOCKET 1190**

    John Pearl Smith used a gun to try to steal narcotics from three different houses. During one of these robberies, he used a gun to murder two victims and to shoot a third. Smith argues that the U.S. Constitution prohibits the government from criminalizing this

//

conduct. Because the Second Amendment does not protect a right to use a gun in furtherance of federal crimes, Smith's motion to dismiss should be denied.

**ARGUMENT**

**1. The Second Amendment and relevant statutes**

Federal law provides a mandatory minimum penalty for the use of a firearm in furtherance of a federal drug trafficking crime, with a series of escalating minimum punishments if the firearm is brandished, discharged, or used to commit murder. 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and (j).

The Second Amendment to the Constitution guarantees "an individual right to keep and bear arms for self-defense." *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. ___, 142 S.Ct. 2111, 2125 (2022). To determine whether a law violates this right, a court considers whether "the Second Amendment's plain text covers an individual's conduct". *Id*. at 2126. If so, then "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*.

**2. Section 924(c) does not criminalize conduct covered by the Second Amendment's plain text**

Smith argues that criminalizing his use of a gun to commit other federal crimes "plainly burden[s]" his "Second Amendment right to keep and bear arms." ECF No. 1190 at 3. He is mistaken. The Supreme Court has made it abundantly clear that dangerous felons like Smith can be disarmed altogether, and the right to bear arms for lawful purposes such as self-defense is not implicated by a penalty for using a gun to commit another crime.

*U.S. v. John Pearl Smith II*
3:16-cr-00086-SLG

**2.1. As a convicted felon, Smith had no right to possess a firearm at all**

At all times relevant to the superseding indictment, Smith was a convicted felon. As such, he was prohibited from possessing concealable firearms under both federal and state law. 18 U.S.C. § 922(g)(1) and Alaska Stat. § 11.61.200(a)(1). And the Supreme Court's Second Amendment jurisprudence makes it abundantly clear that such prohibitions are constitutional. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); see also *McDonald v. Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion of Alito, J.) (emphasizing this portion of *Heller* holding); *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J., concurring) (same).

In light of this guidance, it is small surprise that the Ninth Circuit held that, even in the wake of *Heller*, the federal prohibition on felons carrying concealed weapons "does not violate the Second Amendment". *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010). Other courts of appeal arrived at the same result. See, e.g., *United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009); *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010). And the Alaska Court of Appeals has likewise upheld the state felon in possession ban against a similar post-*Heller* challenge. *Wilson v. State*, 207 P.3d 565, 567 (Alaska App. 2009). Nor does anything in *Bruen* cast doubt upon these holdings: on the contrary, Justice Kavanaugh (joined by the Chief Justice) expressly noted

//

that he joined the opinion of the court on the understanding that those principles remained intact. 142 S.Ct. at 2162 (Kavanaugh, J., concurring).

Thus, because the state and federal governments validly prohibited Smith from possessing guns at all, any additional penalties for his criminal misuse of the guns he illegally chose to possess could not infringe Smith's Second Amendment rights.

**2.2. There is no constitutional right to use a firearm to commit a crime**

Moreover, the conduct proscribed by § 924(c)—using a firearm to further a separate federal crime—is not within the scope of the "right of the people to keep and bear arms" at all. U.S. Const. amend. II. Accordingly, there is no constitutional bar to imposing criminal penalties on that conduct.

The right of the people protected by the text of the second amendment is "an individual right to keep and bear arms *for self-defense*." *Bruen*, 142 S.Ct. at 2125 (emphasis added. It does *not* protect "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 2128 (quoting *Heller*, 554 U.S. at 626). On the contrary, "the right protected by the Second Amendment [consists of] 'bearing arms for *a lawful purpose.*'" *Heller*, 554 U.S. at 620 (quoting *United States v. Cruikshank*, 92 U.S. 542, 553 (1875)) (emphasis added).

The penalties in § 924(c) are only triggered when a person uses or possesses a firearm "during and in relation to" or "in furtherance of" a "crime of violence or drug trafficking crime … for which the person may be prosecuted in a court of the United States". By definition, then, the penalties in § 924(c) and (j) can never be imposed on those

exercising their "personal right to keep and bear arms for lawful purposes", *McDonald*, 561 U.S. at 780, because a conviction requires the government to prove that the defendant was using or possessing the firearm for a specific *unlawful* purpose: the commission of another specified serious federal crime.

Nor is this a particularly close question. Noting that "implicitly and explicitly, the Court made clear that its holding concerned the *lawful* possession and use of a firearm", the Ninth Circuit held that "it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*"—and that § 924(c) is therefore constitutional. *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011). The other circuits to have considered the question unanimously agree. See, e.g., *United States v. Bryant*, 711 F.3d 364, 370 (2d Cir. 2014) ("[W] e hold that the Second Amendment does not protect the *unlawful* purpose of possessing a firearm in furtherance of a drug trafficking crime"); *United States v. Napolitan*, 762 F.3d 297, 311 (3d Cir. 2014) ("Needless to say, while the Second Amendment secures 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home,' it does not entitle a drug trafficker to carry a firearm in furtherance of his criminal exploits") (quoting *Heller*, 554 U.S. at 635); *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009) ("The Constitution does not give anyone the right to be armed while committing a felony").

The holding in *Potter* has not been overruled by an en banc court or the Supreme Court, and as such it is binding on other courts in the Ninth Circuit unless it has been "'effectively overruled'" because it is "'clearly irreconcilable' with 'intervening Supreme

*U.S. v. John Pearl Smith II*
3:16-cr-00086-SLG
Page 5 of 11
Case 3:16-cr-00086-SLG   Document 1198   Filed 07/28/22   Page 5 of 11

Court authority.'" *Apache Stronghold v. United States*, 38 F.4th 742, 763 (9th Cir. 2022) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)). The "'clearly irreconcilable' requirement 'is a high standard.'" *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019) (quoting *Rodriguez v. AT & T Mobility Servs.*, 728 F.3d 975, 979 (9th Cir. 2013)). Smith fails to meet it.

Notably, Smith does not point to any language in the *Bruen* opinion that is inconsistent with the core holding of *Potter* that the Second Amendment does not protect a right to keep and bear arms for criminal purposes. On the contrary, the *Bruen* majority repeatedly echoed the language from *Heller* and *McDonald* that the *Potter* court relied on:

> [T]he Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding* citizen to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, *law-abiding* citizens have a similar right to carry handguns publicly for their self-defense. *Bruen*, 142 S.Ct. at 2122.
>
> The Second Amendment "is the very product of an interest balancing by the people" and it "surely elevates above all other interests the right of *law-abiding, responsible* citizens to use arms" for self-defense. *Id*. at 2131 (quoting *Heller*, 554 U.S. at 635).
>
> It is undisputed that petitioners Koch and Nash—two ordinary, *law-abiding*, adult citizens—are part of "the people" whom the Second Amendment protects. *Id*. at 2134.
>
> None of these historical limitations on the right to bear arms approach New York's proper-cause requirement because none operated to prevent *law-abiding* citizens with ordinary self-defense needs from carrying arms in public for that purpose. *Id*. at 2150.

(Emphases added.) The court also noted that a state could appropriately "require applicants to undergo a background check or pass a firearms safety course" in order to "ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"

U.S. v. John Pearl Smith II
3:16-cr-00086-SLG
Page 6 of 11
Case 3:16-cr-00086-SLG   Document 1198   Filed 07/28/22   Page 6 of 11

*Id*. at n.9 (quoting *Heller*, 554 U.S. at 635.) By the same token, because the government must prove that the defendant committed a separate federal crime to establish a violation of § 924(c), such an offender is by definition *not* a law-abiding citizen. As such, the proscribed conduct is not covered by the Second Amendment.

*Bruen* also concluded that it was appropriate to evaluate a Second Amendment claim in a fashion that "accords with how we protect other constitutional rights." *Id*. at 2130. The court specifically identified the First and Sixth Amendments as useful points of comparison. *Id*. at 2130 and 2156.

But it is well-established that these constitutional provisions do not protect conduct that is specifically intended to further criminal activity. The First Amendment protects freedom of speech, but the government can punish speech used to threaten or incite imminent violence. *Virginia v. Black*, 538 U.S. 343, 359 (2003). The First Amendment rights to petition and assembly still allow the government to "proscribe picketing in furtherance of … unlawful objectives." *International Brotherhood of Electrical Workers v. NLRB*, 341 U.S. 694, 705 (1951). The Sixth Amendment right to confrontation does not apply if "a witness is absent by [the defendant's] own wrongful procurement". *Reynolds v. United States*, 98 U.S. 145, 158 (1878).

A similar rule obtains for other constitutional guarantees. For instance, the right to interstate travel is constitutionally protected. But the government can still penalize interstate travel undertaken for the purpose of committing a crime. See *United States v. Lookretis*, 422 F.2d 647, 651 (7th Cir. 1970) (collecting cases). There is nothing in logic,

precedent, or the *Bruen* opinion that would suggest that the Second Amendment should be construed differently.

Because this Court can "apply [Ninth Circuit] precedent consistently with that of the higher authority, [it] must do so." *Consumer Def.*, 926 F.3d at 1213. Thus, because "the furtherance of drug trafficking is not a lawful purpose … § 924(c) is constitutional under the Second Amendment." *Potter*, 630 F.3d at 1261.

### 3. There is a long history of prohibiting the use of firearms for unlawful purposes

Finally, even if Smith's conduct were somehow deemed to fall within the scope of the plain text of the Second Amendment, section 924(c) would still be constitutional, because it is "consistent with the Nation's historical tradition of firearm regulation"—in this case, the longstanding set of prohibitions on bearing arms for unlawful purposes. *Bruen*, 142 S.Ct. at 2130.

As the *Bruen* court explained, "the act of 'go[ing] armed *to terrify* the King's subjects' was 'a great offense at the *common law*", if done "'malo animo', with evil intent or malice." *Id*. at 2141 (quoting *Rex v. Sir John Knight*, 1 Comb. 38, 38-, 90 Eng. Rp. 330 (K.B. 1686)). And the opinion detailed the ubiquity of similar laws in the colonial and early republican period: that is, laws that respected the right of law-abiding citizens to carry arms freely while penalizing their being borne with criminal intent. *Id*. at 2143 (describing Colonial-era laws that "codified the existing common-law offense of bearing arms to terrorize the people"); 2145 (describing Founding-era laws that prohibited bearing arms to spread fear or terror); 2145–46 (analyzing *State v. Huntly*, 25 N.C. 418 (1843), which

explained that the common-law offense dealt with "carrying for a 'wicked purpose' with a 'mischievous result'"). In other words, the very historical review undertaken in *Bruen* demonstrates that prohibiting carrying weapons for criminal purposes is one of the most venerable forms of regulation imaginable.

Smith claims that if his conduct falls within the plain text of the Second Amendment, "the *Government* must demonstrate that in 1791, there was statutory or common law that allowed that made it a crime to carry a firearm while engaged in specific criminal activity related to controlled substances or that allowed the Government to impose uniquely onerous mandatory sentences based solely on the use of a firearm." ECF No. 1190 at 3. In other words, Smith seems to take the position that the government must show that there was a substantively identical criminal prohibition in place at the instant that the Second Amendment was ratified. But this is not the inquiry that *Bruen* prescribed. On the contrary, the appropriate "analogical reasoning under the Second Amendment is [not] a regulatory straightjacket … analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen*, 142 S.Ct. at 2133.

This manner of analysis makes sense, because there are sound and sensible "modern regulations that were unimaginable at the founding." *Id*. at 2132. For instance, in the early days of the Republic most serious offenses (including murder and robbery) carried a mandatory death sentence. See, e.g., Crimes Act of 1790 §§ 3 and 8-10, 1 Stat. 113-114. Because these crimes were already punishable by the most severe penalty possible, it would

have been nonsensical to enact a separate statute providing for a sentencing enhancement—and so the failure to create an equivalent of § 924(c) is not evidence that the Second Amendment forbade doing so.

On the other hand, the *Bruen* court was clear that "[t]hroughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms". 142 S.Ct. at 2138. Thus, there is nothing novel about the structure of § 924(c): it represents a Congressional judgment that using a dangerous weapon to commit a crime is conduct that deserves punishment. The Second Amendment does not prohibit Congress from implementing that judgment, and nothing in *Bruen* (or any other Supreme Court opinion) suggests otherwise.

**CONCLUSION**

Because punishing Smith for using a firearm to commit murder in furtherance of federal drug trafficking crimes does not violate the Second Amendment, his motion to dismiss should be denied.

RESPECTFULLY SUBMITTED July 28, 2022 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

/s A. James Klugman
A. JAMES KLUGMAN
Assistant United States Attorney
United States of America

*U.S. v. John Pearl Smith II*
3:16-cr-00086-SLG

Page 10 of 11
Case 3:16-cr-00086-SLG   Document 1198   Filed 07/28/22   Page 10 of 11

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2022
a true and correct copy of the foregoing
was served electronically on:

Mark Larrañaga
Suzanne Lee Elliot
Theresa Duncan

<u>/s A. James Klugman</u>
Office of the U.S. Attorney

*U.S. v. John Pearl Smith II*
3:16-cr-00086-SLG